**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**Miken Composites LLC,** **Civil No. 02-769 (DSD/SRN)**

**Plaintiff,**

v.

**REPORT AND RECOMMENDATION**

**Wilson Sporting Goods Company,**

**Defendant.**

---

Michael H. Streater, Esq., on behalf of Plaintiff.

Jeffery A. Key, Esq. and Matthew A. Dostotch, Esq., on behalf of Defendant.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-entitled matter came before the undersigned United States Magistrate Judge on August 28, 2002, on Defendant's Motion to Dismiss or Transfer Venue (Doc. Nos. 8-1 and 8-2). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons set forth below, this Court recommends that Defendant's Motion to Dismiss or Transfer Venue be denied.

## I DEFENDANT'S MOTION TO DISMISS OR TRANSFER VENUE

### A. Factual Background.

Miken Composites LLC (Miken) designs, manufactures, and sells softball bats. (Declaration of Peter Griffith (Griffith Decl.) at ¶ 3.) Miken is a Wisconsin limited liability company, with its principal place of business in Minnesota. Id. at ¶ 2. All of Miken's employees work at its facilities in Caledonia, Minnesota. Id. at ¶ 3. All of Miken's design work and

NOV 0 8 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

manufacturing is done at its Caledonia facilities. Id. All of Miken's product testing is done at the Caledonia facilities or at Winona State University in Winona, Minnesota. Id. Miken markets its products nationwide and internationally through a sales staff that operates out if its facilities in Caledonia. Id.

Wilson Sporting Goods Company (Wilson) is a Delaware corporation, with its principal place of business in Chicago, Illinois. (Wilson's Complaint for Patent Infringement (Wilson Complaint) attached as Exhibit A to Declaration of Matthew A Doscotch (Doscotch Decl.).) Wilson is the owner by assignment of United States Patent No. 5,415,398 (the '398 Patent) relating to softball bats. Id. at ¶ 4.

In the present case, Miken seeks a declaratory judgment against Wilson of non-infringement, invalidity, and unenforceability of the '398 Patent.

**B. Procedural Background.**

In October 2000, Wilson sued Miken and four other companies in the United States District Court for the Northern District of Illinois (the Illinois action). (Wilson Complaint.) In the Illinois action, Wilson alleged that Miken infringed the '398 Patent by making and selling bats that embodied the patented invention. Id at ¶ 5.

On November 16, 2001, counsel for Miken and Wilson executed an agreement providing for dismissal of Miken from the Illinois action without prejudice, to allow the parties to "engage in good faith discussions for the resolution and settlement of Wilson's claims against Miken regarding infringement of the '398 Patent." (Declaration of Michael H. Streater (Streater Decl.) at ¶ 3.) The agreement stated that 120 days would be sufficient time for these discussions, and that if the 120-period was not extended by the parties, Wilson's lawsuit could be recommenced.

Id. On March 16, 2002, the 120-day negotiation period expired. Id at ¶ 4. There were no discussions concerning extending the negotiation period. Id.

On April 3, 2002, Doug Guenther, Wilson's Director of Research and Development for Team Sports, left a voicemail message for Peter Griffith, Miken's President. (Griffith Decl.; Ex. A.) The message stated,

> This is Doug Guenther from Wilson calling back. Yes, we did receive the information that you guys sent us, on the numbers and I wanted to say thank you. Unfortunately the amount that's been proposed is significantly different to what the value we had in mind so at this point it does not sound like um this is going to moving any further. It sounds like this is gonna possibly end here. It is just such a wide gap. I don't see us closing, closing as far as we need to here. You can feel free to call me to discuss it further. But I just want to be up front with you.
>
> And secondly, you guys do need to understand that it is important for us to protect our double wall technology and the pending legal issue that is between our two companies will need to be resolved yet as well. Again we are going to protect that double wall technology. That is key to our business. That's it.
>
> Feel free to call me at 773 714 6840
>
> Thanks.

