**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**THIRD DIVISION**

MIKEN COMPOSITES, L.L.C.,

Plaintiff,

v.

WILSON SPORTING GOODS CO.

Defendant.

**Court File No. 02-CV-769 DSD/SRN**

**DEFENDANT WILSON SPORTING GOODS CO.'S *MARKMAN* CLAIM CONSTRUCTION EXPERT REPORT OF DAVID M. PARKS, Ph.D**

Pursuant to Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, David M. Parks tenders the following expert report.

## I. QUALIFICATIONS FOR SUBMISSION OF EXPERT TESTIMONY.

I am a tenured Professor of Mechanical Engineering at the Massachusetts Institute of Technology ("MIT") in Cambridge, Massachusetts.

I received a Bachelor of Science in Engineering Mechanics from the University of Illinois in 1971; a Master of Science in Engineering from Brown University in 1973; and a Ph.D. in Engineering from Brown University in 1975.

I have been employed as a faculty member in the Department of Mechanical Engineering at MIT since 1979; prior to that time, I was a faculty member in the Department of Engineering and Applied Science at Yale University.

My areas of technical specialization include the application of numerical methods to the analysis of fracture and inelastic deformation of materials. I have taught courses and conducted research in the mechanical behavior of structures and materials. I have well over one hundred publications relating to these subjects and have consulted with industry and government in these

18. A bat, comprising:

a hollow tubular bat frame having a small-diameter handle portion and a large-diameter impact portion having a circular cross-section with an inner and outer diameter; at least one insert having a substantially circular cross-section with an outer diameter less than the inner diameter of the frame impact portion, the insert being held within the impact portion; and

the impact portion being inwardly deflectable such as to establish a tight interference fit between the insert and the impact portion.

('398 Patent, col. 5, ln. 54 to col. 8, ln. 5).

***Interpretation of Claim Language***

1. ***"Gap"-Claims 1 and 15***

The term "gap" appears in claims 1 and 15. A common meaning of "gap" is a "hole or opening" or an "interruption of continuity . . ." Webster's New World Dictionary of the American Language (College Edition 1966), at 596 (Attachment G). The common meaning of "annular" is "like or forming a ring". Webster's New World Dictionary, supra, at 60.

In the context of the '398 Patent, an "annular gap" is a ring-like shaped separation between the inner surface of a circular cross-section bat frame and the external surface of a concentric circular cross-section insert that permits, on impact, the independent movement of the bat frame wall and the insert, in the nature of a leaf-spring. The separation will exist if the bat frame and insert are not bonded, adhered, welded, brazed, riveted, or otherwise attached so as to prevent a sliding interface.

Because the '398 Patent is concerned with making real bats with real inserts, one of ordinary skill in the art would understand the terms "annular gap" and "gap" having an "annular shape" in a practical sense to mean a separation which has a ring-like shape.

The language used in claim 18, that the impact portion elastically deflects inwardly "to establish a tight interference fit between the insert and the impact portion" is fully supported by the disclosure in the specification of the `398 Patent, and is definite in claim 18, such that a person of ordinary skill in the art would be able to make and use the invention and understand claim 18.

An embodiment of an interference fit in accordance with claim 18 is described in the `398 Patent as follows:

> In yet another embodiment of the invention, positive attachments of the insert 18 within the frame 11 may be dispensed with altogether. In this case, the insert would "float" on the layer of lubricant. An impact with a ball will cause the frame to deflect, thereby creating interference attachments for the insert during impact. The swing of the bat during impact may tend to lodge the insert 18 in the end of the frame, contributing to an attachment. A bat with an insert held in this manner may respond much like a bat with an insert held at two interference fits. Furthermore, this alternative embodiment will also perform well when the lubricant is omitted.

(`398 Patent, col. 5, lns. 33-45).

Based on the disclosure in the `398 Patent specification, one of ordinary skill in the art would readily recognize that the inward elastic deformation of both the impact portion of the frame and of the insert that occurs during impact tends to create forces between the two bodies which, during the time of impact, tend to lock the insert in place and restrain global relative motion of the insert and bat frame, and/or increase the tightness of the attachment already existing. Because the deformation is elastic, when the impact force is removed, the insert and the impact portion of the frame would normally return to their pre-impact condition.

There is no specific degree of tightness specified for these transient interference fits in claim 18. However, one of ordinary skill in the art would recognize that the temporary interference fit should be tight enough to hold the insert in place during the impact, but not so

tight that it prevents independent movement of the walls of the insert and the frame in the impact portion of the bat.

### 4. *"Interference Fits" may be either Elastic or Plastic*

The `398 Patent explicitly states that plastic deformation is not required of an interference fit. Although one embodiment is described in which the reduced-diameter head end of the frame is curled in forcefully enough to cause plastic deformation of the second end 22 of the insert (i.e., the end of the insert at the head end of the bat), the `398 Patent also states that "equally good results may be achieved without heating, curling, or plastic deformation of the insert ends." (`398 Patent, col. 4, lns. 39-42).

## D. Prior Art Cited

I have reviewed the prior art cited during the prosecution history of the `398 Patent, and the prior art raised by the defendants in the *Wilson v. H&B* case, which included Miken Composites L.L.C. None of this prior art limits the meaning of any claim terms to exclude the possibility of contact resulting from normal dimensional variations, providing that the walls of the bat frame and of the insert are still free to move independently, in the nature of a leaf spring, upon impact.

### 1. *Fujii '239*

Miken has referred to U. S. Patent No. 3,963,239 ("Fujii `239"). Fujii `239 was cited by the applicant during prosecution of the `398 Patent. Fujii `239 notes that if "the batting portion of the bat is ... too thin", it will cause "a serious drawback in the resisting force of the batting portion of the bat against the impulse produced when the bat strikes the ball" (Fujii `239, col. 1, lns. 48-51). Accordingly, it continues "the present invention ... has as one of its main objects, a