IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| DEMARINI SPORTS, INC., an Oregon Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | CV 97-1693 KI |
| | ) | |
| vs. | ) | November 12, 1998 |
| | ) | |
| WORTH INC., a Tennessee Corporation, | ) | Portland, Oregon |
| | ) | |
| | ) | Volume I |
| Defendant. | ) | |

TRANSCRIPT OF MARKMAN HEARING

BEFORE THE HONORABLE GARR M. KING

UNITED STATES DISTRICT COURT JUDGE

APPEARANCES

FOR THE PLAINTIFF:

ALAN P. POLASKI
Miller Nosh Wiener Hager & Carlsen
111 S.W. 5th Ave., Suite 3500
Portland, Or 97204
503 224-5858

THEODORE F. SHIELLS
PATSY SUEKO FULTON
Gardere & Wynne
1601 Elm Street, Suite 3000
Dallas, Tx 75201
214 999-3000

FOR THE DEFENDANT:

STEPHEN FORD
Marger Johnson & McCollom
1030 S.W. Morrison Street
Portland, Or 97205
503 222-3613

Exhibit 11

EDWARD D. LANQUIST
MARK J. PATTERSON
Waddey & Patterson
414 Union Street, Suite 2020
Nashville, Tn 37219
615 242-2400

COURT REPORTER: Katherine Eismann, CSR, CRR, RDR
1000 S.W. Third Ave., Room 301
Portland, OR 97205 (503) 326-8186

Proceedings recorded stenographically,
computer-aided transcription.

further on that, there's been no foundation laid that these cut-up pieces resemble a bat, when it's assembled, which is what this whole lawsuit is about, not cut-up pieces of a bat. It's about bats that are assembled as described in the '398 patent.

Again, I don't mind your Honor looking inside the bat, but I don't want in concession, on our part, this is what a bat looks like when it's together.

THE COURT: I understand that, and I am going to receive this solely for demonstrative purposes, just to look at them and visualize how something works. That's the extent to how we are going to use them.

(Exhibits 86, 86B, and 86C received.)

MR. SHIELLS: And your Honor, I have marked about a three-quarter-inch end of this bat or the pieces of -- the collection of the pieces as Exhibit 86B, and the -- another portion near the end as 86A, and I would offer those into evidence as well.

THE COURT: I assume there is the same objection. Same ruling.

(Exhibits 86A and 86B received.)

MR. PATTERSON: Yes, your Honor.

BY MR. SHIELLS:

Q. Now, getting back to the paragraph on column five, line 35 through 45, Mr. Eggiman, do you have an

understanding as to what that describes?

A. Yes.

Q. And could you explain, for the court, what that is describing, in terms of the interference? Let me rephrase it. I would just like you to explain how this works.

A. In this, there is a --

Q. I am sorry. Not on the bat, or, rather, not on the exhibit. What is that 105?

A. Well, it's not like this.

Q. No, I didn't mean with respect to this. I was just putting this in for clean-up purposes. With respect to that paragraph, could you please explain, for the court, how that is intended to work, and if you need any demonstrative aids, feel free.

A. Okay. What this is describing, is a tube that's inside the bat frame. And then under the impact -- and I believe we do have an example of this. Under the impact, when the ball deflects the outer shell, into -- when it -- the outer tube deflects onto the inner tube, it forces the inner tube, in deflecting it inward and loading it up -- loading it equally, and that loading causes a temporary transient interference fit, during the impact, and then it rebounds and becomes free again.

The tube is floating freely until that impact happens. And we do have --

Q. Okay. Would you like to show the court what you mean?
A. What we have done is taken one of our bats and drilled a hole in the end plug, so that we could insert a tool, so I can show you how the inner tube rotates freely relative to the outer tube.
Q. And you are referring to it, this -- one of your current double-wall bats?
A. This is our current year's double-wall bat. I need a little help here.
Q. If I may, for identification, I have marked the bat as Plaintiff's Exhibit 115.
A. Now, before the impact, it's not tight. It's allowed to rotate freely. And then as it loads up, it builds an interference fit, and it gets hard to turn. And then as it loads up completely, it gets very stiff. It creates this temporary interference fit.
Q. And then I am now releasing the load.
A. And it goes back to its original state.
THE COURT: I think I am going to have you do that again, because I can't see from here.
MR. SHIELLS: Okay.
THE COURT: Go ahead.
THE WITNESS: So, the inner tube rotates relatively freely inside the tube. And then as we load it up, in a manner where the ball would be impacting it, it

gets harder and harder, to the point where I can't turn it anymore. That is creating that interference fit between the two walls.

BY MR. SHIELLS:

Q. Now, in your patent, Mr. Eggiman, is there a claim where that type of interference fit is described?

MR. PATTERSON: Your Honor, again, that calls for a conclusion about what the patent claim says about -- that's not in Mr. Eggiman's -- he is not qualified to talk about that.

THE COURT: I am going to sustain it. Counsel, it's really a question of how you present this. You are now moving onto a specific claim. Why don't you ask him appropriate questions about that claim.

BY MR. SHIELLS:

Q. Okay. Mr. Eggiman, let me call your attention to Claim 18 of the '398 patent. And if you would, please, read the last paragraph of that claim.

A. The impact portion being innerly elastically deflected such as to establish a tight interference fit between the insert and the impact portion.

Q. Now, where, in your patent, is that interference fit described?

MR. PATTERSON: Your Honor, same objection. He's basically interpreting the claim by making reference

to some description of language.

MR. SHIELLS: Your Honor, we are not interpreting the claim.

THE COURT: I agree. I am going to overrule the objection. Go ahead.

BY MR. SHIELLS:

Q. Okay. Where is that sort of interference fit described?

A. I have lost my place here. That is in column five, line 35 to 45.

Q. Thank you. Just a moment, your Honor, if I may.

Mr. Eggiman, is that what you just demonstrated with the -- what we referred to as the nutcracker and Exhibit 115?

A. Yes, it is.

Q. Now, Mr. Eggiman, if I may, do you have Plaintiff's Exhibit 1 in front of you?

A. Yes, I do.

Q. How does -- where -- pardon me.

How does your patent specification describe creating this gap?

A. It's described, at least in one location, on column two, line 63.

Q. And how does it describe creating this gap?

A. Because the outer diameter of the insert is slightly