**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**THIRD DIVISION**

---

MIKEN COMPOSITES, L.L.C.,

Court File No. 02-CV-769 DSD/SRN

Plaintiff,

v.

WILSON SPORTING GOODS CO.

Defendant.

---

# DEFENDANT WILSON SPORTING GOODS CO.'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Douglas J. Williams (#117,353)
Matthew A. Doscotch (#029,973X)
Merchant & Gould P.C.
3200 IDS Center
80 South Eighth Street
Minneapolis, MN. 55402-4131
Telephone: (612) 332-5300
Facsimile: (612) 332-9081

Jeffery A. Key, Esq.
Key & Associates
150 N. Michigan Ave., Suite 1115
Chicago, Illinois 60601
Telephone: (312) 560-2148
Facsimile: (312) 553-1232

ATTORNEYS FOR DEFENDANT-COUNTERCLAIMANT
WILSON SPORTING GOODS CO.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES........ ii

I. INTRODUCTION........ 1

II. DISCUSSION........ 2

A. Miken Improperly Limits The Claim Language "Gap Forming At Least Part of an Annular Shape"........ 3

B. Miken's Bats Have "Inserts"........ 6

1. Literal Infringement........ 6

2. Infringement Under The Doctrine Of Equivalents........ 10

C. Miken's Bats infringe Claim 1 of the '398 Patent........ 13

D. Miken Has Failed To Meet Its Burden For Invalidating Claim 18........ 19

E. Miken's Bats Infringe Claim 18 Of The '398 Patent........ 21

F. Infringement Of Claim 18 Not Shown To "Improperly Ensnare" Prior Art........ 25

III. CONCLUSION........ 27

# TABLE OF AUTHORITIES

## FEDERAL CASES

American Hoist & Derrick Co. v. Sowa & Sons, Inc.,
725 F.2d 1350 (Fed. Cir. 1984), *cert. denied,* 468 U.S. 821 (1984)....................3, 19, 26

Bell Atl. Network Servs., Inc. v. Covad Comm. Group, Inc.,
262 F.3d 1258 (Fed. Cir. 2001)..........................................................................2

Bell Communications Research, Inc. v. Vitalink Communications Corp.,
55 F.3d 615 (Fed. Cir. 1995)..............................................................................4

Catrett v. Johns-Mansville Sales Corp.,
756 F.2d 181, 184 (Fed. Cir. 1985)....................................................................3

Celetox Corp. v. Catrett,
477 U.S. 317 (1986)..........................................................................................3

Conroy v. Reebok Int'l, Ltd.,
14 F.3d 1570 (Fed. Cir. 1994)......................................................................2, 18

DeMarini Sports, Inc. v. Worth, Inc.,
239 F.3d 1314 (Fed. Cir. 2001)..........................................................1, 6, 7, 11, 22

Graver Tank & Mfg. Co. v. Linde Air Products Co.,
339 U.S. 605 (1950)..........................................................................................10

Hewlett-Packard Co. v. Bausch & Lomb Inc.,
909 F.2d 1464 (Fed. Cir. 1990)........................................................................19

Johnson & Johnson Assoc., Inc. v. R.E. Service Co., Inc.,
285 F.3d 1046 (Fed. Cir. 2002)........................................................................10

Metabolite Laboratories, Inc. v. Laboratory Corp. of Am. Holdings,
370 F.3d 1354 (Fed. Cir. 2004)....................................................................2, 19

North Am. Vaccine v. American Cyanamid Co.,
7 F.3d 1571 (Fed. Cir. 1993)..............................................................................4

RF Delaware, Inc. v. Pacific Keystone Technol., Inc.,
326 F.3d 1255 (Fed. Cir. 2003)..........................................................................2

SRI Int'l v. Matsushita Elec. Corp.,
775 F.2d 1107 (Fed. Cir. 1985)..........................................................................2

## FEDERAL STATUTES

35 U.S.C. § 282 .......................................................................................................... 3

## I. INTRODUCTION

The accused bats of Plaintiff Miken Composites, L.L.C. ("Miken") infringe claims 1 and 18 of U.S. Patent No. 5,415,398 ("the '398 Patent") under this Court's construction of those claims.[1] Each of the nine models, hhd, Viper, Intensit-E, Velocit-E, Ultra, Ultra II, M-Pulse, Velocit-E II and Edge, infringe claim 1 under this Court's *Markman* construction of the "gap" limitation. In addition, all of those bats also infringe claim 18. The proof of Miken's infringement comes largely from its own expert, Dr. Dennehy. In fact, Dr. Dennehy's reports are in direct conflict with certain arguments Miken now advances. At a minimum, genuine issues of material fact remain as to Miken's infringement based upon the conflicting testimony in the record before this Court.

Miken has misconstrued this Court's *Markman* construction of the term "gap" in such a way as to render meaningless that portion of the claim 1 element which provides for "a gap forming **at least part of an annular** [ring-like] **shape**." Miken's distorted argument would require a gap, or three-dimensional space or void as this Court has construed the word, to form a ***complete*** annular or ring-like shape separating the entire frame from the entire insert along the impact portion of the bat. Nothing in this Court's *Markman* ruling suggests, however, that claim 1 requires the complete absence of contact anywhere around the circumference of the insert, or that the rules of claim construction should be abandoned so that a single term's limitation can obliterate the rest of the claim language.

---

[1] Wilson reserves the right to assert that the Miken bats also infringe claim 15 of the '398 Patent under the claim construction urged by Wilson and declared by the Oregon District Court in *DeMarini Sports, Inc. v. Worth, Inc.*, U.S.D.C., District of Oregon, Civil No. 97-1693-KI. (Declaration of Matthew A. Doscotch in Support of Defendant-Counterclaimant Wilson Sporting Goods Co.'s Memorandum in Opposition To Miken's Motion For Summary Judgment ("Doscotch Decl."), Exh. A).

