K 003 0316P
BMG/cnr

**IN THE CANADIAN PATENT OFFICE**

| | | |
|---|---|---|
| Applicant: | Demarini Sports, Inc. | |
| Title: | **SOFTBALL BAT** | |
| Serial No.: | 2,123,531 | Classification: A63B-059/06 |
| Filed: | 13 May, 1994 | |

Date: 29 August, 1997

To: The Commissioner of Patents
Ottawa/Hull
K1A 0C9

Dear Sir/Madam:

**AMENDMENT**

By way of a voluntary amendment, kindly amend the claims of this application by replacing pages 10 and 11 of the claims with amended pages 10 and 11 enclosed herewith.

REMARKS

Claims 1 and 15 have been amended to substantially conform the claims to those as issued in the corresponding United States patent. Passage to allowance is therefore respectfully requested.

Respectfully submitted,

By: ORIGINAL SIGNED BY
OYEN WIGGS
GREEN & MUTALA

Oyen Wiggs Green & Mutala
Patent Agents for the Applicant
Per: Bruce M. Green
Tel: (604) 669-3432
Fax: (604) 681-4081

Vancouver, B.C.
CANADA



DM000136

WHAT IS CLAIMED IS:

1. A bat, comprising:

a hollow tubular bat frame having a circular cross-section; and

an insert positioned within the frame, the insert having a circular cross-section, the insert having first and second ends adjoining the tubular frame, the insert being separated from the tubular frame by a gap forming at least part of an annular shape along a central portion between said first and second ends, the frame elastically deflectable across the gap to operably engage the insert along a portion of the insert between the insert first and second ends.

2. A bat according to claim 1 in which the insert is suspended within the frame and is secured thereto at said first and second ends.

3. A bat according to claim 2, wherein the gap is filled with a lubricant to facilitate the relative movement between the insert and the tubular frame when a ball is struck.

4. A bat according to claim 3, wherein the tubular frame has a small-diameter handle portion, an intermediate tapering portion, and a large diameter impact portion, and the insert is suspended within the frame impact portion.

5. A bat according to claim 4, wherein the insert is tubular.

6. A bat according to claim 5, wherein the gap thickness is small relative to the thickness of the impact portion wall and the insert wall.

7. A bat according to claim 6, with the tubular frame further having a reduced-diameter head portion atop the impact portion; and

the first insert end being secured within the frame by a first interference fit within the tapering portion of the frame, and the second insert end being secured with the frame by a second interference fit within the head portion of the bat.

8. A bat according to claim 7, wherein the interference fits seal the lubricant within the gap.

9. A bat according to claim 8, wherein the insert is made of aluminum.

10. A bat according to claim 8, wherein the tubular frame is made of aluminum.

11. A bat according to claim 8, wherein the insert is made of titanium.

12. A bat according to claim 8, wherein the insert is made of composite material.

13. A bat according to claim 8, wherein the insert is made of steel.

14. A bat according to claim 10, wherein the lubricant is grease.

15. In a hollow bat having a small-diameter handle portion and a large-diameter impact portion, an improvement comprising an internal structural insert defining an annular gap with an inside wall of the impact portion of the bat and the impact portion elastically deflectable to close a portion of the annular gap and operably engage the insert.

16. The bat of claim 13, in which the gap is filled with a plastically deformable substance.

17. A bat, comprising:

a hollow tubular frame having a small diameter handle portion, an intermediate tapering portion, a large diameter impact portion, and a reduced-diameter head portion;

a tubular insert adapted to be suspended within the frame impact portion;

a first end of the tubular insert being received into the tapering portion and secured therein by a first interference fit;

a second end of the tubular insert being received by the head portion of the frame and secured therein by a second interference fit;

a gap separating the insert from the tubular frame, the gap extending from the first interference fit to the second interference fit, the gap being filled with grease to facilitate relative movement between the tubular frame and the insert when the bat strikes a ball; and

the insert and the frame being made of aluminum.

OYEN WIGGS GREEN & MUTALA
#480 - 601 West Cordova Street
Vancouver, B.C., Canada, V6B 1G1
Tel: (604) 669-3432
Patent Agents for the Applicant

OPIC
OFFICE DE LA PROPRIÉTÉ INTELLECTUELLE DU CANADA
Bureau des brevets

Ottawa Hull K1A 0C9

CIPO
CANADIAN INTELLECTUAL PROPERTY OFFICE
Patent Office

Oyen Wiggs Green & Mutala
Suite 480, The Station
601 West Cordova Street
Vancouver, B.C.
V6B 1G1

Date: 1997/06/02

# ACCUSÉ DE RÉCEPTION DE LA REQUÊTE D'EXAMEN
# ACKNOWLEDGEMENT OF REQUEST FOR EXAMINATION

| | | |
|---|---|---|
| N° de demande/Application No. | : | 2,123,531 |
| Demandeur/Applicant | : | Demarini Sports, Inc. |
| Titre/Title | : | SOFTBALL BAT |
| Classification/Classification | : | A63B-059/06 |
| Votre référence/Your Reference | : | K 03 AV-316P |

Nous accusons réception de la requête d'examen et de la taxe prescrite.

L'examen de la demande suivra son cours.

Le demandeur est prié de fournir les détails de toutes les antériorités citées à l'égard de la demande correspondante aux États-Unis et en Europe lorsqu'elles seront disponibles. De plus, afin de faciliter la procédure d'examen de cette demande, il serait utile de nous envoyer une copie de toutes les citations qui ne sont pas des brevets.

Veuillez ne pas tenir compte du paragraphe précédent si vous avez déjà soumis les antériorités.

The Request for Examination and prescribed fee have been received.

Examination of the application will take place in due course.

Applicant is requested to furnish particulars of the prior art cited in respect of the corresponding applications before the United States Patent Office and European Patent Office when such information becomes available. Furthermore, in order to assist in the examination of this application, a copy of all non-patent citations would be appreciated.

If prior art has already been submitted, please disregard the above paragraph.

DM000139

K 03 AV-316 2123531

TMC:n 1/93 4189-38031.asn

REEL 6616 FRAME 212

A S S I G N M E N T

WHEREAS, I, MICHAEL D. EGGIMAN, of 31155 NW Milne Street, Hillsboro, County of Washington, State of Oregon 97124, have invented a certain invention entitled IMPROVED SOFTBALL BAT for which application for Letters Patent was filed in the United States Patent and Trademark Office on May 14, 1993, and was assigned application Serial No. 08/062,307; and

WHEREAS, DEMARINI SPORTS, INC., a corporation organized under the laws of the State of Oregon, having a place of business at 755 SW Dennis Street, Hillsboro, OR 97123, is desirous of acquiring an interest therein:

NOW, THEREFORE, in consideration of good and valuable consideration, the receipt of which is hereby acknowledged, I, MICHAEL D. EGGIMAN, hereby sell, assign and transfer to DEMARINI SPORTS, INC., the full and exclusive right, title and interest in and to said invention, patent application and patent rights throughout the world, including foreign patent priority rights, the right to file and prosecute International Applications under the Patent Cooperation Treaty, and the right to file and prosecute applications under the European Patent Convention; said invention, application and letters patent in this or any foreign country, and all divisions, continuations, reissues and extensions thereof, to be held and enjoyed by DEMARINI SPORTS, INC., for its own use and benefit, and for its successors and assigns to the full end of the term for which letters patent may



State of Oregon )
County of Multnomah)

I certify that this is a true and correct copy of a document in the possession of Klarquist, Sparkman, Campbell, Leigh & Whinston.

