**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**THIRD DIVISION**

| | | |
|---|---|---|
| MIKEN COMPOSITES, L.L.C., Plaintiff, | ) | **Court File No. 02-CV-769 DSD/SRN** |
| v. | ) | |
| WILSON SPORTING GOODS CO. Defendant. | ) | **DEFENDANT WILSON SPORTING GOODS CO.'S INFRINGEMENT REPORT OF DOUGLAS G. GUENTHER** |

Pursuant to Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, Douglas G. Guenther hereby tenders the following expert report.

## QUALIFICATIONS FOR SUBMISSION OF EXPERT TESTIMONY.

I am employed by Wilson Sporting Goods Co. ("Wilson"), as Director Research and Development, Team Sports at their offices in Chicago, Illinois.

I received a Bachelor of Science in Engineering Mechanics from the University of Missouri -Rolla in 1982; a Master of Science in Engineering Mechanics from the University of Missouri - Rolla in 1989. My areas of technical specialization include the analysis of mechanical structures, including commercial and fighter aircraft, automobile structures / engines, exercise equipment, and sporting goods equipment.

I have conducted research in construction of sporting goods products including bats, footballs, basketballs, and other goods, including the testing of materials competitive analysis of sporting goods products from other manufacturers, and have worked closely with other persons in the field of bats including Mike Eggiman, the

inventor behind U.S. Patent No. 5,415,398, entitled "Softball Bat" ("the '398 Patent"), Attachment B. I have also studied, tested, analyzed the mechanical behavior of structures and materials, including metals, polymers, composites, leathers and synthetic leathers. I am the inventor on 13 patents listed on my Curriculum Vitae, Attachment A. I have consulted with industry and scholastic experts in these as well as other areas.

I am also a named inventor on a number of pending ball bat patent applications, including: U.S. Patent Application, Publication No. 20030195066, "Bat With Composite Handle"; U.S. Patent Application, Publication No. 20030186763 "Bat With Composite Handle"; U.S. Patent Application (not yet published), No. 10/226699, "Performance Adjusting Attachment for a Ball Bat and Method of Using Same"; U.S. Patent Application (not yet published), No. 29/166400, "Attachment for a Ball Bat."

I was a member of the American Society of Mechanical Engineers from 1983 to 1993. I have testified regarding the construction of sporting goods products in *Spalding Sporting Goods Co. Inc. v. Wilson Sporting Goods Co.,* United States District Court, E.D. MA.

I am being compensated for my work in connection with this case at a rate of $75 per hour.

## II. MATERIALS REVIEWED FOR THE OPINIONS EXPRESSED IN THIS REPORT.

I have been asked to provide technical expert opinions regarding the technology and design of multi-walled aluminum and composite softball and baseball bats, including the potential infringement of the '398 Patent by softball bats sold by Plaintiff Miken Composites LLC ("Miken"), including the following models: HHD, Viper, Intensit-E, Velocit-E, Velocit-E II, Ultra, Ultra II, Edge and M-Pulse.

In forming the opinions expressed in this report I have considered the '398 Patent (Attachment B). I have examined the above referenced bats. In addition, I have also reviewed the deposition transcripts and certain attached exhibits of Michael D. Eggiman

in DeMarini v. Worth and in Wilson v. H&B. I have reviewed the Expert Report of David M. Parks, Ph.D. submitted in *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co., et al.*, as well as the Expert Report of Dr. Parks submitted in the captioned case. I have reviewed other material from the *DeMarini v. Worth* case, including the opinion dated January 14, 1999 in the *DeMarini v. Worth* case (Attachment C). I have also reviewed the opinions of Eugene Johnson, dated May 4, 2001 and submitted by Miken in *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co., et al.*

My opinions are based on my own personal knowledge and experience, and a review of the literature, documents, and exhibits provided to me. All opinions and facts stated herein are true and correct to the best of my knowledge. Nevertheless, I expressly reserve the right to modify or supplement my opinions in the event that any additional information is provided to me.

## III. <u>Statement of Opinions and the Reasons Therefore.</u>

### A. <u>List of Opinions</u>

1. The HHD infringes claims 1, 15 and 18 of the `398 Patent.
2. The Viper infringes claims 1, 15 and 18 of the `398 Patent.
3. The Intensit-E infringes claims 1, 15 and 18 of the `398 Patent.
4. The Velocit-E infringes claims 1, 15 and 18 of the `398 Patent.
5. The Velocit-E II infringes claims 1, 15 and 18 of the `398 Patent.
6. The Ultra I infringes claims 1, 15 and 18 of the `398 Patent.
7. The Ultra II infringes claims 1, 15 and 18 of the `398 Patent.
8. The Edge infringes claims 1, 15 and 18 of the `398 Patent.
9. The M-Pulse infringes claims 1, 15 and 18 of the `398 Patent.

## IV. '398 Patent Infringement Testing for Claims 1,15 and 18

The test procedures used on the bat are dictated in part by the internal structure of the bat. Different construction of the bats may require addition modifications to these test procedures in order for one of ordinary skill in the art to determine infringement.

If the internal structure can be cut longitudinally without significantly distorting or collapsing the structure, begin with test procedure "A" (Lengthwise cut) and/or "B" (Crosswise cut). In addition, test procedure "C" (Load Deflection test) is used to determine the existence, and to measure the relative amount of independent movement between the frame and insert of the bats.

### A. Test Procedure "A" (Lengthwise cut):

1. Purchase a new, unused bat for inspection.
2. Visually inspect the bat; it should be in new condition, free of any visible dents or obvious structural flaws.
3. Cut the bat longitudinally down the middle from the large-diameter impact portion to the small-diameter handle. Cut the bat on a band saw or some other suitable cutting device that does not unduly distort or heat the bat.
4. Separate the two halves and inspect the internal structure.
5. Identify if the bat has an insert/inserts with a circular cross section (Figure 1).



**Figure 1. Miken Edge cut in half.**

6. Identify if the insert is positioned within the impact portion of the bat.
7. Identify if the insert is a separate piece from the bat frame.
8. Identify if the insert appears to be a structural member. Generally, is the insert made of a material or in a configuration that would carry at least a portion of the load during impact with a ball?
9. Pull the insert free from the bat frame.
10. Identify any surface conditions that indicate signs of a smooth and slippery interface, lubrication or a friction reducing surface condition between the insert and the bat frame.
11. Identify any surface condition that indicates there was sufficient separation between the insert and the frame to allow fluids to flow between that insert and the frame during manufacturing (i.e. release agents, coatings, wrappings, anodizing or heat-treat fluids that leave a residue behind).



**Figure 2. Miken release agent/ wrapping evident between insert and bat frame.**