**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**THIRD DIVISION**

| | | |
|---|---|---|
| MIKEN COMPOSITES, L.L.C., Plaintiff, | ) | **Court File No. 02-CV-769 DSD/SRN** |
| v. | ) | |
| WILSON SPORTING GOODS CO. Defendant. | ) | **DEFENDANT WILSON SPORTING GOODS CO.'S REPLY TO <u>SUPPLEMENTAL</u> REPORT OF KEITH DENNEHY [RE: INFRINGEMENT BY MIKEN M-PULSE, VELOCIT-E II, HHD AND VIPER]** |

Pursuant to Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, Douglas G. Guenther hereby tenders the following Expert Report in response to the supplemental report submitted on behalf of Miken Composites, LLC ("Miken"), by Prof. Keith T. Dennehy ("Dennehy") dated January 15, 2004.

## I. QUALIFICATIONS FOR SUBMISSION OF EXPERT TESTIMONY.

My qualifications are set forth in my Expert Report dated October 24, 2003 and submitted in the captioned matter.[1]

---

[1] A typographical error in my October 24 Report misstated my undergraduate degree. My actual degree is a BSME – Bachelor of Science in Mechanical Engineering, not a BSEM (Engineering Mechanics).

## II. MATERIALS REVIEWED FOR THE OPINIONS EXPRESSED IN THIS REPORT.

In addition to the materials reviewed for my October 24, 2003 Expert Report, I have examined the January 15 Report prepared by Dennehy, as well as his previous reports. I have not received Professor Dennehy's files for any of his three reports (Wilson has provided all materials reviewed by its experts in connection with their initial reports). Accordingly, some opinions expressed herein may be revised specifically as a result of my anticipated review of such Dennehy materials.

My opinions are based on my own personal knowledge and experience, and a review of the literature, documents, and exhibits provided to me. All opinions and facts stated herein are true and correct to the best of my knowledge. Nevertheless, I expressly reserve the right to modify or supplement my opinions in the event that any additional information is provided to me.

## III. Statement of Opinions and the Reasons Therefore.

### A. List of Opinions

1. Dennehy's Report fails to disclose all of his spatial separation data, except for a extrapolated measurements showing the separation of 0.011 inches between the frame and insert of the Edge model and a separation of 0.013 in the HHD bat. Further, the spatial separation between layers of the subject Miken bats are based upon a questionable extrapolation (by use of a "scaling factor") from a highly magnified digital photograph of the subject multilayer bat portion (cut lengthwise). Accurate measurements of the spatial separation between the layers of the Miken bats can only accurately be taken from physical measurements of the bats themselves.
2. Dennehy admits to intermittent spatial separation of the layers of the bats, but appears to assert that they are immaterial since he does not believe they were "intentional" separations between the

frame and insert. This is invalid as a non-infringement opinion since Professor Dennehy fails to explain why infringement by inadvertent manufacturing constitutes a defense to a patent infringement claim.

3. Dennehy admits that the M-Pulse, Velocit-E II and Edge bats have their insert dipped in a release agent before the frame is applied to the assembly. Release agents are specifically designed to prevent adhesion or bonding between the layers. This will have a material affect on the bats' interlaminer shear (as shown in the Miken Load Deflection Rate Comparison chart in my October 24, 2003 Report), contributing to sliding between the frame and insert, in the nature of a leaf spring, demonstrating the presence of a "gap" as previously construed by the Oregon District Court.

4. Dennehy has failed to explain how his longitudinal (lengthwise) cutting of the Miken subject bats, preserves their multi layer structures and dimensions. In fact, such longitudinal cutting impairs the geometry of the multi-walled, cylindrical structures, rendering Dennehy's conclusions invalid, as I have previously shown.

**B. Bases For Opinions Regarding Dennehy's Supplemental Report**

Professor Dennehy continues to fail to provide a basis for his conclusion of non-infringement by failing to state his construction of '398 Patent terms, including "gap forming part of an annular shape." As previously noted by me, without a statement of how one of ordinary skill in the art of baseball bat manufacture in 1993 would understand the claim language, Professor Dennehy's opinions have no foundation or context.

Once again, and without any express statement to this effect, it appears that Dennehy considers the "gap" limitation of the '398 Patent to be limited to some visible, spatial separation between the frame or shell of a bat and the outer-most wall or layer of

the interior member(s) (hereafter the "insert"). It appears, although it is never stated, that Dennehy believes that there is no infringement of the '398 Patent if there is some contact between the frame and the insert in the impact portion of the bat.

For the reasons set forth in my December 1, 2003 Reply, I believe that Professor Dennehy's use of extrapolations from electron microscopy, together with longitudinal cuts of the bats, renders his results unreliable.

Notwithstanding the foregoing, Dennehy admits that the Edge bat has a separation of 0.011 inches between the frame and insert. Although all that is necessary for a "gap" to exist is sufficient separation to permit independent movement between the frame and insert, in the nature of a leaf spring, upon impact with a ball[2], the actual spatial separation of eleven thousandths of an inch is an admission of a gap and of infringement.

Similarly, the admission that the HHD's frame is separated from its insert by 0.013 inches is an admission of infringement of the '398 Patent. The assertion by Dennehy that the separation may not have been intended is irrelevant to an infringement analysis. It is noted that he does not attempt to justify his novel infringement defense with any type of authority.

In addition, as explained in my October 24, 2003 Report, during actual usage of the Miken M-Pulse, Velocit-E II and Edge bats, the separate frame and insert members deflect under load in a manner completely different from the geometric conditions for deflection of a single wall bat or a multi-wall bat without a "gap". Because these Miken bats have a "gap" between the frame an insert members, the ability of the structure to carry interlaminer shear throughout the full thickness of the structure is significantly

reduced and thus this stiffness, or load deflection rate of the Bats is significantly reduced. As a result, under load, the frame and insert are not bonded; rather, they slide relative to one another and fail to demonstrate the stiffness of a single wall bat of the same total thickness.

Professor Dennehy helps to explain one of the factors contributing to the sliding of these members by explaining that Miken coats the insert with a release agent before assembling the frame over the insert. A release agent is specifically designed to permoit permit release, prevent bonding and maintain the separateness of the parts. The use of the release agent is tantamount to lubricating the parts to enhance their independent movement under load. If Miken had not wanted to enhance the independent movement of the frame and insert under load, a power enhancing attribute disclosed in the '398 Patent, then Miken would not have used any release agent between the members.

## IV. CONCLUSION

For the foregoing reasons, the non-infringement opinions of Professor Dennehy are not valid.

I declare under penalty of perjury under the laws of the United States that the foregoing accurately reflects my opinions, and the statements therein are true and correct to the best of my knowledge.

Executed this 29TH day of January, 2004, at Chicago, Illinois.

Douglas C. Guenther

[2] The '398 Patent does not require the "gap" to be any arbitrarily fixed minimum separation. As stated in the *Worth* decision, all that is required is "a sufficient separation exists for the frame and insert to move independently." (*Worth* Opinion, page 7, Attachment C to October 24 Report).