**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**THIRD DIVISION**

| | | |
|---|---|---|
| MIKEN COMPOSITES, L.L.C., Plaintiff, | ) | **Court File No. 02-CV-769 DSD/SRN** |
| v. | ) | |
| WILSON SPORTING GOODS CO. Defendant. | ) | **DEFENDANT WILSON SPORTING GOODS CO.'S REPLY TO INITIAL REPORT OF KEITH DENNEHY [RE: INFRINGEMENT BY MIKEN INTENSIT-E, VELOCIT-E AND ULTRA]** |

Pursuant to Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, Douglas G. Guenther hereby tenders the following Expert Report in response to the report submitted on behalf of Miken Composites, LLC ("Miken"), by Prof. Keith T. Dennehy ("Dennehy") dated October 15, 2003.

## I. QUALIFICATIONS FOR SUBMISSION OF EXPERT TESTIMONY.

My qualifications are set forth in my Expert Report dated October 24, 2003 and submitted in the captioned matter.[1]

---

[1] A typographical error in my October 24 Report misstated my undergraduate degree. My actual degree is a BSME – Bachelor of Science in Mechanical Engineering, not a BSEM (Engineering Mechanics).

## II. MATERIALS REVIEWED FOR THE OPINIONS EXPRESSED IN THIS REPORT.

In addition to the materials reviewed for my October 24, 2003 Expert Report, I have examined the Report prepared by Dennehy. Miken has not, to date, turned over requested materials reviewed by Dennehy in connection with his October 15 report (Wilson has provided all materials reviewed by its experts in connection with their initial reports). Accordingly, some opinions expressed herein may be revised specifically as a result of my anticipated review of such Dennehy materials.

My opinions are based on my own personal knowledge and experience, and a review of the literature, documents, and exhibits provided to me. All opinions and facts stated herein are true and correct to the best of my knowledge. Nevertheless, I expressly reserve the right to modify[2] or supplement my opinions in the event that any additional information is provided to me.

## III. Statement of Opinions and the Reasons Therefore.

### A. List of Opinions

1. Dennehy's opinions with respect to the spatial separation between layers of the subject Miken bats are based upon a questionable extrapolation from a highly magnified digital photograph of the subject multilayer bat portion (cut lengthwise), from which he

---

[2] The following are revisions to **Test Procedure "C" (Load Deflection test)** as set forth in my October 24, 2003 Report:

Insert Steps 12 – 16 before step 4.
Step 5 – remove reference to attachment 1.
Step 11 – should be inserted as part of step 5 and removed from its current location.
Step 20 – Add the following, "make sure and line up the insert in the same orientation as before using marks on the end of the frame and insert".

In addition, my October 24, 2003 Report indicates that a release agent appeared to be present on the outside diameter of the insert (see Figure 2). However, further testing has revealed that the slippery interface of the frame and the insert of the Ultra bat is not a wax, petroleum or silicone based product. Accordingly, it can not be concluded that a release agent is present. The interface is, nevertheless, slippery and contributes to the independent movement observed between the frame and insert upon application of a load (similar to when the bat hits a ball). Molding the frame onto a thermoset insert, and releasing the assembly prior to having it fully cured would release enough residual stresses in the frame to increase the separation between the surfaces.

attempts to take measurements with the use of a caliper. Accurate measurements of the spatial separation between the layers of the Miken bats can only accurately be taken from physical measurements of the bats themselves.

2. Dennehy admits to intermittent spatial separation of the layers of the bats, but concludes there is no "gap" without even offering his definition of "gap." Separations sufficient to permit independent movement, as well as discernible spatial separations, are "gaps" as previously constructed. See Attachment C to my October 24, 2003 Report. Accordingly, Denney's non-infringement opinions are without foundation and are not valid.

3. Dennehy has failed to explain how his longitudinal (lengthwise) cutting of the Miken subject bats, then further sectioning of those pieces, preserves their multi layer structures and dimensions. In fact, such longitudinal cutting impairs the geometry of the multi-walled, cylindrical structures, rendering Dennehy's conclusions invalid.

**B. <u>Bases For Opinions Regarding Dennehy's Initial Report</u>**

One of the largest flaws in Dennehy's report, and which renders his conclusions vague and unreliable, is his failure to provide a definition for "gap forming at least part of an annular shape" in claim 1 and an "annular gap" in claim 15 of U.S. Patent No. 5,415,398, (the " '398 Patent") (see Attachment B to my October 24, 2003 Report). The claims of the '398 Patent have been interpreted in a final order as referenced in my October 24 Report (see Attachment C thereto). Without a statement of how one of ordinary skill in the art of baseball bat manufacture in 1993 would understand the claim language, Professor Dennehy's opinions have no foundation or context.[3]

---

[3] Professor Dennehy does not attempt an infringement analysis of the Miken bats against claim 18 of the '398 Patent. Accordingly, no further discussion is presented in this Report.

### 1. Measurements Taken By Dennehy – Separation Admissions

It appears from Dennehy's report that he considers "gap" to be limited to some visible, spatial separation between the frame or shell of a bat and the outer-most wall or layer of the interior member(s) (hereafter the "insert"). Such a conclusion is incorrect, for the reasons set forth in my October 24 Report. Nevertheless, even that conclusion by Dennehy is erroneous. In an effort to support his conclusion that the Miken Velocit-E, Intensit-E and Ultra bats do not read on the "gap" limitations of Claims 1 and 15 of the '398 Patent, Dennehy has used electron microscopy to obtain highly magnified photos of the cut out of Miken bat ends. In order to state that no "gap" exists between the frame or shell of the bat and the outer-most interior wall or layer (hereinafter "insert"), Dennehy extrapolates a "real world" measurement by using calipers to measure dark areas on the enlarged, digital microscope pictures. Dennehy states his conclusion of "no gap" from his interpretation of scanning electron microscopic digital photos, extrapolated to "real world" dimensions through undisclosed procedures and equasions.

This procedure presents several proof errors. First, the digital microscope photo itself cannot be shown to have been taken in a perpendicular orientation to an area where the greatest spatial separation exists between the frame and the insert. Dennehy fails to provide a specific test procedure that addresses this issue. In fact, since Dennehy takes his microscopic photos with a dark, or unlit background, it cannot be determined whether his camera orientation or the measurement points are at an area without an interference fit between the members. Further, Dennehy is shooting his photographs into the wrapping curvature of the longitudinally cut bat parts. This orientation presents its own problems, as discussed below.

A simple examination of a Miken Ultra bat on a light table, without magnification or extrapolation from enlarged microscopic images, reveals a clear separation between the Ultra's frame and insert. Figure 3, from my October 24, 2003 report shows the easily visible separation, seen as the white light shines up between the frame and insert.

**Figure 3, Miken Ultra, with visible light between frame and insert, without use of any magnification.**



Further, the amount of separation between the frame and the insert in the Miken bats can be measured in a conventional manner with the use of standard feeler gauges. In the following Figures 10 and 11[4], the separation between the frame and insert of the Velocit-E II and Ultra bats is measured by simple insertion of a 0.001" feeler gauge. The gauge was inserted without use of lubrication or modification of the ring's structure.




**Figure 10, Miken Velocit-E II with 0.001" feeler gauge inserted between outer frame and insert.**

[4] Figures 1, 2 and 4 – 9 can be found in my report dated October 24, 2003.