UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
THIRD DIVISION

---

Miken Composites, L.L.C.,

Plaintiff,

v.

Wilson Sporting Goods Co.,

Defendant.

---

Court File No. 02-CV-769 DSD/SRN

**MIKEN COMPOSITES, L.L.C.'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Wilson defends Miken's summary judgment motion, not by comparing the elements of the claims to the accused Miken bats, but by improperly comparing the alleged overall performance of the claimed invention and Miken bats. Wilson has not learned. The Federal Circuit addressed and previously rejected this attempt to misdirect the court:

> In framing the issue this way, [Wilson] improperly directed the district court's attention away from the language of the claims and toward a more general comparison of the overall attributes of the accused device with those of the claimed device. In this case the district court properly avoided such a general comparison and instead compared the limitations of the claims with the specific elements of the accused device.

*Demarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1332 (Fed. Cir. 2001). As the Federal Circuit advised, this Court should not be "misdirected" by Wilson's argument, but should focus on the comparison between the claim elements and the accused Miken bats. Doing so demonstrates that Miken's bats do not infringe any asserted claims of the '398 patent, and that summary judgment should be granted in favor of Miken.

## II. ARGUMENT

### A. None of Miken's Bats Infringe Claim 1 or 15 of the '398 Patent.[1]

Claims 1 and 15 of the '398 Patent require, among other things, that the inner surface of the frame be separated from the outer surface of the insert by a "gap." The Court's July 26, 2004 Order construed the term "gap," precluding physical contact between the frame and the central portion of the insert before the bat impacts the ball, except at the ends of the inserts, where the ends may "join," meaning "touch",[2] the frame.[3]

[1] Wilson apparently does not oppose Miken's summary judgment of non-infringement as to Claim 15. *See* Wilson Memo. at p. 1, n.1.

[2] *See* July 26, 2004 Order, at page 16.

In support of its summary judgment motion, Miken has provided the Court with evidence demonstrating that there is in fact physical contact between the outer surfaces of the inserts and the inner surfaces of the bat frames in the impact portion of each of the claimed infringing bats. In response to Miken's motion, Wilson has not presented any evidence to suggest that there is a complete lack of contact between the outer surfaces of the inserts and the inner surfaces of the frames in the impact portion of the claimed infringing bats. Rather, Wilson now argues that the Court's construction of the term "gap" does in fact allow contact between the insert and frame surfaces, so long as there is an annular (ring-like) void, anywhere[4] along or around the impact portion of the frame.[5] (Wilson Memo. at pp. 3-6).

The Court knows what it meant when it construed the term "gap" in its July 26, 2004 Order. If Miken is correct that the Court's definition requires the absence of contact between the insert and the frame, except at the ends of the insert, then summary judgment is required because the undisputed evidence establishes that there is in fact contact between the inserts and frames in each of the claimed infringing bat models.

---

[3] On October 15, 2004, the court in *Wilson Sporting Goods Co. v. Hillerich and Bradsby Co.*, Court File No. 00-C-6517 (N.D. Ill.) adopted the Magistrate Judge's report and recommendation construing "gap" in the '398 Patent as requiring the absence of contact between the outer surface of the insert and the inner surface of the frame except at the insert's ends. *See* Supplemental Declaration of Michael H. Streater, ¶ 2. Thus, this Court's construction of "gap" is consistent with the northern District of Illinois.

[4] Tellingly, Wilson replaced the Court's construction "along ***any*** latitudinal axis" with its own "along ***a*** latitudinal axis." (Wilson Memo. at p. 4 (emphasis added).)

[5] Wilson's attempt to use "forming at least a part of an annular shape" to contradict the Court's "gap" construction is misplaced. The inventor added the limitations "having a circular cross-section" and "forming at least part of an annular shape" to overcome the Patent Office's rejection of his claims based on the Merritt prior art patent where the insert "contacts the inside of the bat frame at its six corners to form a series of discontinuous and variably shaped spaces between the insert and the triangular bat frame." (Doscotch Decl., Ex. C at DM000033-35.) The amendment did not expand the "gap" construction; but further limited the "gap," requiring at least a part of its shape be annular.

**B. <u>Assuming, Arguendo, That Wilson's Interpretation of "Gap" Is Correct, It Has Failed to Establish the Existence of an Annular Gap in the Claimed Infringing Bat Models.</u>**

Wilson contends that it "need only show that each of the accused bat models have a part of a ring-like void or space, of any size (provided it is a void of three dimensions), in the impact portion of the bat." (Wilson Memo. at p. 13.) While Miken disputes Wilson's construction (*see* Section A above), Miken submits that Wilson has failed to demonstrate the existence of a ring-like void in each of the Miken bat models, and summary judgment in favor of Miken is therefore mandated.