Id.

Based on this message, Griffith states he concluded that Wilson was going to sue Miken for infringement of the '398 Patent. (Griffith Decl. at ¶ 7.) Shortly before filing the Complaint in the present case, Raymond Berens, Wilson's in-house General Counsel received a phone call from Jeffrey Redmon, one of Miken's attorneys who had been involved in the settlement negotiations. (Affidavit of Raymond Berens (Berens Aff.) at ¶ 5.) Redmon referred to the message from Guenther, and asked whether Wilson was preparing to recommence the Illinois

action. Id at ¶ 6. Berens stated that the decision was primarily his, and Wilson would not recommence the Illinois action unless and until he first informed Redmon. Id. Berens explained that at that time, Wilson was focused primarily on settlement negotiations with the other remaining defendant in the Illinois action. Id. at ¶ 7. On April 11, 2002, Miken filed the Complaint in the present case. After the Complaint was filed, Berens spoke with Miken's President, reiterated the points he had made to Redmon, and also informed him that Wilson continued to be interested in conducting some form of business with Miken. Id. at ¶ 8.

The Illinois action is currently in the discovery stage. It involves Wilson and a single defendant, Hillerich & Bradsby Co. A Markman hearing has not yet been held.

## C. Discussion.

### 1. Subject matter jurisdiction under the Declaratory Judgment Act.

The Declaratory Judgment Act provides that,

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

"A declaratory judgment action affords a measure of relief to the potential infringer who is under the shadow of threatened infringement litigation. The declaratory plaintiff need only satisfy the jurisdictional requirement 'that the conflict be real and immediate, i.e., that there be a true, actual 'controversy' required by the Act.'" Serco Services Co., L.P. v. Kelley Co., Inc., 51 F.3d 1037, 1038 (Fed. Cir. 1995) (citation omitted).

In patent cases, the court applies the law of the Federal Circuit rather than that of the regional circuit in which the case arose. See Multi-Tech Systems, Inc. v. Vocaltec Communications, Inc., 122 F. Supp.2d 1046, 1049 (D. Minn. 2000); Akro Corp. v. Luker, 45 F.3d 1541, 1543 (Fed. Cir. 1995); Beverly Hills Fan Co. v. Royal Sovereign Corp. 21 F.3d 1558, 1564 (Fed. Cir. 1994), cert. dismissed, 512 U.S. 1273 (1994). The Federal Circuit has explained that this principle applies to subject matter jurisdiction under the Declaratory Judgment Act as well. See e.g. Shell Oil Co. v. Amoco Corp., 970 F.2d 885, 888 n.4 (Fed. Cir. 1992).

> [I]n patent litigation there has evolved a pragmatic two-part test for determining declaratory justiciability. There must be both (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity.

BP Chemicals, Ltd. v. Union Carbide Corp., 4 F.3d 975, 978 (Fed. Cir. 1993) (citation omitted). "The purpose of the two-part test is to determine whether the need for judicial attention is real and immediate, *see Aetna Life Insurance Co.,* 300 U.S. at 239-41, 57 S.Ct. at 463-64, or is prospective and uncertain of occurrence." Id.

The Federal Circuit explained the parameters of this test in Arrowhead Indus. Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 736 (Fed. Cir. 1988). It stated,

> If defendant has expressly charged a current activity of the plaintiff as an infringement, there is clearly an actual controversy, certainty has rendered apprehension irrelevant, and one need say no more. In light of the subtleties in lawyer language, however, the courts have not required an express infringement charge. *Goodyear*, 824 F.2d at 956, 3 USPQ2d at 1312. When the defendant's conduct, including its statements, falls short of an express charge, one must consider the "totality of the circumstances" in determining whether that conduct meets the first prong of the test. *Id.* at 955, 3 USPQ2d at 1311. If the circumstances warrant, a reasonable apprehension

> may be found in the absence of *any* communication from defendant to plaintiff. *Dewey & Almy Chem. Co. v. American Anode, Inc.*, 137 F.2d 68, 71, 58 USPQ 456, 459-60 (3d Cir.1943). If, on the other hand, defendant has done nothing but obtain a patent, there can be no basis for the required apprehension, a rule that protects quiescent patent owners against unwarranted litigation. *See* E. Borchard, *supra*, at 807.