Finally, Miken has failed to meet its heavy burden of providing clear and convincing proof that claim 18 of the '398 Patent is invalid. Miken has only cited to references considered and rejected by the U.S. Patent and Trademark Office ("USPTO"). The Federal Circuit has held that "[w]here, as here, the PTO previously considered the prior art reference, [the challenger] bears an even heavier burden to prove invalidity." *Metabolite Laboratories, Inc. v. Laboratory Corp. of Am. Holdings,* 370 F.3d 1354, 1368 (Fed. Cir. 2004). Moreover, Miken has advanced unsupported, and unsupportable, constructions of those references, devoid of record facts. In light of Miken's failure of proof, and in light of the presumed validity of claim 18, Miken's invalidity arguments must fail.

## II. DISCUSSION

Miken bears the burden of proof for establishing non-infringement in its motion for summary judgment, and all facts and inferences in the record must be viewed in the light most favorable to Wilson's claim of infringement. *RF Delaware, Inc. v. Pacific Keystone Technol., Inc.,* 326 F.3d 1255, 1266 (Fed. Cir. 2003). In addition, credibility determinations may not be made; rather, all doubts must be resolved, along with the inferences drawn, in the non-movant's favor. *SRI Int'l v. Matsushita Elec. Corp.,* 775 F.2d 1107, 1116 (Fed. Cir. 1985) (en banc). Miken has failed to meet this burden.

Miken is not entitled to judgment unless the record, when viewed most favorably for Wilson, establishes that there is no genuine issue of material fact. *Bell Atl. Network Servs., Inc. v. Covad Comm. Group, Inc.*, 262 F.3d 1258, 1266-67 (Fed. Cir. 2001). Miken "bears the burden of demonstrating the absence of genuine issues of material fact." *Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1575 (Fed. Cir. 1994). Wilson, in turn, as "the party opposing the motion for summary judgment bears the burden of responding ***only after*** the moving party has met its

burden of coming forward with proof of the absence of any genuine issue of material fact." *Celetox Corp. v. Catrett*, 477 U.S. 317, 321 (1986) (*quoting Catrett v. Johns-Mansville Sales Corp.*, 756 F.2d 181, 184 (Fed. Cir. 1985)) (emphasis in original).

In connection with Miken's argument of invalidity (asserted against claim 18), Miken bears an even heavier burden than with respect to non-infringement. There is a permanent presumption of validity with respect to issued patent claims, including the '398 Patent. 35 U.S.C. § 282 establishes this presumption. The burden of persuasion is upon Miken, and never shifts from Miken, to prove invalidity by clear and convincing evidence. *American Hoist & Derrick Co. v. Sowa & Sons, Inc.,* 725 F.2d 1350, 1358-60 (Fed. Cir. 1984), *cert. denied,* 468 U.S. 821 (1984). The burden of clear and convincing proof remains on Miken whether or not the most pertinent prior art was considered by the examiner. *Id.* Miken has failed to meet its burden in this case.

**A. Miken Improperly Limits The Claim Language "Gap Forming At Least Part of an Annular Shape"**

Miken has selectively quoted from this Court's *Markman* Order in an attempt to rewrite the limitations of claim 1. Miken's argument is that a bat built in accordance with claim 1 can have no contact between the frame and insert anywhere along and around the impact portion of the bat. No such limitation can be read into claim 1 in light of this Court's *Markman* ruling. The elements of claim 1 of the '398 Patent are as follows:

- A bat, comprising:
- a hollow tubular bat frame having a circular cross-section; and
- an insert positioned within the frame, the insert having a circular cross-section,
- the insert having first and second ends adjoining the tubular frame,
- the insert being separated from the tubular frame by a gap forming at least part of an annular shape along a central portion between said first and second ends,
- the frame elastically deflectable across the gap to operably engage the insert along a portion of the insert between the insert first and second ends.

('398 Patent, col. 5, lns. 54-68 (Declaration of Michael H. Streater In Support Of Plaintiff-Counterdefendants Motion For Summary Judgment ("Streater Decl."), Exh. 1)). In particular, Miken argues that the term "gap" should require the absence of any contact between the frame and insert in the impact portion of the bat, irrelevant of the claim language that the gap is limited to "forming at least part of an annular shape."

Miken's argument must fail because its post-*Markman* construction is neither legally nor factually supportable. Claim interpretation or construction begins with the wording of the claims, which are to be examined in their entirety. *Bell Communications Research, Inc. v. Vitalink Communications Corp.*, 55 F.3d 615, 620 (Fed. Cir. 1995); *North Am. Vaccine v. American Cyanamid Co.,* 7 F.3d 1571, 1575 (Fed. Cir. 1993). Miken's argument would make the limitation language "forming at least part of an annular shape" irrelevant, in violation of established rules of construction.

In this Court's July 26, 2004 Order, the term "gap" was construed as follows:

> Bearing in mind the configuration of the frame and insert, only inward movement along a latitudinal axis of the bat would allow the frame to "operably engage the insert." Because the movement occurs "across the gap," the "gap" necessarily features a width or distance along any latitudinal axis of the bat. The gap therefore has three, not two, dimensions, and Miken's conception is presumptively correct.

(July 26, 2004 Order at p. 7 (Doscotch Decl. Exh. B)). Miken latches onto the last phrase as justification for their construction of claim 1 as requiring no contact between the frame and insert in the impact portion of the bat. However, this Court's reference to "Miken's conception" was merely that "Miken's 'gap' thus has three dimensions: circumference, length [the two dimensions the Court sees in Wilson's definition] and width." The "width" is merely "a distance" along a latitudinal axis of the bat, not "the entire distance" as Miken now asserts. (*Id.* at p. 6).

This Court concluded the term "gap" means "a space or void between the inner surface of the frame and the outer surface of the insert." (*Id.* at p. 10). Nowhere did this court construe the entire phrase of claim 1, "a gap forming at least part of an annular shape," to preclude all contact of the insert and frame.