Dated: May 9, 1994

BRIDGETT MORRISON
NOTARY PUBLIC - OREGON
My Commision Expires 6-28-97

TMC 5/4/93 4189-38031.asn

be granted in this or any foreign country, as fully and entirely as the same would have been held by me had this assignment and sale not been made, and covenant that I have full right so to do, and agree that I will communicate to DEMARINI SPORTS, INC., or its successors and assigns, any facts known to me respecting said invention, and testify in any legal proceeding, sign all lawful papers, execute all divisional, continuing and reissue applications, make all rightful oaths, and do everything possible to aid DEMARINI SPORTS, INC., its successors and assigns to obtain and enforce proper patent protection for said invention in this or any foreign country.

Executed at Hillsboro, State of Oregon, this 8th day of June, 1993.

Michael D. Eggiman
MICHAEL D. EGGIMAN

STATE OF OREGON )
) ss.
COUNTY OF WASHINGTON )

This 8th day of June, 1993, before me personally came the above-named MICHAEL D. EGGIMAN, who executed the foregoing instrument in my presence, and who acknowledged to me that he executed the same of his own free will for the purposes set forth therein.

Pat Lawson
Notary Public for
My commission expires: 5-9-97

[SEAL]

OFFICIAL SEAL
PAT LAWSON
NOTARY PUBLIC-OREGON
COMMISSION NO.022798
MY COMMISSION EXPIRES MAY 09, 1997

JUL 19 93
RECORDED
PATENT AND TRADEMARK OFFICE

REEL 6616 FRAME 273

ASSIGNMENT - PAGE 2 OF 2

OPIC
Office de la propriété intellectuelle du Canada
Bureau des brevets

Ottawa Hull K1A 0C9

CIPO
Canadian Intellectual Property Office
Patent Office

Oyen Wiggs Green & Mutala
Suite 480, The Station
601 West Cordova Street
Vancouver, B.C.
V6B 1G1

**Registration Date**

**November 15, 1994**

**ENREGISTREMENT - REGISTRATION**

**1404225**

Un document a été enregistré au Bureau des brevets, visant le ou les numéros de brevets(s) et/ou de demande(s) de brevet, apparaissant ci-dessous.

A document has been registered at the Patent Office, against the following patent(s) and/or application for patent(s).

| DEMANDES(S) - APPLICATIONS(S) | BREVET(S) - PATENT(S) |
| --- | --- |
| 2123531 | |

DM000142

D. Lefaivre
Commis aux cessions de brevets - Patent Assignment Clerk

OPIC
OFFICE DE LA PROPRIÉTÉ INTELLECTUELLE DU CANADA

CIPO
CANADIAN INTELLECTUAL PROPERTY OFFICE

Ottawa Hull K1A 0C9

Oyen Wiggs Green & Mutala
Suite 480 - The Station,
601 West Cordova Street,
Vancouver, British Columbia
V6B 1G1

Your File
K 03 AV-316P

## FILING CERTIFICATE

**Patent File No:** 2,123,531 **Filed:** 1994/05/13

**Laid-Open Date:** 1994/11/15

**Priority Date :** U.S.A. (08/062,307) 19930514

**Invention :** Softball Bat

**Owner(s) :** Demarini Sports, Inc.

**Inventor(s) :** Eggiman, Michael D.

DM000143

**SPECIAL NOTICE**

You are reminded that annual fees to maintain your application (or patent) are needed for each one-year period between the 1st and 19th anniversaries of the filing date. Failure to pay will lead to abandonment of your application (or lapsing of a patent).

A. McDonagh

DIRECTOR
DOCUMENTATION AND
REGISTRATION BRANCH

# PETITION
# BY ASSIGNEE OF ALL INTEREST

THE PETITION OF DEMARINI SPORTS, INC. whose full post office address is 755 S.W. Dennis Street, Hillsboro, Oregon 97123, United States of America SHEWETH:

1. That Michael D. Eggiman whose full post office address(es) is (are) 31155 N.W. Milne Street, Hillsboro, Oregon 97124, United States of America made the invention entitled **IMPROVED SOFTBALL BAT** which is described and claimed in the specification submitted herewith.

2. That the entire right to obtain a patent for the said invention has been assigned to Your Petitioner.

3. That Your Petitioner(s) verily believe(s) that he (they) is (are) entitled to a patent for the said invention having regard to the provisions of the Patent Act.

4. Your Petitioner(s) request(s) that this application be treated as entitled to the rights accorded by section 28 of the said Act having regard to the application(s) of which particulars are set out below, and represent(s) that the said application(s) is (are) the first application(s) for patent for the said invention filed in any country which by treaty, convention or law affords similar rights to citizens of Canada by the inventor(s) or anyone claiming under him (them):

| | |
|---|---|
| Country: | United States of America |
| Serial No.: | 08/062,307 |
| Filing Date: | 14 May 1993 |

5. That Your Petitioner(s) verily believe(s) that he (they) is (are) entitled to pay a filing fee as a small entity as defined in Section 2 of the Patent Rules.

6. That Your Petitioner(s) hereby nominate(s) Oyen Wiggs Green & Mutala, who carry on business in Canada at 480 The Station, 601 West Cordova Street, Vancouver, B.C., Canada V6B 1G1, to be his (their) representatives for the service of any proceeding taken under the Act.

7. That Your Petitioner(s) hereby appoint(s) Oyen Wiggs Green & Mutala, whose full post office address is: 480 The Station, 601 West Cordova Street, Vancouver, B.C., Canada V6B 1G1, as his (their) agents, with full power to appoint an associate agent when required to do so by the Patent Rules and to revoke such appointment, to sign the petition and drawings, to amend the specifications and drawings, to prosecute the application, and to receive the patent granted on the said application; and to ratify(ies) any act done by the said appointees in respect of the said application.

8. Your Petitioner(s) therefore pray(s) that a patent may be granted to him (them) for the said invention.

Signed at Vancouver, B.C., Canada, this 13th day of May, 1994.

ORIGINAL SIGNED BY
OYEN WIGGS
GREEN & MUTALA

OYEN WIGGS GREEN & MUTALA

66029

1991 INSTITUTO MEXICANO DE LA PROPIEDAD INDUSTRIAL

1994 DEC -8 PM 4 50

PETICION BAJO EL
ARTICULO 2º TRANSITORIO
EXPEDIENTE NO. 943595
DE PATENTE

C. DIRECTOR GENERAL DEL INSTITUTO MEXICANO DE LA PROPIEDAD INDUSTRIAL.

Me refiero a la solicitud que se tramita bajo el número señalado al rubro y más en particular al Artículo 2º Transitorio de la Ley de Propiedad Industrial, para manifestar a usted que mi mandante ha decidido solicitar a usted que se continúe el trámite de esta solicitud bajo las disposiciones contenidas en las reformas a la Ley de Propiedad Industrial.