With respect to Miken's hhd, Viper and Edge bats, Wilson points solely to the reports of Dr. Dennehy, Miken's engineering expert, for its contention that a ring-like void is present between the inserts and frames in these bats. Unfortunately for Wilson, however, Dr. Dennehy did not find a ring-like void in these bats. With respect to the hhd and Viper bats, Dr. Dennehy found what he termed "intermittent separation" between the inserts and the frames. Dr. Dennehy did not characterize that intermittent separation as annular or ring-like, nor do the microscopic images of the separation reveal any annular shape to the separation. (*See* Streater Decl., Ex. 6 at p. 6 and Figs. 1.8 and 1.9 thereto). With respect to the Edge bat, Dr. Dennehy found "some separation" between the insert and the frame in the lower three inches of the impact portion of the bat, the largest measuring 0.011 inches (*Id.* at p. 7). Again, however, Dr. Dennehy did not describe that separation as annular in shape, nor did the microscopic photographs of the separation reveal such a shape. (*Id.* at Fig. 1.10).

Wilson offers no evidence with respect to the claimed ring-like voids in Velocit-E II or M-Pulse bats. Rather, it simply states "since these bats are manufactured in the same manner [as the Edge], it is reasonable to conclude that the Velocit-E II and M-Pulse bats are also made with voids." (Wilson Memo. at p. 14). Counsel's statements, however, are not evidence. More

importantly, Dr. Dennehy did not find ***any*** separations between the inserts and the frames in the Velocit-E II or M-Pulse bats, let alone ring-like voids. (*See* Streater Decl., Ex. 6, pp. 5-6).

With respect to the Intensit-E and Velocit-E bats, Wilson offers no evidence to support its assertion that annular gaps exist in those bats. The only "evidence" offered by Wilson are the results of its expert's load deflection test. (Wilson Memo. at p. 18). That test, however, does not visually examine the interface between the inserts and the bats, and thus does not demonstrate the existence of an annular gap. (*See* Doscotch Decl., Ex. D, pp. 10-14). As such, Wilson has failed to establish the existence of an annular gap in either of these bat models.[6]

**C. <u>Miken's New Bats Do Not Have an "Insert".</u>**

Wilson argues that the Federal Circuit's construction of "insert" as "anything put or fit into something else," and Miken's use of "something that is inserted or for insertion," is mere word play. Under either construction, however, Miken's New Bats lack an "insert."

Miken's "inserts" are not "put or fit into" a bat frame. Nor are the "inserts" inserted or for insertion" into a bat frame. Rather, they are a constituent layers in a multi-layered, carbon composite bat and an integral part of the bat frames. Wilson's deconstruction of the composite layers of the bats does not create an "insert."[7] Wilson does not allege that the composite layers it identifies as an "insert" are "put or fit into something else" as required by the Federal Circuit or are "inserted or for insertion." Accordingly, Miken's New Bats do not have an "insert" as required by Claims 1 and 18.

---

[6] With respect to Miken's Ultra bat, Wilson has provided the court with a photograph that appears to depict an annular space between the insert and frame in a ¼ inch ring segment. (*See* Wilson Memo. at p. 18). While Miken's expert disputes the validity of Wilson's ¼ inch ring analysis (*see* Streater Decl., Exh. 5, pp. 3-4), Miken concedes that for purposes of this motion, Wilson has presented some evidence of what appears to be a partial annular gap in the Ultra bat. Wilson has not presented any evidence, however, of such a gap in the Ultra II model.

[7] Notwithstanding Wilson's claims, its expert Mr. Guenther did not cut lengthwise samples of each of the bats. (Streater Supp. Decl., Ex. C (Guenther Depo. at pp. 55-56).) Moreover, Figures 1A and 1B, claiming to show Miken's Ultra and Ultra II bat inserts, have no evidentiary support.