**2. Transferring Venue.**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

> Generally, transfer under § 1404(a) "should not be freely granted." *In re Nine Mile Ltd.*, 692 F.2d 56, 61 (8th Cir.1982). The party seeking transfer bears the burden of proof to show that the balance of factors "strongly" favors the movant. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."); *United Mortg. Corp. v. Plaza Mortg. Corp.*, 853 F.Supp. 311, 315 (D.Minn.1994). Transfer should also be denied if the factors are evenly balanced or weigh only slightly in favor of transfer. *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 821 F.Supp. 962, 964 (D.Del.1993) (citation omitted). The court considers the convenience of the parties and witnesses and the interests of justice in determining whether to transfer a lawsuit pursuant to section 1404(a). In addition to these enumerated factors, the court must conduct a case-by-case evaluation of the particular circumstances involved. *Terra Intern., Inc. v. Mississippi Chemical Corp.*, 119 F.3d 688, 691 (8th Cir.1997), *cert. denied*, 522 U.S. 1029, 118 S.Ct. 629, 139 L.Ed.2d 609 (1997).

Graff v. Qwest Communications Corp., 33 F. Supp.2d 1117, 1121 (D. Minn. 1999).

Under this reasoning, a transfer that merely shifts inconvenience from a defendant to a plaintiff "is impermissible in light of the presumption in favor of a plaintiff's choice of forum." Janel Russell Designs, Inc. v. Mendelson & Assoc., Inc., 114 F.Supp.2d 856, 862 (D. Minn.

2000).

**D. The Parties' Positions.**

**1. Dismissal.**

Wilson argues that the Court lacks subject matter jurisdiction over the present case. It states that there is no actual controversy currently before the Court, within the meaning of the Declaratory Judgment Act. Consequently, Wilson states that the case should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Wilson explains that its general counsel informed Miken it would not reopen the Illinois action against Miken before providing notice of its intention to do so. Wilson emphasizes that Miken has not even attempted to show that Wilson provided any notice that negotiations were terminated such that the Illinois action would be recommenced. Instead, Wilson has left open further negotiations, and indicated it remains interested in some form of business with Miken. With respect to the voicemail message, Wilson explains that Guenther did not have authority to bring suit. Further, his own message included an invitation to discuss the matter further, indicating that negotiations were not over.

Wilson emphasizes that in Zimmerman v. HBO Affiliate Group, ACS, 834 F.2d 1163, 1170 (3d Cir. 1987), the court explained that the remedy of a declaratory judgment remains discretionary even where a justiciable controversy exists. Further, the court found that because no specific threat of immediate litigation had been issued, the dispute lacked the immediacy and reality necessary to require a judicial declaration of rights as between the parties. Wilson also cites Shields v. Norton, 289 F.3d 832 (5th Cir. 2002), in which the court held that letters from an environmental organization suggesting the possibility of action did not create a sufficiently

specific and concrete threat to render a declaratory judgment against the organization ripe for judicial review. Wilson also explains that in Nuclear Eng'g Co. v. Scott, 660 F.2d 241 (7th Cir. 1981), cert. denied, 455 U.S. 993 (1982), the court held that an indefinite threat of litigation is insufficient basis for a court to exercise jurisdiction over a declaratory judgment action.