This Court held that the limitation language "forming part of an annular shape" required no construction since "annular" was held to mean "ring-like." The phrase was assigned its ordinary meaning of "forming part of a ring-like shape." (*Id.* at p. 11). It necessarily follows that a gap, or void forming part of a ring like shape, does ***not*** mean a void forming an entire ring all the way around and up and down the impact portion of the frame. Under this Court's construction, there must simply be a void or space forming at least part of a ring-like shape. Claim 1 has no limitation on the size for the part of a ring-like gap. There is no basis in the Court's Order, or the '398 Patent, for Miken's assertion.

In addition, Miken has no factual support for its argument. It is clear that the invention of the '398 Patent is a bat with a frame and an insert within the impact portion of the frame which "yields a mechanical system with characteristics similar to a leaf-spring." Miken ignores this important support for how a person of ordinary skill in the art of bat manufacture would have understood the claims of the '398 Patent. Miken avoids the '398 Patent's discussion of the "leaf-spring-like suspension" of the claimed bats even though the specification discusses its importance in the bat in at least three distinct places. ('398 Patent, col. 3, lns. 16-19; col. 3, lns. 35-47; and col. 4, lns. 58-60 (Streater Decl. Exh. 1)).

Indeed, the Federal Circuit, in reviewing the '398 Patent, recognized the significance of the "leaf spring" mechanics of this invention.[2] Nowhere is it suggested that the absence of

[2] On review of infringement issues, and application of the doctrine of equivalents, in the *Worth* case discussed in Defendant-Counterclaimant's *Markman* Hearing Memorandum, the Federal Circuit

contact is required to achieve the leaf-spring-like action. To the contrary,[3] while neither the claims, the specification nor the prosecution history ever indicate that an arbitrarily sized, fixed void must exist at all points between the insert and impact portion of the frame, the specification ***does make clear*** that a grease filled cavity is unnecessary for the '398 Patent invention to operate properly:

> Moreover, insert and bat frame materials which are themselves slippery so as to permit the independent movement of insert and frame may work equally as well. Indeed, lubricant may be omitted entirely, **so long as the resulting arrangement permits independent movement of insert and bat frame**.

('398 Patent, col. 5, lns. 19-25 (Streater Decl. Exh. 1)) (emphasis added).

Accordingly, Miken's strained re-construction argument, and the *entire basis* upon which it asserts non-infringement, is flawed and false.[4]

## B. Miken's Bats Have "Inserts"

### 1. Literal Infringement

Miken has apparently rejected the construction it argued to this Court of "insert" as "a structural component that is inserted into the bat frame." (Doscotch Decl. Exh. B at p. 12). Miken argues a new construction for the purpose of establishing that its Ultra, Ultra II, M-Pulse, Velocit-E II and Edge (the so-called "new bats"), do not meet the "insert" limitation of the

---

specifically recognized the significance of "leaf spring" trampoline in the bat: "Eggiman's [the inventor's] new understanding of the trampoline effect, coupled with his knowledge of **the manner in which leaf springs are able to give and slide over one another**, gave him the idea of a double-walled bat . . . ." *DeMarini Sports, Inc. v. Worth, Inc.,* 239 F.3d 1314, 1318 (Fed. Cir. 2001) (emphasis added).

[3] Wilson's expert on mechanical systems, materials and bat manufacture has stated that there is no requirement that the layers of a leaf-spring system, like a '398 Patent bat, *not* be in contact. Leaf-spring deformation and rebound occurs with adjacent surfaces, in contact with each other, provided that the structure permits independent sliding motion of the two adjacent interface surfaces. (Expert Report Of David M. Parks, Ph.D., at 11-12 ("Dr. Parks' Report") attached to Doscotch Decl. as Exh. C).

[4] Miken is attempting to "back door" its *Markman* argument that the insert cannot touch the frame, and is therefore "suspended" within the frame. See Miken's Opening *Markman* Memorandum, pages 18 - 21. Yet the limitation of "suspended" nowhere appears in asserted claims 1, 15 and 18. The limitation of "suspended", is **only** a limitation of dependent claim 2, not asserted in this case. ('398 Patent, col. 5, ln. 67 (Streater Decl. Exh. 1))). Miken's argument runs afoul of the doctrine of claim differentiation.

asserted claims. Miken's argument lacks merit and has been directly contradicted by its expert, Dr. Dennehy.

The Federal Circuit has already accepted the definition of "insert," as used in the '398 Patent, as "anything put or fit into something else." *DeMarini Sports, Inc. v. Worth, Inc.,* 239 F.3d 1314, 1330 (Fed. Cir. 2001). Accordingly, it is merely an exercise in word play for Miken to now argue that "insert" means "something that is inserted or is for insertion." (Plaintiff's Memorandum in Support of Motion for Summary Judgment ("Miken Brief") at p. 25). Miken circuitously argues that its so-called "new bats" are formed by successive layering of one structural member over another, and that since the frame is built over the insert, the insert does not meet the claim language because it was not stuffed into a pre-existing frame. The evidence, and law, do not support this argument.

First, Wilson has cut samples of <u>each</u> of the accused bats lengthwise, including the "new bats," and discovered separate, internal structural members inside the frames. (*See* Defendant Wilson Sporting Goods Co.'s Infringement Report of Douglas G. Guenther ("Guenther's October 24, 2003 Report") at pp. 4, 5, 15-18 and 20 attached to the Doscotch Decl. as Exh. D).