De acuerdo a lo anterior he de rogarle se sirva ordenar que se tome nota de esta promoción en el expediente oficial respectivo, a fin de que se apliquen las nuevas disposiciones en este asunto en los trámites subsecuentes.

Asimismo, para todos los efectos legales a los que haya lugar, ruego a usted se sirva tomar nota de que este escrito está siendo presentado dentro del plazo de 60 días contados a partir de la fecha de entrada en vigor de la Ley de la Materia.

Protesto a usted mi más atenta consideración.
México, D. F., a 9 de Diciembre de 1994.

POR DEMARINI SPORTS INC.

A P O D E R A D O

DOMICILIO PARA OIR NOTIFICACIONES: THIERS No. 251-12º PISO,
11590 MEXICO, D.F.

SGM/*

N/C P94/433

PETICION BAJO EL
ARTICULO 8º TRANSITORIO
EXPEDIENTE NO. 943595
DE PATENTE

7110

C. DIRECTOR GENERAL DEL INSTITUTO MEXICANO DE LA PROPIEDAD INDUSTRIAL.

FEB 28 7 09 PM '95

Me refiero a la solicitud que se tramita bajo el número señalado al rubro y más en particular al Artículo 8º Transitorio de la Ley de Propiedad Industrial, para manifestar a usted que por medio del presente escrito, me estoy permitiendo exhibir el comprobante de pago de la obligación fiscal correspondiente al examen de fondo, y solicito de la manera más atenta que se efectúe el examen de fondo de la solicitud que me ocupa, de conformidad con el Artículo 53 de la Ley de la Materia.

Para tal efecto, anexo el comprobante de pago de derechos correspondiente al Artículo 63, Fracción IV de la Ley Federal de Derechos.

Ruego a usted C. Director se proceda de conformidad con lo anteriormente solicitado y se me informen los resultados de dicho examen de fondo mediante oficio expedido por este Instituto.

Asimismo, para todos los efectos legales a los que haya lugar, ruego a usted se sirva tomar nota de que este escrito está siendo presentado dentro del plazo de cinco meses a partir de la fecha de entrada en vigor de la Ley de la Materia.

Protesto a Usted mi más atenta consideración.

México, D.F. a 27 de febrero de 1995.

POR DEMARINI SPORTS INC.

APODERADO

ANEXOS:

- Comprobante oficial de pago de derechos
- Declaración de pequeña entidad

DOMICILIO PARA OIR NOTIFICACIONES: THIERS No. 251-12º PISO,
11590 MEXICO, D.F.

SGM/mvm P94/433

EXPEDIENTE NO. 943595
DE PATENTE

**DECLARACION BAJO PROTESTA PARA RECLAMAR LA CONDICION DE PEQUEÑA ENTIDAD (ARTICULO 70-C DE LA LEY FEDERAL DE DERECHOS).**

CAUSAHABIENTE: DEMARINI SPORTS INC.

Por medio de la presente declaro bajo protesta de decir verdad que el causahabiente arriba identificado califica como una pequeña entidad para los propósitos de recibir los beneficios del artículo 70-C de la Ley Federal de Derechos en vigor, consistentes en el pago de derechos reducidos de acuerdo con las disposiciones de dicho artículo, toda vez que el número de personas ocupadas por dicho causahabiente, incluyendo las de sus filiales, no excede de 100 y toda vez que sus correspondientes ventas anuales no exceden del equivalente a 1,115 veces el salario mínimo general, elevado al año, correspondiente a la zona geográfica A.

Esta declaración bajo protesta se ejecuta en conformidad con lo previsto por el artículo 166, Fracción II (C) de la Resolución que establece Reglas Generales y Disposiciones de Carácter Fiscal para el año de 1991, publicada en el Diario Oficial de la Federación de fecha 15 de marzo de 1991.

Declaro asimismo que reconozco el deber de notificar cualquier cambio que dé como resultado la pérdida de la calidad de pequeña entidad, notificación que me comprometo a someter ya sea antes de o en el momento de enterar cualesquiera derechos en el campo de la Propiedad Industrial.

México, D.F. a 27 de febrero de 1995.

Por: DEMARINI SPORTS INC.

APODERADO

P94/433

64775

IMPI INSTITUTO MEXICANO DE LA PROPIEDAD INDUSTRIAL 1

1994 DEC -6 PM 3 45

ACCION OFICIAL ADMINISTRATIVA
EXPEDIENTE No. 9403595
DE PATENTE

C. DIRECTOR GENERAL DEL INSTITUTO MEXICANO DE LA PROPIEDAD INDUSTRIAL

Me refiero al asunto ~~que~~ se identifica bajo el número señalado al rubro y, más en particular, a su atento oficio número 26727, de fecha 13 de septiembre de 1994, para manifestar a usted que, por lo que se refiere a los requisitos pedidos en su atento oficio que se contesta, con el presente escrito estoy procediendo a dar debido cumplimiento a los mismos, para cuyo efecto exhibo:

- Copia fotostática de mi registro en el Registro General de Poderes con No. RGP/5913.
- Documento de cesión de derechos.
- Ya procedo a enterar los derechos respectivos (50% Pequeña Entidad).

Por lo tanto, ruego a usted se sirva tener por cumplidos en tiempo y forma los requisitos pedidos en su oficio señalado y ordenar que se prosiga el trámite de este asunto conforme a la Ley de la Materia.

Protesto a usted mi más atenta consideración.

México, D.F., a 6 de diciembre de 1994.

POR DEMARINI SPORTS, INC.

APODERADO

(Anexos en la siguiente página)

ANEXOS:

- Copia fotostática de mi registro en el Registro General de Poderes con No. RGP/5913.

- Documento de cesión de derechos.

- Declaración de pequeña entidad.

- Recibo oficial del pago de derechos.

DOMICILIO PARA OIR NOTIFICACIONES: THIERS No. 251-12º PISO,
11590 MEXICO, D.F.

FA-2

*art.

FORM SDT-1

USO EXCLUSIVO DE LA DGDT

**SECOFI**

SECRETARIA DE COMERCIO Y FOMENTO INDUSTRIAL
DIRECCION GENERAL DE DESARROLLO TECNOLOGICO

(21) EXPEDIENTE

Nº DE FOLIO DE ENTRADA 943595

32235

(22) FECHA Y HORA DE PRESENTACION '94 MAY 13 ... 21

(12) SOLICITUD DE

XXX PATENTE DE INVENCION
☐ REGISTRO DE MODELO DE UTILIDAD
☐ REGISTRO DE DISEÑO INDUSTRIAL
MODELO ☐ DIBUJO ☐

(71) SOLICITANTE (S) — EL SOLICITANTE ES EL INVENTOR ☐ — EL SOLICITANTE ES EL CAUSAHABIENTE XX

DEMARINI SPORTS, INC.
nombre (s)

NORTEAMERICANA
nacionalidad (es)

755 S. W. DENNIS STREET
domicilio del primer solicitante (calle numero y colonia)

HILLSBORO, OREGON — E. U. A. — 97123
(población y estado) (país) (código postal)

(72) INVENTOR(ES)

MICHAEL D. EGGIMAN
nombre (s)