Recognizing the weakness of its literal infringement argument, Wilson now argues, for the very first time in this lawsuit, that Miken's New Bats infringe under the doctrine of equivalents.[8] Throughout fact and expert discovery in this case, Wilson has proceeded only on a theory of literal infringement. In its interrogatories, Miken asked Wilson to "explain in detail how each and every element of each such claim is met by each such Accused Product, either literally or under the doctrine of equivalents." (Streater Decl., Ex. 9 at p. 4.) Wilson responded that the Miken Bats "***literally meet*** each and every element of claims 1, 15 and 18 of the '398 Patent." (*Id.* at 5) (emphasis added). Wilson *did not* allege infringement under the doctrine of equivalents. (*Id.*) Neither Miken nor Wilson have taken further discovery on the doctrine of equivalents, and no experts have addressed infringement under the doctrine of equivalents. Having disclaimed infringement under the doctrine of equivalents, Wilson cannot now resurrect it to survive summary judgment.[9] *See Anchor Wall Systems, Inc. v. Rockwood Retaining Walls, Inc.*, Court File No. 99-1356 JRT/FLN, 2004 WL 2066823 (D. Minn. Sept. 7, 2004).

**D. <u>Claim 18 Is Invalid.</u>**

The '682 patent discloses and claims a bat containing each and every element in Claim 18 of the '398 patent, and thus invalidates Claim 18. *See Quad Envtl. Tech. Corp. v. Union Sanitary Dist.*, 946 F.d 870, 876 (Fed. Cir. 1991) (courts are the final arbiter of patent validity).

---

[8] To support is claim under the doctrine of equivalents, Wilson asserts without factual support that "Miken's 'new bats' each have a structural member that is inserted into the frame assembly during the bat's manufacture." (Wilson Brief at 11.) Wilson's assertion is incorrect, as no structural member of these bats is inserted into the frame assembly, rather the frame is manufactured through the addition of successive composite layers. (*See* Miken Principle Brief at pp. 7-10.)

[9] In *Anchor Wall*, the district court addressed the defendants' failure to identify patent invalidity bases in their interrogatory answers:

> For litigation to function efficiently, parties must provide clear and accurate responses to discovery requests. Parties are entitled to accept answers to previous interrogatories as true, and to refrain from seeking additional discovery directed to the same issue.

*Id.* at * 3 (quoting *ELCA Enters., Inc. v. Sisco Equip. Rental & Sales, Inc.*, 53 F.3d 186, 189 (8th Cir. 1995 (internal quotations omitted)). A party that fails to disclose information required by Rule 26(a) should not be permitted to later use that information as evidence on summary judgment. *Id.; Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008 (8th Cir. 1998).

Wilson does not and cannot point to any element of Claim 18 that is not disclosed in the ‘682 patent. Instead, with no defense, Wilson engages in an irrelevant and misleading characterization of the ‘682 patent.[10]

Wilson falsely claims that the insert identified ‘682 patent “is, hard, resilient, thick and ‘rigidly fixed’ to the frame” and “a plastic ‘ring or an axially short cylinder having considerable wall thickness.’” (Wilson Memo. p.20 (quoting ‘682 patent, col. 3, lines 53-54).) Wilson’s description is for the “sound arresting member,” not the “insert” described in the second embodiment and claimed in its first claim. (See ‘682 patent, col. 4, lines 1-18.) In fact, as explained in Miken’s opening memorandum at p.18, the “repelling insertion member” is provided in the frame impact portion to “take[] advantage of the most resilient portion of the bat 10.” (‘682 patent, col. 4, lines 3-7.) Wilson’s intentionally false description of the insert disclosed in the ‘682 patent demonstrates its desperate attempt to save its doomed claim.

Wilson merely concludes that Miken failed to prove that “a bat built in accordance with the teachings of the Fujii I ‘682 would demonstrate similar leaf-spring-like qualities.” (Wilson Brief at 21.) Wilson’s conclusion[11] does not address the test for invalidity. The test is whether the ‘682 patent discloses every element of the claimed invention. *See Schering Corp. v. Geneva Pharmaceuticals, Inc.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003). “Leaf-spring-like qualities” is *not an element* of Claim 18; the frame and insert *are elements* and *are disclosed* and claimed in the ‘682 patent, invalidating Claim 18.

---

[10] As part of its attempt to confuse the Court, Wilson mixes references to the ‘682 patent and U.S. Patent No. 3,963,239 (“the ‘239 patent). While the ‘398 patent disclosed the ‘239 patent in its specification, the ‘682 patent was not addressed.

[11] Wilson’s conclusion is incorrect. The ‘682 patent describes a “resilient” bat frame impact portion and a “repelling” insert, indicating that the impact portion “deforms” and is “repelled” back by the insert, just as the bat of Claim 18.

**E. <u>Miken's Bats Do Not Infringe Claim 18.</u>**

Claim 18 requires, among other things, that the "impact portion b[e] inwardly elastically deflectable ***such to establish*** a tight interference fit between the insert and the impact portion." (emphasis added). Given the language "such to establish," the language of Claim 18 clearly precludes the existence of a tight interference fit prior to loading.