Wilson cites cases from the Federal Circuit for the proposition that a subjective apprehension of suit is insufficient to invoke the Court's jurisdiction under the Declaratory Judgment Act. Instead, in order to properly invoke subject matter jurisdiction, Miken must have had an objective belief that Wilson was about to recommence the Illinois action against it. Wilson cites Salvation Army v. Dep't of Cmty. Affairs of New Jersey, 919 F.2d 183 (3d Cir. 1990), in which the state provided the plaintiff with assurances it would not institute enforcement actions against it. In Salvation Army, the court rejected the plaintiff's argument that the possibility of a suit by the state could chill the plaintiff's exercise of its rights. Wilson argues the present case is similar to Salvation Army, because "Wilson's statement that it continued to desire some form of business arrangement with Miken eliminates even the coldest chill that Miken could assert here."

Miken responds that subject matter jurisdiction does exist over the present declaratory judgment action. It states that Wilson expressly charged it with patent infringement, and stated an intent to enforce the patent against Miken when Guenther stated that the "pending legal issue that is between our two companies will need to be resolved," and "we are going to protect that double wall technology." Miken explains that there were no facts indicating Guenther lacked authority to recommence the suit.

If the Court does not find Guenther's statements amounted to an express threat, Miken

argues that the totality of the circumstances still indicated Wilson intended to enforce its patent against Miken. Miken explains that Wilson had already sued it for infringement of the '398 Patent, and Miken continues to manufacture and sell the bats that Wilson contends infringe the patent. The 120-day period during which the Illinois action would remain dismissed has expired, and there has been no attempt to extend that time. Therefore, Miken concludes that subject matter jurisdiction exists even under Phillips Plastics v. Kato Hatsujou K.K., 57 F.3d 1051 (Fed. Cir. 1995), in which the court held that a litigation controversy does not normally arise until negotiations have broken down.

Miken also argues that the court in Arrowhead found a reasonable apprehension of suit on far less evidence than exists in the present case. In Arrowhead, along with a demand to discontinue the alleged infringing, the defendant sent a letter stating it "has in the past not hesitated to protect its patent rights whenever appropriate." In addition, the defendant had sued a third party for infringement in a different forum, and proposed a finding to the court that the third party as well as the plaintiff in Arrowhead, who was not a party to the other action, had infringed the patent.

Miken explains that in the present case, "as in Arrowhead, Wilson unequivocally stated its intent to enforce its patent rights ('we are going to protect that double wall technology'), and a separate lawsuit was commenced by Wilson against a third party (as well as against Miken) seeking a determination of infringement of the same patent at issue here." Miken concludes that under these circumstances, it had a reasonable apprehension of being sued following the breakdown of negotiations.

Finally, Miken argues that the Berens affidavit is not relevant to the issue of whether an

actual controversy exists. Berens did not tell Miken that Wilson did not intend to recommence an infringement suit, he only stated that he would give notice before recommencing. Moreover, Miken states that it would not be dispositive of the issue even if Berens had stated he did not intend to recommence the suit at that particular time. In support of this point, Miken quotes the court's statement in Goodyear Tire & Rubber Co. v. Releasomers, Inc., 824 F.2d 953, 957 (Fed. Cir. 1987), that "the mere fact that [defendant's] president has not at this particular moment authorized a patent infringement action against [plaintiff] is not dispositive of its intentions for the future."

**2. Transfer of venue.**

Wilson argues that in the event the Court determines there is subject matter jurisdiction over the declaratory judgment action, it should transfer the case to the Northern District of Illinois. Wilson explains that "the focus is on products produced under Wilson's '398 Patent. The issues relating to the '398 Patent, and the products produced under it, are controlled by Wilson whose principal place of business is in Chicago, Illinois."

Wilson emphasizes that the Northern District of Illinois is also where the '398 Patent issues were previously proceeding against Miken, and progress had been made in scheduling and discovery. Mandatory initial disclosures were also already exchanged, and "the parties completed protracted, heavily argued motion practice regarding the schedule for lay and expert discovery, timing of claim construction briefs and a Markman hearing; and even more significantly, the scope and provisions of a Court approved Protective Order had been extensively litigated."