The Edge bat, for example, which is manufactured, according to Miken, just as the other so-called "new bats" are made, clearly has a separate insert within the frame as illustrated in Figure 1 of Guenther's October 24, 2004 Report, reproduced below:




**Figure 1. Miken Edge cut in half showing separate insert.**

**Figures 1A and 1B. Miken Ultra and Ultra II bats with inserts slid out from frames.**

Figure 1 clearly shows that Miken's representation of their bats as "akin to a plaster cast" is misleading and false. (Miken's Brief at p. 26). In Figures 1A and 1B it is apparent that the Ultra and Ultra II bats have separate, removable inserts which can be slid out from their frames. Whether the frames of these bats exist before the insert is positioned within it, or after, is a distinction without a difference.



**Figures 1A and 1B. Miken Ultra and Ultra II bats with inserts slid out from frames.**

Miken's lack of credibility on this point is underscored by the fact that their own expert, Dr. Dennehy, repeatedly refers to the inserts of each of these "new bat" models. In his October 15, 2003 Report, he states that "I quantified the interface between the insert and the frame layers seen in the wall cross section" of the Ultra and Ultra II bats. (Streater Decl. Exh. 4 at p. 6). In his January 15, 2004 Report, Dr. Dennehy explains that for the M-Pulse, Velocit-E II and Edge bats, "[t]he insert is cured at elevated temperature in an oven" and while still warm these inserts are

then "dipped in a release agent" before the frame is molded on top of them. (Streater Decl. Exh. 6 at p. 3). The purpose of the release agent is maintain the separateness of the inserts from the frames, and is tantamount to using a lubricating the parts to enhance their independent movement of the frame and insert under load in order to achieve leaf-spring-like action.[5] (Defendant Wilson Sporting Goods Co.'s Reply To Supplemental Report of Keith Dennehy ("Guenther's January 29, 2004 Report") at p. 5 attached to the Doscotch Decl. as Exhibit E).

Accordingly, based upon the findings and report of Wilson's infringement expert, Mr. Guenther, as well as those of Miken's expert, Dr. Dennehy, the Miken bats all have an "insert" as required in claims 1 and 18.

### 2. Infringement Under The Doctrine Of Equivalents

Not only do Miken's bats literally read on the "insert" limitation of claims 1 and 18, but they infringe under the doctrine of equivalents. The essence of the doctrine is that one may not practice a fraud on a patent. Under *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, "a patentee may invoke this doctrine to proceed against the producer of a device if it performs substantially the same function in substantially the same way to obtain the same result." 339 U.S. 605, 608 (1950) (citations omitted). The court determined that "[a]n important factor is whether persons reasonably skilled in the art would have known of the interchangeability of an ingredient not contained in the patent with one that was." *Id.* at 609. *Accord*, *Johnson & Johnson Assoc., Inc. v. R.E. Service Co., Inc.*, 285 F.3d 1046, 1053 (Fed. Cir. 2002).

In this case, persons skilled in the art, both Wilson's and Miken's experts, agree that the structural member inside the frame of the accused bats is an "insert." Further, the record demonstrates that the internal structural members of the so-called "new bats" are separate from

---

5 If Miken had not wanted to enhance the independent movement of the frame and insert under load, a power enhancing attribute disclosed in the '398 Patent, then Miken would not have used any release agent between the members. (Doscotch Decl. Exh. E at p. 5).

the frames of those bats, and that they provide the "leaf-spring-like" elasticity to the mechanical system. The '398 Patent discusses the function of the insert at several places, including the following preferred embodiment in the specification:

> The tubular frame 11 with the suspended insert 18 attached at both ends to the tubular frame 11 yields a mechanical system with characteristics similar to a leaf spring. When a bat 10 strikes a ball on the impact portion 12, the impact portion 12 wall deflects inwardly through the grease-filled gap 26, to load and inwardly deflect the underlying insert wall.

('398 Patent, col. 3, lns. 16-22 (Streater Decl. Exh. 1)).[6] Miken's "new bats" each have a structural member that is inserted into the frame assembly during the bat's manufacture. The Miken inserts perform the function described in the '398 Patent of creating a mechanical system with leaf-spring-like characteristics.[7]

In connection with the Load Deflection Test performed by Mr. Guenther as part of his Report on Miken's infringement, each of the Miken bats were measured in the same manner. (Doscotch Decl. Ex. D at pp. 10-14 and 21-24). The test compares how a single wall bat compares to the infringing bats as built and to the infringing bats when their inserts are bonded into tight abutment with the frame, such that they repell impacts rather than elastically flex, bend and stretch to share the load of impact. Results are summarized in the following Chart A, which clearly shows that when the Miken inserts of each of the accused bats are bonded to the frame,

---

[6] Additional references to the function of the insert are found at '398 Patent, col. 3, lns. 26-65; col. 4 lns. 24-38. (Streater Decl. Exh. 1). The latter references how the lubrication of the insert helps to facilitate its function in the leaf-spring-like mechanical system. Significantly, as set forth above, Miken's so-called "new bat" inserts are all dipped in a release agent which is the same as a lubricant, prior to molding the frame onto insert structural members.

[7] Leaf-springs operate with adjacent surfaces in contact, provided that some sliding motion is permitted at their interface. (Dr. Parks' Report, at 10-14 (Doscotch Decl. Exh. C)). See also, *DeMarini, supra,* 239 F.3d at 1318 ("the manner in which leaf springs are able to give and slide over one another, gave [Eggiman] the idea of a double-walled bat."). The specification discusses this dynamic in the presence of contact between the frame and insert, "the greater radius of curvature of the insert deflection causes the insert 18 to be stretched, as well as bent, around the deflection of the impact portion 12." ('398 Patent, col. 3, lns. 30-33 (Streater Decl. Exh. 1)).

inhibiting the independent movement of the two members, a dramatic increase in the load deflection rate of the bat members is seen.

**CHART A**




This increase in deflection, from the unglued to the glued, is the measure of independent movement, and the existence of a leaf-spring-like structure of frame and separate insert. These results are consistent with that of the DeMarini multi-wall bats, which are also embodiments of the invention.