NORTEAMERICANO
nacionalidad (es)

31155 N. W. MILNE STREET
domicilio del primer inventor (calle, numero y colonia)

HILLSBORO, OREGON — E. U. A. — 97124
(poblacion y estado) (país) (codigo postal)

(74) APODERADO (S)

ING. OSCAR M. BECERRIL, SRITA. ELVIA COCA L., ING. RICARDO BECERRIL,
nombre (s)
ING. PATRICIA BECERRIL, ING. JOSE ANTONIO ROMERO — RGP

THIERS 251 PISO 12, COL. ANZURES
domicilio para notificaciones (calle numero y colonia)

MEXICO, D.F. — MEXICO — 11590
(población y estado) (país) (código postal)

(54) DENOMINACION O TITULO DE LA INVENCION

BAT DE SOFTBALL MEJORADO

(51) CLASIFICACION INTERNACIONAL

(62) DIVISIONAL DE LA SOLICITUD

NUMERO — MODALIDAD — FECHA DE PRESENTACION (día mes año)

(30) PRIORIDAD RECLAMADA

| (33) PAIS | (32) FECHA DE PRESENTACION (día mes año) | (31) Nº DE SERIE |
|---|---|---|
| E. U. A. | 14 MAYO 1993 | 08/062,307 |

[signature]
FIRMA DEL SOLICITANTE O SU APODERADO

México, D. F. a 23 de Mayo de 1994.
LUGAR Y FECHA

INSTRUCCIONES DE LLENADO AL REVERSO — LLENAR A MAQUINA 310-052

RFM/gfr

SE AUTORIZA SU LIBRE REPRODUCCION SIEMPRE Y CUANDO NO SE ALTERE

ESTA FORMA ES GRATUITA

DM000150

P94/433

# BAT DE SOFTBALL MEJORADO

Inventor(es): MICHAEL D. EGGIMAN, norteamericano, con domicilio en 31155 N. W. Milne Street, Hillsboro, Oregon 97124, E. U. A.

Causahabiente: DEMARINI SPORTS, INC., una sociedad norteamericana, organizada y existente de acuerdo con las leyes del Estado de Oregon, con domicilio en 755 S. W. Dennis Street, Hillsboro, Oregon 97123, E. U. A.

## RESUMEN

Se provee una estructura tubular para bat de aluminio con una porción de impacto de diámetro grande, una porción intermedia ahusada y una porción de empuñadura de diámetro pequeño. Un inserto tubular está suspendido dentro de la porción de impacto mediante ajustes interferentes en cada extremo del inserto. Un primer ajuste de interferencia se logra forzando el primer extremo del inserto dentro de la porción ahusada de la estructura del bat.

El segundo ajuste interferente se forma después enrollando el extremo de la porción de impacto sobre el segundo extremo del inserto. Existe una separación a lo largo de la extensión del inserto suspendida que separa el inserto

del interior de la porción de impacto. La separación está rellenada con grasa para facilitar el movimiento relativo entre el inserto y la estructura tubular cuando se golpea una pelota.

## CAMPO DE LA INVENCION

La presente invención se relaciona con los bats de béisbol y softball y con mayor particularidad se refiere al uso de miembros estructurales en el interior de dichos bats para mejorar su respuesta al impacto.

## ANTECEDENTES Y BREVE DESCRIPCION DE LA INVENCION

Los bats de softball metálicos tubulares (y de béisbol) son bien conocidos en la técnica. Un ejemplo familiar es un bat tubular de aluminio. Dichos bats tienen la ventaja de contar con una respuesta generalmente buena al impacto, dando a entender que el bat transfiere de manera efectiva la potencia hacia la bola golpeada. Esta transferencia efectiva de potencia tiene como resultado que los jugadores alcancen buenas distancias con las bolas que batean.

Una ventaja adicional de los bats de aluminio es la duración mejorada con respecto a los bats de madera los

cuales tienen tendencia a agrietarse.

Aún cuando en la actualidad los bats de aluminio tienen un buen rendimiento, existe una continua búsqueda de bats con una mejor capacidad de golpeo. Por consiguiente, una necesidad importante es la de optimizar la respuesta del bat al impacto. Hablando en términos generales la respuesta al impacto es mejor cuando un bat experimenta una mayor deflexión elástica, antes de rebotar con una fuerza mayor en la menor cantidad de tiempo.

La optimización de estos tres factores incrementa el "despegue" de una bola desde el bat y produce un bat con una transferencia de potencia superior y facilidad para el golpeo.

Con respecto al diseño de los bats de aluminio el requerimiento es que la deflexión elástica no este acompañada por ninguna deformación plástica. La deflexión plástica disminuye la transferencia de potencia a la pelota y deja al bat con hendiduras permanentes. Por esto, el diseño de los bats de aluminio está guiado por las características de deformación plástica y elástica del aluminio. Por ejemplo, cuando la pared tubular es demasiado delgada se logra una cantidad convenientemente grande de deflexión elástica, pero con una deformación plástica permanente no deseada. Por otra parte, cuando la pared tubular de aluminio es demasiado gruesa, el bat puede ser demasiado rigido para obtener una

deflexión elástica apreciable. En este caso, el bat responde con una elasticidad relativamente pequeña, teniendo como resultado una transferencia de potencia más baja.

A fin de proveer una mayor "elasticidad", se han desarrollado bats tubulares utilizando otros materiales, como por ejemplo el titanio. El titanio es un material de alta resistencia que permite que las paredes estructurales de un bat delgado proporcionen una deflexión elástica substancial sin deformación plástica. Estos bats proporcionan una excelente respuesta de tipo elástico y transferencia de potencia a la bola bateada. Sin embargo, el costo del material y la dificultad para trabajar el titanio tiene como resultado un alto costo para el consumidor.

La técnica anterior también incluye bats tubulares que utilizan inserciones. Mientras que las inserciones se utilizan con mayor frecuencia para reducir la vibración, la patente de E.U.A. No. 3,963,239 de Fujii revela una estructura de bat metálico con una porción de impacto de diámetro grande que recibe un inserto para ajustar el peso y mejorar la "acción repelente" del bat. Fujii muestra un inserto en empalme ajustado dentro de la estructura tubular, de manera que el inserto está fijado con relación a la estructura. El acoplamiento se ha mejorado al ajustar por fuerza el inserto dentro de la porción intermedia ahusada del bat y/o pegando el inserto dentro de la estructura. El

inserto de adaptación ajustada de Fujii actúa simplemente para hacer más gruesa la pared de la porción de impacto del bat.

A la luz de las deficiencias de la técnica anterior, es objetivo de la presente invención proveer un bat mejorado.

Es otro objetivo de la presente invención proveer un bat que incremente la potencia transferida del bat a la pelota golpeada.

Un objetivo más de la presente invención es proporcionar una construcción simple para un bat tubular con un inserto.