In its opening memorandum, Miken demonstrated that each of the Miken bat models, with the possible exception of Viper and the nonbonded hhd models, are constructed so as to establish a tight interference fit between the insert and the frame preloading. Indeed, Miken submitted evidence that, with respect to these bat models, in excess of a thousand pounds of force is required to move the inserts within the bat frames.

In response to Miken's motion, Wilson ignores whether Miken's bats have interference fits preloading, and instead engages in a lengthy explanation as to how "multi-wall" systems operate differently from single "thickened" wall systems. (Wilson Memo. at pp. 22-25). Unfortunately for Wilson, whether the frames and inserts in the Miken bats move independently is irrelevant to Claim 18. Claim 18 contains no such requirement. What Claim 18 does require, however, is that there not be a tight interference fit between the insert and the impact portion of a bat pre-loading. For purposes of this summary judgment motion then, the sole inquiry is whether the claimed infringing Miken bats have interference fits between the inserts and the impact portions of the frames preloading. The undisputed evidence is that they do.[12]

---

[12] Wilson provides its expert's definition of interference fit as used in Claim 18 as "the temporary interference fit should be tight enough to hold the insert in place during the impact, but not so tight that it prevents independent movement of the walls of the insert and the frame in the impact portion of the bat." (Wilson Memo. at p. 23, quoting Dr. Parks' Report at pp. 25-26.) While Miken submits that such extrinsic evidence is improper in construing the term "interference fit" (*see Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584-85 (Fed. Cer. 1996)), that definition would support a finding that Miken's bats have interference fits between the inserts and the frames preloading. If it takes in excess of 1,000 pounds of force to move the inserts in the frames, obviously the inserts are "held in place" preloading. Furthermore, Wilson's expert claims that its deflection testing on the Miken bats demonstrates that the inserts and frames are not so tightly abutted that independent movement is prevented.

**F. <u>Claim 18 Cannot Be Read As Encompassing Bats With Inserts That Are In Tight Abutment With Their Frames, As Is The Case With Miken's Bats</u>.**

Fujii '239 describes a bat and insert combination in which the insert is "in tight engaging relationship" with the inner-wall of the bat frame. (*See* Streater Decl. Exh. 2, Col. 4, Lns. 47-49), while at the same time is "removable," "removably disposed," and "replaceable with the different reinforcing member." (*Id.* at Abstract and Col. 4, Lns. 42-43).

Miken established that the inserts and the frames in each of the Miken bat models, with the possible exceptions of the Viper and hhd, are in intimate contact, requiring in excess of 1,000 pounds of force to move the inserts within the frames. There can be no serious argument that these inserts are not in a "tight engaging relationship" with their frames. Accordingly, to avoid reading on the Fujii '239 patent, the '398 patent must be deemed to exclude from its coverage bats that include inserts that are in a tight engaging relationship with their frames.

As it has done throughout its response, Wilson simply ignores the central issue – whether the Miken bats have inserts in tight engaging relationship with their frames. Rather, it again proceeds with an extended discussion as to whether the inserts and frames in the Miken bats, and in the Fujii '239 bat, move independently, in the nature of a leaf spring, which Wilson claims is "an essential feature of a bat built in accordance with claim 18". (Wilson Memo. at p.27). Claim 18, however, says nothing about independent movement, or of leaf springs, and thus the Wilson's argument misses its mark. Without question, the inserts in Miken's bats are in tight engaging relationship with their frames, and therefore fall within the teachings of the Fujii '239 patent. If claim 18 is deemed to read upon such a frame/insert combination, then Claim 18 is invalid. *Harris Corp. v. IXYS Corp.*, 114 F.3d 1149, 1151 (Fed. Cir. 1997).

---

(*See* Doscotch Decl., Ex. D). Miken bats thus have interference fits preloading,, as defined by Wilson's experts, and thus cannot infringe Claim 18.

## III. CONCLUSION

For the reasons stated above, Miken respectfully requests that the Court grant its motion for summary judgment.

Dated: October 12, 2004

BRIGGS AND MORGAN, P.A.

By: s/*Michael H. Streater*
Michael H. Streater (#106331)
2200 IDS Center
80 South 8th Street
Minneapolis, MN 55402
(612) 977-8400

Kurt J. Niederluecke (#0271597)
FREDRIKSON & BYRON
4000 Pillsbury Center
200 South Sixth Street
Minneapolis, MN 55402-1425
**Attorneys for Plaintiff Miken Composites, L.L.C.**