The presumption, according to Wilson, should be in favor of the Northern District of

Illinois, because "this case is essentially an alternate forum continuation of the infringement issues that were being addressed in the Prior Action, and Wilson had chosen the Northern District of Illinois for resolution of those issues." Wilson also argues that the District of Minnesota has little connection to the patent infringement claims asserted in the Illinois action.

Because the Northern District of Illinois is available, Wilson states that under Williams v. Kerr Glass Mfg. Corp, 630 F. Supp. 266, 269 (E.D. N.Y. 1986), the Court must consider the following factors:

> (1) convenience of the parties; (2) convenience of material witnesses; (3) relative ease of access to sources of proof; (4) availability of process to compel the presence of unwilling witnesses; (5) cost of obtaining willing witnesses; (6) practical problems indicating where the case can be tried more expeditiously and inexpensively; and (7) the interest of justice in general.

Wilson states that under Williams, transfer is more appropriate when there is a prior pending lawsuit in the transferee district involving the same facts or occurrences. In the present case, Wilson states the Illinois action provides that element. Further, "because the issues that will be determined in Miken's declaratory judgment action, and the issues in the Prior Action are the same, there is a bias and preference for the case to proceed with the first-filed action."

Wilson also argues that "there is more of a hint of 'forum shopping' present in Miken's encouraging Wilson to dismiss the Prior Action without prejudice for settlement negotiations, and then running to this Court in Minnesota to file a declaratory judgment action involving all of the same issues that were previously pending in the Northern District of Illinois." According to Wilson, the *forum non conviens* factors also establish that the case should be transferred. Wilson states transferring would promote judicial economy, because it would not then be necessary to repeat all of the steps that have already taken place in the Northern District of Illinois. With

respect to infringement, Wilson explains that both Miken and Hillerich have asserted that the same prior art invalidates the '398 Patent.

Finally, Wilson explains that under cases such as Senmed, Inc. v. Richard-Allan Medical Indus., Inc., 888 F.2d 815, 818 (Fed. Cir. 1989), "once an interpretation of a claim is made, the same interpretation may be employed in determining literal infringement or infringement under the doctrine of equivalence." Therefore, a single Markman hearing could suffice for Miken and Hillerich if both were defendants in the same lawsuit. This option, according to Wilson, is preferable to one involving separate suits with separate Markman hearings, which would waste judicial resources and pose the risk of inconsistent claim constructions for the same patent.

Miken responds that Wilson has failed to demonstrate that transfer to the Northern District of Illinois is appropriate. Miken cites numerous federal cases for the proposition that there is a strong presumption in favor of the plaintiff's choice of forum, and particularly so when the plaintiff resides in that forum. Miken explains that its business and the facts giving rise to the present case have a strong connection to Minnesota. Miken's design, manufacturing, and testing facilities are located in Minnesota, along with the documentation relating to the design, testing, and manufacture of the allegedly infringing products. In contrast, Miken explains that Wilson's design, development, and production of the patented product are of little relevance, because a patentee's commercialized embodiment of its patent is irrelevant when considering whether there has been infringement. Consequently, Illinois has less connection to the infringement issue than Minnesota.

Miken also asserts that the convenience of witnesses weighs against transferring the present case. It explains that in Graff, the court stated that "the party seeking the transfer must

clearly specify the essential witnesses to be called and must make a general statement of what their testimony will cover." Wilson, however, has failed to provide such details. In contrast, Miken states it has identified the people involved in the design, manufacture, and sale of the accused products, and provided a brief description of each person's knowledge. Miken notes that almost all of these witnesses are located in Minnesota.

The interests of justice also militate against transfer, according to Miken. It explains that both districts are familiar with the law to be applied in the present case, and, therefore, this factor is neutral to the parties. Wilson's web page, however, states that it is one of the leading sports equipment manufacturers in the world, while Miken states it is a very small company with less than 50 employees. As a result, Wilson is more able to bear the expense of litigating in a different forum. Miken also argues that the Illinois action has been repeatedly delayed, and it should not be forced to reenter a forum that will delay moving the present case to conclusion. According to Miken, it will not be burdensome to duplicate the small amount of discovery that was produced in the Illinois action, such as initial disclosures.