In addition, Mr. Guenther also found that during actual usage of the Miken bats, including the "new bats," the separate frame and insert members deflected under load in a manner completely different from the geometric conditions for deflection of a single wall bat or

a multi-wall bat without a separate structural member inside the frame. (Doscotch Decl. Ex. D at p. 24). The separate structural member inside the frame decreases the ability of the structure to carry interlaminer shear throughout the full thickness of the structure, and thus the stiffness, or load deflection rate of the bats, is significantly reduced. A single wall structure of the same total thickness as above, or a multi-wall bat with bonded internal structures, is much stiffer than the Miken bat designs because the former structures carry significantly more interlaminer shear during load, simply because of their total thickness (without independently moving members), and therefore demonstrate a higher load deflection rate. (Doscotch Decl. Exh. D at pp. 21-26 and Guenther Exh. D).

Miken's so-called "new bats" therefore not only literally infringe the "iinsert" limitation, but also would infringe under the doctrine of equivalents since the internal structural members perform the same function in the same manner as an insert which is placed into a prefabricated frame.

**C. <u>Miken's Bats infringe Claim 1 of the '398 Patent</u>**

Miken asserts that its bats do not infringe claim 1 of the '398 Patent because they do not meet the "gap" limitation, as they assert it has been construed by this Court. However, Miken has misconstrued this Court's construction of the term "gap," as set forth above. In fact, each of Miken's nine accused bat models read upon the claim 1 element of "the insert being separated from the tubular frame by a gap forming at least part of an annular shape along a central portion between said first and second ends," ('398 Patent, col. 5, lns. 59-63 (Streater Decl. Exh. 1)). As construed by this Court, Wilson need only show that each of the accused bat models have a part of a ring-like void or space, of any size (provided it is a void of three dimensions), in the impact portion of the bat.

Miken's own expert provides this evidence, in his various reports, for most of the bat models. First, Wilson disputes Dr. Dennehy's accuracy and methodology in, among other things: 1) cutting the bats lengthwise, a procedure that results in the release of the circular members' "hoop stresses" which otherwise maintain the distance between the frame and insert, permitting the structures to collapse onto each other; and 2) attempting to extrapolate, from improperly illuminated electromicroscopic images, the size of perceived voids between the inserts and frames in the substantially collapsed structures. (*See* Defendant Wilson Sporting Goods Co.'s Reply to Initial Report of Keith Dennehy [Re: Infringement by Miken Intensit-E, Velocit-E and Ultra] ("Guenther's December 1, 2003 Report") at pp. 4-10 attached to the Doscotch Decl. as Exh. F).

Notwithstanding the grossly understated and inaccurate results of Dr. Dennehy's test procedures, he has conceded that Miken's hhd bat model has a "void" of 0.013" between the frame and insert in its impact portion. (Streater Decl. Exh. 6 at p. 6). Because of the circular nature of the frames and inserts, this necessarily reveals a void forming at least part of a ring like structure. Dr. Dennehy has similarly disclosed a void of 0.009" between the frame and insert in the impact portion in Miken's Viper model bat. (*Id.*).

In connection with the M-Pulse, Velocit-E II and Edge bats, which Miken has asserted in its Motion for Summary Judgment are all made in substantially the same manner, Dr. Dennehy has disclosed that the Edge bat has a void between the frame and insert, in the impact portion of the bat, measuring 0.011". (*Id.* at p. 7). Accordingly, since these bats are manufactured in the same manner, it is reasonable to conclude that the Velocit-E II and M-Pulse bats also are made with voids.

In fact, the reasonableness of this inference is demonstrated by the fact that in Mr. Guenther's infringement report, he shows a void forming at least part of a ring like shape in a ¼" ring taken from a Miken Velocit-E II bat. Figure 10 of Mr. Guenther's report, which demonstrates a 0.001" space or void between the frame and insert, is reproduced below. The gauge was inserted without use of lubrication or modification of the ring's structure. (Doscotch Decl. Exh. F at pp. 5-7).




**Figure 10. Miken Velocit-E II with 0.001" feeler gauge inserted between outer frame and insert.**

Miken's expert also concedes a void between the frame and insert of the Miken Ultra II bat, which Miken contends is built in a manner like the Miken Ultra bat. (Streater Decl. Exh. 4 at p. 8). In his original report, Dr. Dennehy discloses a void between the structural members measuring 0.0009". (*Id.*). As there is no limitation in claim 1 as to the size of the "gap" other

than it must form part of a ring like shape, there can be no reasonable dispute as to whether Miken's Ultra and Ultra II bats infringe claim 1 of the '398 Patent.

Indeed, Mr. Guenther has included in his December 1, 2003 report a photo showing a void forming at least part of a ring like shape in a ¼" ring taken from a Miken Ultra bat. Figure 11 of Mr. Guenther's report, which demonstrates a 0.001" space or void between the frame and insert of the Ultra bat is reproduced below. The gauge was inserted without use of lubrication or modification of the ring's structure. (Doscotch Decl. Exh. F at pp. 5-7).




**Figure 11. Miken Ultra with 0.001" feeler gauge inserted as above.**

Further, the spatial separation of the frames and inserts of the Miken bats is not limited to a single spot on the barrel of the bats. The rings for Figures 10 and 11 were taken randomly from the impact portion of the barrel of the sample bats. In addition, a series of adjoining ring cuts were made in an Ultra bat in order to sample the length of the spatial separation of the frame and insert. Figure 12, below, shows the same 0.001" separation in all 5 adjoining ring cuts. (Doscotch Decl. Exh. F at pp. 7-8).



**Figure 12. Miken Ultra with 0.001" feeler gauge inserted through all five (5) adjoining rings.**

A simple examination of a Miken Ultra bat on a light table, without magnification or extrapolation from enlarged microscopic images, reveals a clear separation between the Ultra's frame and insert. Figure 3, from Guenther's October 24, 2003 Report shows the easily visible separation or void between the frame and insert, forming part of an annular shape, seen as the white light shines up between the frame and insert.