De acuerdo con la modalidad preferida de la presente invención, se provee una un bat de aluminio de estructura tubular con una porción de impacto de diámetro grande, una porción ahusada intermedia y una porción de empuñadura de diámetro pequeño. Un inserto tubular está suspendido dentro de la porción de impacto mediante ajustes interferentes en cada extremo del inserto. Un primer ajuste interferente se logra al forzar el primer extremo del inserto dentro de la porción ahusada de la estructura del bat. El segundo ajuste interferente se forma al enrollar el extremo de la porción de impacto sobre el segundo extremo del inserto. A lo largo de la extensión del inserto suspendido hay una separación o claro que separa el inserto de la parte

interior de la porción de impacto. La separación está rellenada con grasa para facilitar el movimiento relativo entre el inserto y la estructura tubular cuando se golpea una pelota.

Las características precedentes y adicionales y las ventajas de la presente invención se pondrán de manifiesto más fácilmente a partir de la descripción detallada siguiente, la cual procede con referencia a los dibujos anexos.

## BREVE DESCRIPCION DE LOS DIBUJOS

Figura 1 muestra un corte seccionado a través del centro de un bat de sofbtall conforme a uno de los aspectos de la presente invención.

Figura 2 es una vista recortada y aumentada del bat de la figura 1.

Figura 3es una vista seccionada tomada a lo largo de la línea 3-3 de la figura 2.

## DESCRIPCION DETALLADA

Con relación a la figura 1, un bat de softball 10, conforme a una de las modalidades de la presente invención,

tiene una estructura tubular de aluminio 11 con una porción de impacto 12 con un diámetro relativamente grande, una porción intermedia ahusada 14 y una porción de empuñadura 16 de diámetro relativamente pequeño.

Para proveer una respuesta de impacto mejorada produciendo una mejor transferencia de potencia del bat a la pelota golpeada, un inserto tubular 18 está suspendido dentro de la porción de impacto 12 de la estructura tubular. El inserto tubular es un tubo hueco de un diámetro externo ligeramente menor que el diámetro interno de la porción de impacto 12 de la estructura tubular. Un primer extremo 20 del inserto tubular 18 está insertado a través de la porción de impacto 12 para ser introducido por fuerza en empalme con la pared interior diametralmente estrecha de la porción ahusada 14, formando de esta manera un primer ajuste interferente. Un segundo extremo 22 del inserto tubular 18 está espaciado internamente desde el extremo superior de la porción de impacto 12 cuando el inserto tubular 18 está asegurado en el primer ajuste interferente. Un segundo ajuste interferente se crea en el segundo extremo del inserto 22 al enrollar la porción superior de la porción de impacto sobre el segundo extremo del inserto 22. La porción enrollada superior forma una porción de cabeza de diámetro reducido 24 de la estructura tubular 11.

Debido a que el diámetro externo del inserto 18 es ligeramente menor del diámetro interno de la porción de impacto 12 de la estructura tubular, el inserto suspendido 18 hace contacto con la estructura tubular solamente en los ajustes interferentes de los extremos del inserto primero y segundo 20, 22. Una separación uniforme 26 estrecha, está presente entre el inserto 18 y la pared interna de la porción de impacto 12. La separación se extiende uniformemente alrededor del inserto (ver figura) 3) y a lo largo de la extensión del inserto entre el primero y segundo extremos del mismo 20, 22.

Como se puede ver mejor en la figura 2, la separación 26 está rellenada con un lubricante, tal como grasa. La grasa es depositada en la separación 26 cubriendo el inserto 18 con ella antes de que el inserto sea introducido en la estructura tubular 11.

Una vez que el inserto 18 está asegurado entre los ajustes interferentes primero y segundo, la separación rellenada con lubricante 26 se sella de manera efectiva mediante los ajustes interferentes primero y segundo.

El manejo de un bat de softball de la modalidad ilustrada está diseñado para una transferencia mejorada de potencia hacia la bola golpeada. De manera especifica el bat 10 responde al impacto con una bola proporcionando una deflexión elástica grande, la cual rebota con una fuerza

mayor en un menor período de tiempo.

La estructura tubular 11 con el inserto suspendido 18 unido a ambos extremos de la estructura tubular 11 produce un sistema de mecanismo con características similares a un resorte de hojas. Cuando el bat 10 golpea una pelota en la porción de impacto 12 la pared de la porción de impacto 12 se desvía hacia adentro a través de la separación rellenada con grasa 26 para recibir la carga y deflexiona internamente la pared de inserción precedente. De manera general la deflexión de la porción de impacto 12 puede ser considerada como curva o arqueada. Por consiguiente, la inserción 18 deflexiona en forma arqueada para soportar la deflexión curva de la porción de impacto 12.

Debido a que la curvatura en el inserto 18 soporta la curvatura de la porción de impacto 12, la curvatura de el inserto 18 tiene un radio de curvatura mayor que el de la curvatura de la porción de impacto 12. Debido a que el inserto 18 está fijado dentro de la estructura tubular en los extremos de la inserción 20, 22 el radio mayor de la curvatura de la deflexión del inserto provoca que el inserto 18 sea pensado como, deflexionada o curvada, alrededor de la deflexión de la porción de impacto 12. Por lo tanto, el inserto 18 experimenta una tensión substancial, así como tensiones de curvatura cuando la pelota es golpeada.

La unión semejante a un resorte de navajas del inserto 18 dentro de la porción de impacto 12 provee un rebote para producir una transmisión de potencia mejorada a la pelota. Las tensiones de curvatura son liberadas conforme a las paredes de la porción de impacto 1 2 y el inserto 18 regresan a su estado de descarga. La carga de tensión de la pared de inserción precedente se libera de manera simultánea, agregando "energía" que incrementa la fuerza y velocidad del rebote. Por consiguiente la energía extra debido a la suspensión en forma de resorte de navajas de la inserción 18 dentro de la estructura tubular produce una transferencia mejorada de potencia a la pelota golpeada, y una capacidad intensificada de golpeo para el bat.

La grasa permite el movimiento relativo entre la porción de impacto 12 y el inserto 18, de manera que el inserto puede de manera independiente extenderse alrededor de la deflexión de la porción de impacto 12. La condición sellada de la grasa dentro de la separación ofrece otra ventaja. El impacto con una bola puede ocurrir de manera tan rápida que la grasa no fluye de manera apreciable. Preferiblemente, la grasa soporta de manera hidrostática la pared de la porción de impacto lejos de el inserto. En este caso, una capa substancial de grasa se mantiene entre la porción de impacto y el inserto, facilitando el movimiento de el inserto con relación a la porción de impacto. En otro

aspecto, cualquier flujo de la grasa que ocurra durante el impacto sirve para distribuir la fuerza de impacto sobre un área extendida de la porción de impacto 12. La distribución de la tensión de impacto permite una porción de impacto de paredes más delgadas debido a que las concentraciones de alta tensión provocan una deformación plástica que no es deseable que ocurra.

En una modalidad preferida, tanto la estructura tubular como el inserto están hechas de aluminio. Una construcción de ejemplo del bat tiene la estructura tubular 11 hundida en un tubo de aluminio de diámetro constante para producir una estructura integral libre de soldaduras. Dicho hundimiento tiene como resultado una estructura tubular con paredes más delgadas en la porción de impacto 10 y paredes más gruesas en la porción de empuñadura 16. Mientras que el hundimiento sea utilizado para producir la estructura tubular 11 de la modalidad ilustrada, debe entenderse que otros métodos de manufactura de la estructura tubular pueden dar resultados igualmente buenos.