Miken states that precedent involving transfer of related cases should not control the decision in the present case. Specifically, the present case does not fall under the first-filed rule, according to Miken, because Wilson was dismissed from the Illinois action. In addition, transfer to the Northern District of Illinois would not conserve judicial resources. While both cases concern the '398 Patent, Miken argues there are few other common factual issues. It states that both the infringement and damage analyses are unique to each alleged infringer. Miken summarizes,

> since the products manufactured by Miken and Hillerich are markedly different in terms of materials and manufacturing

> techniques, the court may be required to construe certain terms in the '398 Patent applicable only to Miken's bats, and other terms applicable only to Hillerich's bats. Thus, even claim construction, a legal issue for the court, may not be streamlined by consolidation of the two lawsuits.

### E. The Court's Recommendation.

#### 1. Subject Matter Jurisdiction.

The Court recommends finding that subject matter jurisdiction exists over the present case. There is clearly present activity which could constitute infringement. Miken is continuing to manufacture and sell products over which Wilson previously brought a patent infringement suit. As a result, the only question is whether Wilson's behavior caused Miken to have a reasonable apprehension that it would face an infringement suit. See BP Chemicals, 4 F.3d at 978.

Miken was previously sued by Wilson for infringement, and that suit was dismissed only in order to attempt to resolve the infringement action. A time limit was placed on this settlement period, after which Wilson was entitled to recommence its suit. That time period has now expired without resolution. Under these facts, the Court finds Miken has presented a sufficiently real and immediate conflict to support a declaratory judgment action.

The prior suit against Miken, and the premise for its dismissal, provided a context in which the parties' actions caused a reasonable apprehension of further litigation. When Guenther called on April 3, 2002, he responded to Miken's proposal by stating that the gap between the parties was too wide, and it did not sound to him as though the proposals were going to move any further. He reiterated that Wilson was going to have to protect its technology. Wilson emphasizes that after this phone call, Berens informed Redmon that Wilson would not sue unless

and until first notifying Redmon. The most that could mean, however, is that Wilson had not yet made an express threat of litigation. But an actual controversy does not require an express threat. See Arrowhead, 846 F.2d at 731. In the present case, the totality of the circumstances still contributed to a reasonable apprehension of suit. Wilson also argues that the present suit can not be maintained because both Berens and Guenther left open the possibility of further negotiations. The Court can not accept that argument either, because it implies that a declaratory judgment action can only be maintained after the plaintiff exhausts every scenario under which the patentee might choose not to bring an infringement suit. The Federal Circuit has never required that much when determining the existence of an actual controversy.

Instead, the parties had reached a sufficient impasse for Miken to seek a declaratory judgment. The facts of the present case are distinguishable from those in Phillips Plastics, in which the court found there was no actual controversy largely because negotiations had not yet broken down. 57 F.3d at 1053. In reaching that conclusion, the court noted that license terms were yet to be discussed, and the plaintiff had filed suit rather than responding to the defendant's request for data on which to base a license proposal. Id. In the present case, both parties already discussed terms, and Wilson determined the proposals were too far apart to move any further.

Further, the Federal Circuit's statement concerning negotiations in Shell Oil, a case in which the subject matter jurisdiction was lacking, suggests that subject matter jurisdiction exists in the present case. The court stated, "[a] reasonable apprehension of an intent to initiate an infringement suit may be found from statements made during licensing negotiations, since the possibility of litigation may objectively appear to compel acceptance of offered terms." 970 F.2d at 889. In the present case, the possibility of an infringement suit was much less abstract than in

the situation described in Shell Oil. In the present case, an infringement suit had actually preceded the negotiations, and the premise of the voluntary dismissal was that the parties would attempt to resolve the issue outside of court and if unsuccessful, the suit would recommence. Hence, Miken had no doubt that an infringement suit would follow if negotiations failed. Wilson argues that more negotiations could or should have taken place prior to Miken's suit. But this argument is less convincing, given that it was Wilson who announced that the parties seemed too far apart to move any further.