**Figure 3. Miken Ultra, with visible light between frame and insert, <u>without</u> use of any magnification.**

Finally, Mr. Guenther showed that the Miken Intensit-E and Velocit-E bats met the elements of claim 1 of the '398 Patent. (Doscotch Decl. Exh. D at pp. 15-17 and 21-24). Both the Intensit-E and Velocit-E model bats performed the same as all of the other Miken accused bats in the load deflection test (see Chart A, above), and could not do so if the frames and inserts were in "tight abutment" or in an engaging relationship. Only in the presence of a separation between the structural members, as shown in the above illustrations, will the bats respond in a manner as shown in Chart A.

Miken's motion for summary judgment of non-infringement must therefore be denied as it is shown that the Miken bats do in fact infringe. At a minimum, Miken has failed to demonstrate the absence of genuine issues of material fact and has therefore failed to carry its burden of proof. *Conroy*, 14 F.3d at 1575.

**D. <u>Miken Has Failed To Meet Its Burden For Invalidating Claim 18</u>**

As set forth above, Miken bears a heavy burden of proving invalidity by clear and convincing evidence. *American Hoist*, 725 F.2d at 1358-60. Miken asserts only a single reference in its argument of invalidity of claim 18: U.S. Patent 3,861,682 ("Fujii I, '682 Patent"). Clear and convincing evidence must be presented as to each and every limitation of the prior art reference as well as to the patent attacked. *Metabolite Laboratories, Inc. v. Laboratory Corporation of Am.*, 370 F.3d 1354, 1367 (Fed. Cir. 2004).

In this case, Miken cites only to a patent that was considered by the USPTO in connection with the '398 Patent's prosecution.[8] It has consistently been held that "[w]here, as here the PTO previously considered the prior art reference, [the party asserting invalidity] has an even heavier burden to prove invalidity." *Metabolite*, 370 F.3d at 1368; *Hewlett-Packard Co. v. Bausch & Lomb Inc*., 909 F.2d 1464, 1467 (Fed. Cir. 1990) ("This burden is especially difficult when the prior art was before the PTO examiner during prosecution of the application.").

The court in *American Hoist,* provided an excellent basis for the burden which Miken must overcome:

> When no prior art other than that which was considered by the PTO examiner is relied on by the attacker, he has the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job, which includes one or more examiners who are assumed to have some expertise in interpreting the references and to be familiar from their work with the level of skill in the art and whose duty it is to issue only valid patents.

*American Hoist*, 725 F.2d at 1359.

Miken has failed to produce <u>any</u> evidence in support of its assertion of invalidity. In fact, Miken does no more than make semantic arguments in support of its attack on claim 18 as well as upon the conclusions of the USPTO examiner in citing the Fujii I '682. The teaching of the

---

[8] It should be noted that the '398 Patent was not amended to avoid the Fujii I '682.

Fujii I '682 bat is for a multi-walled structure in which the insert is hard, resilient, thick and "rigidly fixed" to the frame. (Fujii I '682, col. 3, ln. 27 (Streater Decl. Exh. 3)). The rigidly fixed insert is a plastic "ring or an axially short cylinder having considerable wall thickness." (*Id.* at col. 3, lns. 53-54). Alternatively, "a metallic cylindrical repelling insertion member 20 is inserted in the inner periphery of the metallic cylinder portion 11 . . . . This takes advantage of the most resilient portion of the bat." (*Id.* at col. 4, lns. 3-7).

Moreover, as Miken cites but misconstrues, the insert of the Fujii I '682 is a "cylindrical repelling member." (*Id.* at col. 4, ln. 38). The issue of "repelling action" was specifically disclosed in the '398 Patent as the ***problem*** with the prior art. Such a structural member, it was disclosed, merely serves "to thicken the wall of the impact portion of the bat." ('398 Patent, col. 1, ln. 68 (Streater Decl. Exh. 1)). Nowhere in the Fujii I '682 is there any disclosure of the use of elastically flexible members to achieve leaf-spring like movement of the bat walls. The USPTO rejected the Fujii '682 Patent as invalidating because it discloses a rigid structure with "thickened" walls that do not teach flexible rebound.

Miken falsely states that Fujii I '682 discloses a bat that "deforms" upon impact with a ball. There is no express or implicit disclosure, however, anywhere in Fujii I '682 that the invention is for an elastically flexible bat with "deformable" walls. The USPTO did not read Fujii I '682 in this manner, or it would not have cited to the patent in granting the '389 Patent application. To the contrary, every disclosure in Fujii I relates to a "rigidly fixed" insert devoid of independent movement. It is the independent movement of the frame and insert which are the hallmark qualities of the '398 Patent invention.

In fact, a review of Chart A above reveals that the single walled bats, as well as the bats with walls thickened by "rigidly fixed" inserts, insured by tight abutment adhesion, fail to

demonstrate the lower load deflection rates of the bats with relatively thin, flexible walls. In contrast to the "rigidly fixed" walls of the Fujii I '682 invention, the '398 Patent presents, among other things, a "mechanical system with characteristics similar to a leaf spring" and a bat in which "the resulting arrangement permits independent movement of insert and bat frame." ('398 Patent, col. 3, lns. 18-19, and col. 5, lns. 24-25 (Streater Decl. Exh. 1)). Miken ignores these principles, and fails to provide clear and convincing evidence that a bat built in accordance with the teachings of the Fujii I '682 would demonstrate similar leaf-spring-like qualities. Accordingly, Miken's motion must be denied.

### E. Miken's Bats Infringe Claim 18 Of The '398 Patent

Miken has argued that all of its bats are built so that the frame and insert in "tight abutment," with an "interference fit" and that they cannot infringe claim 18 since one of the elements of claim 18 requires that the frame's "impact portion being inwardly elastically deflectable such to establish a tight interference fit between the insert and impact portion." Miken's argument is that if its bats have an interference fit prior to impact, then such a fit is not created upon impact. Miken's argument must fail, however, in light of the record evidence.