Utilizando aluminio con un límite elástico de 5,624 Kilogramos por centímetro cuadrado, se logra una excelente respuesta de bateo cuando la porción de impacto 12 es de aproximadamente 33.02 centímetros de largo con un grosor de pared de 0.147 centímetros. Un inserto 18 ligeramente menor que la porción de impacto 12 y que tiene un grosor de pared

de 0.121 centímetros se inserta dentro de la porción de impacto 12. El diámetro externo del inserto se selecciona de manera que la separación entre la superficie externa del inserto 18 y la superficie interna de la superficie de impacto 12 sea de aproximadamente 0.017 centímetros.

En tanto que dichas dimensiones producen excelentes resultados, debe entenderse que son solamente ejemplos, y que muchos cambios de la estructura del bat, el inserto y las dimensiones de la separación pueden dar resultados igualmente buenos. Todos los cambios en las dimensiones de los componentes y las configuraciones quedan contempladas en el alcance de la presente invención.

En una descripción más amplia de una construcción preferida, el inserto 18 está recubierto con el lubricante antes de ser insertado en la estructura tubular 11. El primer extremo 20 del inserto 18 es insertado por fuerza dentro de la porción ahusada para lograr un ajuste interferente ajustado. La deformación plástica del inserto de aluminio en el ajuste interferente incrementa el ajuste de la unión y del sello. El segundo ajuste interferente se obtiene entonces dentro de una porción de cabeza de estructura 24, la cual esta formada por el extremo enrollado superior de la porción de impacto 12 sobre el segundo extremo del inserto 22. Se ha encontrado que un ajuste más apretado se logra enrollando un radio de media pulgada de manera forzada suficiente para

causar alguna deformación plástica en el segundo extremo del inserto 22. El enrollado puede facilitarse mediante calentamiento local del extremo de la porción de impacto.

Debe entenderse que el precedente es solamente un ejemplo, y que se pueden obtener resultados igualmente buenos sin el calentamiento, enrollado o deformación plástica de los extremos del inserto. Por ejemplo la porción de cabeza 24 de la estructura puede ser preformada y ensartada en la parte superior de la porción de impacto 12. En este caso la porción de cabeza 24 puede ser ensartada para o golpear ajustadamente sobre el segundo extremo del inserto 22, para crear el ajuste interferente

Los ajustes interferentes de la modalidad ilustrada ofrecen un excelente rendimiento y son ventajosos por la simplicidad del diseño y manufactura (notándose la ausencia de cualquier tipo de soldadura requerida).

Sin embargo, debe entenderse que la soldadura u otros sujetadores pueden ser utilizados. Por ejemplo, los dispositivos adicionales de mejoramiento de la fricción pueden utilizarse en los ajustes interferentes de los insertos y en la estructura tubular 11. De manera alternativa los sujetadores adhesivos o mecánicos para unir los extremos del inserto a la estructura tubular también pueden utilizarse. Cualquier sujetador puede servir también para el propósito de sellar el lubricante dentro de la separación 26.

Cualquier mecanismo de unión o sujetador que mantenga la suspensión en forma de resorte de hojas queda comprendido dentro de los alcances de la presente invención.

En tanto que la presente modalidad utiliza aluminio para la estructura y el inserto, debe entenderse que muchos otros materiales pueden tener un rendimiento igualmente bueno con la presente invención. Por ejemplo, a un costo ligeramente mayor el titanio puede utilizarse como material del inserto con excelentes resultados. Un inserto de titanio es mas ventajosa debido a su excelente respuesta al impacto. Además, debido a que el inserto está en un tubo hueco, se reducen los problemas de trabajo en frió y maquinado asociados con el titanio. El inserto de titanio proporciona un bat con una respuesta al impacto superior pero a un costo sumamente reducido en comparación con el de un bat de titanio sólido.

Además, cuando el costo es una consideración menor, un inserto de titanio puede utilizarse dentro de un bat de titanio con resultados o sobresalientes. Debe entenderse que muchos otros metales, materiales compuestos, plásticos y otros materiales pueden de manera similar tener un rendimiento igualmente bueno con la presente invención.

Muchos tipos de lubricantes se pueden utilizar con los bats de la presente invención. Variando la viscosidad de el lubricante puede modificarse la sensación y la respuesta

de dichos bats. En una modalidad preferida, una grasa de grado pesado se utiliza para acentuar el efecto hidrostático de la grasa durante el impacto. Se pueden utilizar tanto lubricantes sintéticos como grasas y aceites a base de petróleo. Resultados igualmente buenos pueden obtenerse por el uso de lubricantes tales como el Teflón™ . Además, los materiales de la estructura del bat y el inserto que son por si mismos resbalosos a fin de permitir que el movimiento independiente del inserto y de la estructura pueden trabajar igualmente bien. En realidad, el lubricante puede omitirse por completo, mientras que la disposición resultante permita el movimiento independiente del inserto y de la estructura del bat.

Es bien reconocido que el lubricante es un material plasticamente deformable. La deformación plástica de este material es liberada por la acción de la estructura del bat y el inserto. Ciertas ventajas de la presente invención pueden lograrse al sustituir cualquier material plasticamente deformable en la separación 26, sin tener en cuenta si es o no un lubricante.

En una modalidad más de la invención, las uniones positivas del inserto 18 dentro de la estructura 11 pueden ser distribuidas con todos los demás componentes. En este caso, el inserto "flotaria" en la capa del lubricante. Un impacto con una bola causará que la estructura se deflexione,

con lo cual creará uniones de interferencia para el inserto 18 durante el impacto. El impulso de bat durante el impacto puede tender a introducir el inserto 18 en el extremo de la estructura, contribuyendo a una unión. Un bat con un inserto sujetado de está manera puede responder como un bat con un inserto sujetado en dos ajustes interferentes. Además está modalidad alternativa rendirá igualmente bien cuando se omita el lubricante.

En vista de las posibles modalidades a las cuales los principios de la presente invención pueden aplicarse, debe reconocerse que la modalidad detallada es ilustrativa solamente y no debe tomarse como limitante del campo de acción de la invención. Preferentemente, reivindico como mi invención todas esas modalidades ya sea que puedan estar dentro del alcance y espíritu de las siguientes reivindicaciones y equivalentes de la presente.

## NOVEDAD DE LA INVENCION

## REIVINDICACIONES

1. Un bat caracterizado porque comprende: una estructura tubular hueca; y un inserto posicionado dentro de la estructura, teniendo el inserto extremos colindantes a la estructura tubular, estando el inserto separado de la estructura tubular por una separación a lo largo de la porción central entre los extremos mencionados.

2. Un bat de conformidad con la reivindicación 1, caracterizado además porque el inserto está suspendido dentro de la estructura y está asegurado a la misma en sus extremos primero y segundo.

3. Un bat de conformidad con la reivindicación 2, caracterizado además porque la estructura tubular tiene una porción de empuñadura de diámetro pequeño, una porción intermedia ahusada y una porción de impacto de diámetro grande, y el inserto está suspendido dentro de la porción de impacto de la estructura.