In addition, the cases Wilson cites in support of its motion were not decided by the Federal Circuit, and, consequently, are inappropriate precedent for the present case. Further, they are all factually distinguishable. In these cases, courts dismissed declaratory judgment actions because either: (1) they lacked sufficiently imminent threats; (2) the threat of potential litigation was not harming the plaintiffs; or (3) the declaratory judgment concerned a different issue from that underlying the threatened litigation. The following discussion will address these cases in their respective categories.

**Imminence of threat.**

In Salvation Army, the plaintiff sought a judgment declaring that it would be unconstitutional for New Jersey to apply its Rooming and Boarding House Act of 1979 to one of the plaintiff's rehabilitation centers. 919 F.2d at 190. When finding there was no justiciable controversy, the court observed that the state agency charged with enforcing the statute had expressly assured the plaintiff that it would not enforce the provisions in question. Id. at 192. Further, the court explained that "under the express provisions of the statute, the defendants, even if they should attempt to extricate themselves from their commitment regarding those

provisions, could not impose a fine without giving notice and an opportunity to comply." Id.

In Shields, the Court explained that "more than four years lapsed before Shields filed this suit that Schuehle later joined. Moreover the Sierra Club disclaimed any plan to sue Schuehle individually. While alone it is also of little import, such a disclaimer reenforced by these years of inaction hollows any 'threat,' and pulls it short of immediate." 289 F.3d at 836.

In the present case, the threat of litigation is much more concrete. Most importantly, Wilson has already sued Miken for infringement. Hence, its willingness to litigate is not in question. Also, while the plaintiff in Salvation Army made an unqualified guarantee that it would not sue over the relevant provisions, Wilson has made no such promise. Wilson stated only that it would inform Miken before recommencing the Illinois action against it. In addition, there is no statute preventing Wilson from recommencing the suit immediately.

Shields is further distinguishable. In the present case there is no doubt over which party Wilson would sue. It previously sued Miken in the Illinois action, and Miken is the party now seeking a declaratory judgment. Further, Miken more reasonably fears imminent litigation, because there has been nothing similar to Shield's four-year period of inactivity in the present case.

**Harm to Plaintiff.**

In Nuclear Eng'g, the defendant, the Illinois Attorney General, stated at a press conference that he intended to commence lawsuits against groups, including the plaintiff, that he believed were violating Illinois' environmental protection laws. 660 F.2d at 243. The court found no subject matter jurisdiction existed after observing that there was "not a shred of evidence in support of NEC's allegation of immediate business injury. Nor has NEC even

alluded to this allegation as a basis for jurisdiction during the course of this appeal." Id. at 252.

Unlike the plaintiff in Nuclear Eng'g, Miken has already been forced to commence defending itself in the Illinois action. In addition, it has had to pursue settlement negotiations in order to avoid returning to court. Given that negotiations have not succeeded, Miken has incurred sufficient costs to entitle it now to pursue a declaratory judgment.

**Subject matter underlying declaratory judgment action and threatened litigation.**

In Zimmerman, the plaintiff sought a declaration that the Federal Communications Act is not violated by mere possession of a particular type of antenna. 834 F.2d at 1166-67. The court found subject matter jurisdiction did not exist. It stated,

> the defendants' letter is reasonably susceptible of the interpretation given by the district court, namely that the defendants were threatening to sue only those who were 'receiving' the HBO signal. Thus it is purely a matter of conjecture whether the defendants have threatened to file suit on the theory on which the plaintiff has requested a declaration.

Id. at 1170.