Claim 18 of the '398 Patent contains the following elements:

- A bat comprising:
- a hollow tubular bat frame
- having a small-diameter handle portion and a large-diameter impact portion
- having a circular cross-section with an inner and outer diameter;
- at least one insert having a substantially circular cross-section
- with an outer diameter less than the inner diameter of the frame impact portion,
- the insert being held within the impact portion and the impact portion being inwardly elastically deflectable such to establish a tight interference fit between the insert and impact portion.

('398 Patent, col. 5, ln. 54 to col. 8, ln. 5 (Streater Decl. Exh. 1)).

With respect to claim 18, the court in *DeMarini Sports, Inc. v. Worth* held that the operative "interference fit" limitation was redefined from the traditional engineering sense (described in the '398 Patent, col. 4, lns. 24-34), as provided in the following section of the specification:

> In yet another embodiment of the invention, positive attachments of the insert **18** within the frame **11** may be dispensed with altogether. In this case, the insert would "float" on the layer of the lubricant. An impact with a ball will cause the frame to deflect, thereby creating interference attachments for the insert **18** during impact. The swing of the bat during impact may tend to lodge the insert **18** in the end of the frame, contributing to an attachment. A bat with a insert held in this manner may respond much like a bat with an insert held at two interference fits. Furthermore, this alternative embodiment will also perform well when the lubricant is omitted.

*DeMarini Sports, Inc. v. Worth, Inc.*, U.S.D.C., District of Oregon, Civil No. 97-1693-KI ("*Worth* Opinion") at p. 8 and attached to the Doscotch Decl. as Exh. A. (*See* '398 Patent, col. 5, lns. 33-45 (Streater Decl. Exh. 1)).

In consideration of the foregoing, the *Worth* Court held that:

> DeMarini redefined the term 'interference fit' in claim 18, as it is allowed to do, with the language quoted above from col. 5. I conclude 'interference fit' in claim 18 is interpreted to be a transient attachment at impact which occurs anywhere along the insert, including but not limited to the impact point of the insert ends. The separation between the insert and the frame is not required to be continuous but is only limited by the requirement that the frame bend inward enough to make a momentary attachment between the frame and the insert. **There is no requirement that the insert float within the frame prior to impact.**

(*Worth* Opinion at p. 9 (Doscotch Decl. Exh. A)) (emphasis added).

In this regard, the '398 Patent's leaf-spring, elastic impact response is expressly distinguished from the Miken's alternative prior art reference, U.S. Patent 3,963,239 ("Fujii II '239"). In Fujii II, '239, a reference also cited by the USPTO in the prosecution of the '398 Patent, an insert is bonded with adhesives, or in "tight abutment" with the frame, to provide additional "repelling action", which is the opposite of an elastically deflectable, springy impact portion. ('398 Patent, col. 1, lns. 59-64 (Streater Decl. Exh. 1)). In fact, Fujii '239 teaches that

the insert must be in "tight abutment," secured with "a suitable adhesive applied to the outer surface of said reinforcing member [insert], the engaging relationship of said reinforcing member with the inner periphery of the body 11 is firmly established and cannot be loosened by the repeated contact of a pitched ball" against the frame. (Fujii II '239", col. 3, lns. 24-29 and 45-50 (Streater Decl. Ex. 2)). Fujii II '239 teaches a two wall system that operates like a single thickened wall, as expressly described in the '398 Patent. ('398 Patent, col. 1, ln. 68 (Streater Decl. Exh. 1)).

Miken's bats do not, however, demonstrate a multi-wall system that operate like a single thickened wall. As shown in Chart A, above, and in Guenther's October 24, 2004 Report, at pages 10-14 and 21-24 (Doscotch Decl. Ex. D), the Miken bats all demonstrate that the frames and inserts move independently, as shown by their lower deflection rates in comparison to the same models when the inserts are rigidly fixed to the frames through adhesives. Mr. Guenther was able to conclude that each of the Miken bat frames are elastically deflectble, meaning that they deflect upon impact, transfer load to the inserts and then rebound after removal of the load.

Mr. Guenther specifically concluded that, based upon his tests, the impact of the ball upon the bat causes deflection of the independent layers of the Miken bat, as seen in a comparison of the unbonded and bonded members in Chart A. And the inward deflection of the layers causes the relatively tight, transient interference fit between the composite tubes that satisfies the requirements of claim 18. As stated by Dr. Parks:

> There is no specific degree of tightness specified for these transient interference fits in claim 18. However, one of ordinary skill in the art would recognize that the temporary interference fit should be tight enough to hold the insert in place during the impact, but not so tight that it prevents independent movement of the walls of the insert and the frame in the impact portion of the bat.

(Dr. Parks Report at pp. 25-26 (Doscotch Decl. Exh. C)).

The insert of the Miken Infringing Bats is sufficiently separate from the frame of those bats to move independently during impact, yet during impact, the insert is sufficiently tight to be held in place within the frame. (Doscotch Decl. Exh. D at pp. 6-10). Mr. Guenther demonstrated this further by examining ¼ inch ring cuts of Miken bats. By holding a ¼ inch ring in his hand and pushing with his fingers against the inner ring relative to the outer ring, he showed and opined that the frame and insert are not in "tight abutment." (*Id.*)



**Figure 4. Miken 1/4 ring, insert pushes out freely from frame.**

The requirement of "tight abutment" is disclosed in Fujii II '239 and can be achieved by "use of a suitable adhesive" between the frame and insert. (Fujii II '239, col. 3. lns. 26-27 and 46 (Streater Decl. Exh. 1)). Miken's expert provided an opinion that the frames and inserts of the Miken bats are manufactured in "tight abutment" which he claims is proven by the need for a 1,000 pound force to move the insert from inside the frame. (Streater Decl. Exh. 5 at p. 6). Dr. Dennehy admitted, however, that he has no understanding of the meaning of "tight abutment",

rendering his opinions on these structures invalid. (Deposition of Keith Dennehy at pp. 38-44 (Doscotch Decl. Exh. G)).