4. Un bat de conformidad con la reivindicación 3, caracterizado además porque la estructura tubular tiene una porción de empuñadura de diámetro pequeño, una porción intermedia ahusada, y una porción de impacto de diámetro grande y el inserto está suspendido dentro de la porción de

impacto de la estructura.

5. Un bat de conformidad con la reivindicación 4, caracterizado además porque el inserto es tubular.

6. Un bat de conformidad con la reivindicación 5, caracterizado además porque el grosor de la separación es pequeño en relación con el grosor de la pared de la porción de impacto y la pared de la inserción.

7. Un bat de conformidad con la reivindicación 6, caracterizado además porque la estructura tubular tiene una porción de cabeza de diámetro reducido en la parte superior de la porción de impacto; y el primer extremo del inserto está asegurado dentro de la estructura mediante un primer ajuste interferente dentro de la porción ahusada de la estructura, y el segundo extremo del inserto está asegurado con la estructura mediante un segundo ajuste interferente dentro de la porción de cabeza del bat.

8. Un bat de conformidad con la reivindicación 7, caracterizado además porque los ajustes interferentes sellan el lubricante dentro de la separación.

9. Un bat de conformidad con la reivindicación 8, caracterizado además porque el inserto está fabricado en aluminio.

10. Un tubo de conformidad con la reivindicación 8, caracterizado además porque la estructura tubular está fabricada en aluminio.

11. Un bat de conformidad con la reivindicación 8, caracterizado además porque el inserto esta fabricado en titanio.

12. Un bat de conformidad con la reivindicación 8, caracterizado además porque el inserto está fabricado de un material compuesto.

13. Un bat de conformidad con la reivindicación 8, caracterizado además porque el inserto está hecho de acero.

14. Un bat de conformidad con la reivindicación 10, caracterizado además porque el lubricante es grasa.

15. En un bat hueco una mejora que comprende un inserto estructural interno que define una separación anular con una pared interna del bat.

16. El bat de la reivindicación 13, caracterizado además porque la separación está rellenada con una substancia plásticamente deformable.

17. Un bat, caracterizado porque comprende: una estructura tubular hueca que tiene una porción de empuñadura de diámetro pequeño, una porción intermedia ahusada, una porción de impacto de diámetro grande y una porción de cabeza de diámetro reducido; un inserto tubular adaptada para estar suspendido dentro de la porc.ón de impacto de la estructura; un primer extremo de el inserto tubular que está contenido dentro la porción ahusada y asegurado a la misma mediante un primer ajuste interferente; un segundo extremo del inserto

tubular que está contenido mediante la porción de cabeza de la estructura y asegurado a la misma mediante un segundo ajuste interferente; una separación que divide el inserto de la estructura tubular, extendiéndose dicha separación desde el primer ajuste interferente hasta el segundo ajuste interferente, y estando rellenada con grasa para facilitar el movimiento relativo entre la estructura tubular y el inserto cuando el bat golpea una pelota; y el inserto y la estructura están fabricadas en aluminio.

En testimonio de lo cual firmo lo anterior en esta ciudad de México, D.F. a los 13 días del mes de Mayo de 1994.

Por: DEMARINI SPORTS, INC.

A P O D E R A D O

RFM/gfr*mep*

CERTIFICATE

# State of Oregon

OFFICE OF THE SECRETARY OF STATE

*I, PHIL KEISLING, Secretary of State of Oregon, and Custodian of the Seal of said State, do hereby certify:*

*THAT PAT LAWSON, a Notary Public in and for the State of Oregon was on the 10th day of May, 1993, duly commissioned as such by the Secretary Of State of the State of Oregon for the term ending at midnight on the 9th day of May, 1997 and that he or she is a duly qualified Notary Public with full power and authority to take acknowledgments of all instruments in writing and to administer oaths, and that full faith and credit should be given to his or her official acts as Notary Public aforesaid.*

*I FURTHER CERTIFY THAT I have carefully compared the signature and seal of this Notary Public as it appears on the annexed document, with the Notary Public's official signature and seal on file in this office and believe them to be genuine.*

*AND I FURTHER CERTIFY THAT the office of the Secretary of State is an office of record and that the Secretary of State is the custodian of the records and files showing the appointment of Notaries Public by the Secretary Of State of the State of Oregon and the qualifications of such appointees thereunder, and duly qualified by law to make certifications of said appointments and qualifications of Notaries Public of the State of Oregon.*

*In Testimony Whereof, I have hereunto set my hand and affixed hereto the Seal of the State of Oregon. Done at the Capitol at Salem, Oregon, this 13th day of June, A.D. 1994.*

*PHIL KEISLING, Secretary of State*

By Robin L Zelmer

*Assistant to Secretary of State*

# NOTARIAL CERTIFICATION

NOTARIAL CERTIFICACION

I, Michael D. Eggiman certify that I have sufficient legal capacity to grant this power of attorney on behalf of DEMARINI SPORTS, INC.

I certify that my legal capacity is legitimate in accordance to the records in the books, instruments and documents which constitute direct and positive evidence of the legal capacity above mentioned and that all formal requirements provided by law have been fulfilled to deem as undoubtfully proven the legal capacity of my signatory hereof.

1) The Articles of Incorporation of said Corporation duly recorded with the Secretary of State of the State of Oregon on 6/3/94.

2) The By-laws of the Corporation dated 6/3/94 executed in the City of Portland State of Oregon, Country of U.S.A.

3) The Resolution of the Board of Directors held at the City of Hillsboro State of Oregon, Country U.S.A. dated 6/3/94, which elected the Board of Directors with authority to grant powers of attorney.

In accordance to said evidence, I certify the following:

a) That DEMARINI SPORTS, INC. is a Company duly organized and legally existing under the laws of the State of Oregon, U.S.A.

b) That the main office of said Company is located at 755 S.W. Dennis Street, Hillsboro, Oregon 97123, United States of America.

c) That the purpose or purposes for which the present Power of Attorney is granted are comprised within the objects set forth in charter of the company.

d) That I, Michael D. Eggiman am authorized to confer this Power of Attorney.

Date: ~~May~~ June 3 1994

[signature]

Michael D. Eggiman, Vice President

State of Oregon )
County of Multnomah

On this 3 day of ~~May~~ June 1994, before me personally appeared Michael D. Eggiman who proved to me on the basis of satisfactory evidence to be the person who executed the within instrument as Vice President on behalf of DEMARINI SPORTS, INC. the corporation herein named, and acknowledged to me that the corporation executed it.

Pat Lawson

Notary Public for Oregon
My Commission Expires:

[SEAL]

OFFICIAL SEAL
PAT LAWSON
NOTARY PUBLIC - OREGON
COMMISSION NO. 022798
MY COMMISSION EXPIRES MAY 09, 1997

DM000174

e2991 · 63/7

## INSTRUCTIONS

The Power of Attorney hereinbelow must be exec. by applicant. If applicant is an individual please insert na. below his signature. If applicant is a corporation or other moral person, please insert name of corporation above signature and name and title of signatory below his signature. Two witnesses must also sign on the corresponding lines. See note below.

**Becerril, Coca & Becerril, S.C.**
P.O. Box 265
Col. Centro
Deleg. Cuauhtémoc
06000 México, D.F.

## POWER OF ATTORNEY

Messrs. Oscar M. Becerril, Elvia Coca, Ricardo Becerril, Patricia Becerril, and Jose A. Romero, indistinctly.