There is no such distinction in the present case. Miken seeks a declaratory judgment concerning the validity and enforceability of Wilson's '398 Patent. The Illinois action concerned that same issue. Any threat of recommencing that action concerns the same theory on which Miken has requested a declaration. As a result, the Court finds Wilson's authority distinguishable, and recommends denying Wilson's motion with respect to dismissal.

**2. Transfer of venue.**

The Court recommends denying Wilson's motion with respect to transfer. The first-filed rule is inapplicable to the present case. The first-filed rule provides that "[i]n the absence of compelling circumstances, the court initially seized of a controversy should be the one to decide

the case." Orthmann v. Apple River Campground, Inc., 765 F.2d 119, 121 (8th Cir. 1985). Because the Illinois action has been dismissed with respect to Miken, the Northern District of Illinois is no longer "seized" of the current controversy. Therefore, the Court is not faced with a situation in which parallel litigation is proceeding in separate courts.

Instead, Wilson's motion requires a standard application of the factors listed in Graff for considering a motion to transfer venue. These factors are: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice. 33 F. Supp.2d at 1121. The first factor favors retaining the suit in the present venue. Miken correctly argues that as the accused infringer, its development and manufacturing facilities are more relevant to the present case than those of Wilson. As courts have repeatedly explained,

> In conducting this second step of the infringement inquiry, the physical similarities between the accused device and the patentee's commercial embodiment of a patented invention are not to be compared. Rather, the proper comparison is between the patent claims and the accused device. *International Visual Corp. v. Crown Metal Mfg. Co.*, 991 F.2d 768, 771-72 (Fed.Cir.1993); *Datascope Corp. v. SMEC, Inc.*, 879 F.2d 820, 824 (Fed.Cir.1989) ("the district court lost sight of this court's repeated caution that it is claims, not commercial embodiments, that are infringed.") *cert. denied,* 493 U.S. 1024, 110 S.Ct. 729, 107 L.Ed.2d 747 (1990). As explained by the Federal Circuit, in determining infringement, "the words of the claim must first be interpreted, and, as properly interpreted, they must be 'read on' the accused structure to determine whether each of the limitations recited in the claim is present in the accused structure." *Corning Glass*, 868 F.2d at 1258 (citations omitted).

Stryker Corp. v. Intermedics Orthopedics, Inc., 891 F. Supp. 751, 767 (E.D. N.Y. 1995).

While there is potentially some relevance to a patent holder's commercial embodiment of its patent, it is at most secondary. As one court explained,

> Similarity between an accused device and the preferred

> embodiment is at least some indicia of infringement. However, since it is shown *infra* that the accused devices do not infringe because they do not meet all the elements of the claim it is not necessary to consider superficial similarities between embodiments of plaintiff's invention and the accused device.

Judin v. United States, 27 Fed. Cl 759, 781 n.16 (1993).

As a result, Miken's employees involved in design, manufacture and sales of its products are more likely to be relevant witnesses, than Wilson employees involved in the same activities. At the hearing, Wilson identified three sales and market share witnesses who reside in Chicago. Even if these witness' testimony would be relevant to the present declaratory judgment action, the most the Court can conclude is that the second Graff factor favors neither party.

The interests of justice also do not favor one venue over the other. The Court finds it inappropriate to force Wilson to litigate in a distant forum simply because it is a larger company. But the Court also does not have evidence to support Wilson's claim that Miken delayed the Illinois action with needless motion practice, and then unfairly shopped for a preferable forum. The Court concedes that maintaining the present case in Minnesota may produce the need for Markman hearings for the '398 Patent in two different forums. But that is a consequence for many patent holders who are forced to protect their patents through litigation. And it is not sufficient to outweigh the presumption in favor of the plaintiff's choice of forum, particularly when the plaintiff resides in that forum.

Based upon the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED that:**

Defendant's Motion to Dismiss or Transfer Venue (Doc. Nos. 8-1 and 8-2) be **DENIED**

Dated: November 8, 2002.

Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

Under D. Minn. LR 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by November 22, 2002, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.