Furthermore, as demonstrated in section C above regarding infringement of claim 1, each of the Miken bat models have voids between the frames and the inserts such that upon impact with a ball, the void can be closed by the proven deflection of the frame wall, creating the transient interference fit which meets the limitations of claim 18. *See* Affidavit of Douglas Guenther, ¶¶ 2-4.

Miken cannot escape infringement by simply asserting that it takes a large amount of pressure to push a Miken insert into its frame. The close tolerances between the frames and inserts of the Miken and Wilson bats, measuring in the thousandths of an inch to form the void, are as thin or thinner than a sheet of paper. Affidavit of Douglas Guenther, ¶ 5. With structural members measuring approximately 10" – 12" in length, this necessarily means that a great deal of pressure is required to overcome friction to introduce the insert to the frame. Affidavit of Douglas Guenther, ¶¶ 5-6. The bats made by Wilson in accordance with the '398 Patent also require force to introduce the insert into the frame, despite the use of a lubricant. Affidavit of Douglas Guenther, ¶ 6.

The transient interference fit of claim 18 is established at a localized area significantly smaller than a 10" – 12" insert, and is more appropriately represented by the ¼" rings used in Mr. Guenther's tests and Reports. Affidavit of Douglas Guenther, ¶ 7. Accordingly, the Miken bats meet the claim limitations of claim 18 (and claim 1), as demonstrated above.

## F. <u>Infringement Of Claim 18 Not Shown To "Improperly Ensnare" Prior Art</u>

Miken finally argues that if its bats infringe claim 18 of the '398 Patent, that claim 18 would then improperly "ensnare" Fujii II '239, a reference cited in and discussed in the '398 Patent. Miken's argument is in actuality an alternative invalidity argument (alternative to their

argument for invalidity under Fujii I '682). Accordingly, Miken is held to the same, persistent and heavy burden of proving the facts in support of their argument by clear and convincing evidence. *American Hoist, supra,* 725 F.2d at 1358-60. Miken has entirely failed to meet this burden.

Miken has failed to provide any evidence whatsoever that the Fujii II '239 bats operate with what the '398 Patent requires: elastically flexible walls that deflect and rebound after impact. In fact, Fujii II '239 teaches that its insert is a "cylindrical reinforcing member [that] is composed of a suitably hard material having a high repelling force." (Fujii II '239, col. 2, lns. 62-64 (Streater Decl. Exh. 2). As discussed above, "repelling" action was specifically disclosed in the '398 Patent as the ***problem*** with the prior art. Such an insert merely serves "to thicken the wall of the impact portion of the bat." ('398 Patent, col. 1, ln. 68 (Streater Decl. Exh. 1). Nowhere in the Fujii II '239 is there any disclosure of the use of elastically flexible members to achieve leaf-spring like movement of the bat walls. The USPTO rejected the Fujii II '239 Patent as invalidating because it discloses a rigid structure with "thickened" walls that do not teach flexible rebound.

In addition, Wilson's expert, Dr. Parks, provided the following opinions regarding the Fujii II '239 Patent:

> Fujii '239 notes that if "the batting portion of the bat is . . . too thin," it will cause a serious drawback in the resisting force of the batting portion of the bat against the impulse produced when the bat strikes the ball" (Fujii '239, col.1, lns. 48-51). Accordingly, it continues "the present invention . . . has as one of its main objects, a novel type of metallic bat containing a batting portion which possesses a high impact resistance when the bat strikes a ball" (Fujii '239, col. 3, lns. 56-57). **Thus it is clear that an intended purpose of the Fujii '239 invention is to increase the stiffness of the batting portion, in direct contrast to the increased elastic deflection (reduced stiffness) taught in the '398 Patent.**

(Dr. Parks Report at pp. 26-27 (Doscotch Decl. Exh. C)) (emphasis added). The Miken bats were clearly made with highly flexible, reduced stiffness walls in order to capture the power of a bat built with leaf-spring-like movement, as shown in Chart A above. Miken's invalidity argument is therefore without merit.

Miken's empty argument that Fujii II '239 discloses a removable insert is also to no avail. Whether the one can somehow remove the "reinforcing" "high impact resistant" insert that "is composed of a suitably hard material" is not dispositive of whether the insert and frame move independently, in the nature of a leaf spring, which is disclosed by the '398 Patent, and which is an essential feature of a bat built in accordance with claim 18. Accordingly, Miken's unsupported argument for invalidity must be denied.

## III. CONCLUSION

For the foregoing reasons, Miken has failed to sustain its burden of proving non-infringement and Wilson respectfully requests that Miken's motion for summary judgment of non-infringement of claims 1 and 18 of the '398 Patent be denied. Further, as set forth above, Miken has failed to meet its even heavier burden of proving invalidity of claim 18 and Wilson respectfully requests that Miken's motion to declare claim 18 invalid be denied.

Respectfully submitted,

Dated: October 4, 2004

s/ Matthew A. Doscotch
Douglas J. Williams (#117,353)
Matthew A. Doscotch (#029,973X)
Merchant & Gould P.C.
3200 IDS Center
80 South Eighth Street
Minneapolis, MN. 55402-4131
Telephone: (612) 332-5300
Facsimile: (612) 332-9081

Jeffery A. Key, Esq. (#6269206)
Key & Associates
150 N. Michigan Ave., Suite 1115
Chicago, Illinois 60601
Telephone: (312) 560-2148
Facsimile: (312) 553-1232

Attorneys for Defendant-Counterclaimant
Wilson Sporting Goods Co.