Thiers 251 - 12th Floor
Mexico, D.F. 11590. Mexico

Gentlemen:

By these presents, I (we) hereby confer on you ample and sufficient power of attorney, in order that you jointly or separately may represent me(us) in all kinds of technical and legal causes, including all matters relating to the subjects regulated by any and all laws and regulations of Mexico, including without limitation the laws on Industrial Property, the Copyright Law, the laws regulating the Transfer of Technology, the laws regulating the enforcement of Trade Secrets, the Customs Regulations, the laws on Foreign Investment and the General Health Law, as well as any and all decrees or regulations referring to fiscal or any other type of benefits and promotions for industry and trade.

In connection with the above described objects of this power of attorney, those faculties inherent to a general power of attorney are bestowed on you and particularly those necessary to: make affidavits and declarations on my(our) behalf; file oppositions and grant consents in connection with trademark applications lodged by third parties; make limitations and cancellations; receive and answer notifications and resolutions; seek recourses before the authorities, be they judicial or administrative; record assignments and license agreements of all my(our) rights and trade secrets; file, prosecute, maintain and desist from any kind of applications, specifications, amendments, oppositions, declarations, recourses, appeals and claims; pay official fees and taxes as well as disburse any other necessary expenses; prove working of patents and use of trademarks; intervene in any way in compulsory and/or public interest licensing procedures; obtain notarial or other testimonies and certified copies; effect renewals; receive documents, titles and grants; record voluntary cancellations of trademark registrations and restrictions of goods; obtain declarations of extinction or nullification of patents, utility models, designs, trademark registrations, slogans and trade names of third parties; desist from any type of applications referring to intellectual and industrial property rights; institute and prosecute any types of suits against third parties for infringement of my(our) industrial and intellectual property rights; and, in general, do everything before the administrative and judicial authorities which may be necessary to safeguard my(our) interests, including the right to institute and desist from procedures for nullifying registrations and patents of third parties, as well as procedures relating to the infringement of my(our) intellectual and industrial property rights; hereby authorizing you also to partially or fully substitute this power of attorney, and to ratify all kinds of juridical acts previously executed by you or by other proxies, as well as to institute, intervene in and desist from "amparo" appeal proceedings and any other recourses, appeals or complaints in my(our) name before said authorities, be they judicial or administrative.

## CARTA PODER

Sres. Oscar M. Becerril, Elvia Coca, Ricardo Becerril, Patricia Becerril, y José A. Romero, indistintamente.

Thiers 251-12o. Piso
México, D.F., 11590. México

Muy señor(es) nuestro(s):

Por la presente otorgo (otorgamos) a ustedes poder especial, pero tan amplio como en derecho proceda, para que conjunta o separadamente, me (nos) representen, en toda clase de asuntos legales y técnicos, incluyendo todo tipo de asuntos relativos a las materias reguladas por cualquier ley o reglamento de México, señalando sin que implique limitación, las leyes de Propiedad Industrial, las leyes sobre el Derecho de Autor, las leyes que regulan la Transferencia de Tecnología, las leyes que regulan la protección de los Secretos Industriales, los reglamentos de Aduana, las leyes sobre Inversión Extranjera y la Ley General de Salud, así como también cualesquiera otros decretos o reglamentos que se refieran a la obtención de beneficios o promociones fiscales o de cualquier otro tipo para la industria y el comercio.

En relación con el anterior objeto de este mandato se otorgan a ustedes las facultades inherentes a un mandato general y particularmente las necesarias para: hacer declaraciones, juradas o no, en mi (nuestro) nombre: presentar oposiciones y otorgar consentimientos en relación con solicitudes de marcas de terceros; hacer limitaciones y cancelaciones; recibir y contestar notificaciones y resoluciones; recurrirlas ante las autoridades judiciales o administrativas; registrar cesiones y convenios de licencia respecto de todos mis (nuestros) derechos y secretos industriales; presentar, tramitar, mantener en vigencia y desistirse de cualquier clase de solicitudes, descripciones, enmiendas, oposiciones, declaraciones, recursos, apelaciones y demandas; pagar derechos y realizar toda otra clase de gastos; comprobar la explotación de patentes y el uso de marcas; intervenir de cualquier manera en los trámites de licencias obligatorias y de utilidad pública; obtener testimonios notariales o de cualquier otro tipo, así como copias certificadas; efectuar renovaciones; recibir documentos, títulos y certificados de registro; inscribir cancelaciones voluntarias de registros de marcas y restricciones de artículos; obtener declaraciones de extinción o nulidad de patentes, modelos de utilidad, diseños, registros de marcas, avisos y nombres comerciales de terceros; desistirse de cualquier tipo de solicitudes referentes a derechos de propiedad industrial e intelectual; instituir y tramitar cualesquier tipo de demandas contra terceros por la invasión de mis (nuestros) derechos de propiedad industrial e intelectual; y, en general, hacer cuanto fuere necesario ante las autoridades administrativas y judiciales de cualquier orden, en resguardo de mis (nuestros) intereses, incluyendo el derecho de instituir y desistirse de demandas de nulidad de registros y patentes de terceros, así como de demandas de invasión de mis (nuestros) derechos de propiedad industrial e intelectual, dándoles asimismo facultad para sustituir total o parcialmente el presente poder, y de ratificar toda clase de actos jurídicos realizados anteriormente por ustedes o por otros apoderados, así como para demandar, intervenir y desistirse del juicio de amparo y de cualesquier otros recursos, apelaciones o demandas en mi (nuestro) nombre ante dichas autoridades, ya sean administrativas o judiciales.

Signed on this 3 day of ~~May~~ June 19 94

Firmado el ____ de ____ de 19____

Otorgante (Applicant)

[signature]

Nombre (Name) Michael D. Eggiman

Título (Title) President

DM000175

Testigo (Witness)

Nombre (Name) [signature]

Domicilio (Address) 5161 NE 121st Ave #32L
Vancouver, WA 98682

Testigo (Witness)

Nombre (Name) [signature]

Domicilio (Address) 21000 NW Quatama Rd #1[illegible]
Beaverton OR 97006

(Notarial Certificate on back. - Certificado Notarial al reverso).

A) This power of attorney does not require legalization if granted, by sole or joint individuals. Instead, please have this power executed by said individual(s) by two witnesses, mentioning their names and domiciles.

B) If this power of attorney is granted by a partnership or by, a company or corporation, it still must be signed in the presence of two witnesses, mentioning their names and domiciles, but the notarial certificate on back of this form must also, be executed by a Notary Public, whose signature is to be legalized up to the nearest Mexican Consul. If said notarial certificate is duly executed, the power of attorney will be regarded as valid unless proof to the contrary is produced by opponent.

C) If for some, very special reason it is not possible or desirable to have the notarial certificate executed, it may be possible to file the document without notarization, provided that the laws of the country where it is issued do not require said notarization. However, such an unlegalized power of attorney may be challenged by any third party (including the Patent Office itself) because the burden of the proof of validity will be on the grantor of said power. Therefore, we definitely do not recommend to send unlegalized powers of attorney.