# ORAL ARGUMENT BEFORE FEDERAL CIRCUIT

December 6, 2005

EXHIBIT C

ORAL ARGUMENT BEFORE THE FEDERAL CIRCUIT

December 6, 2005

05-1103

APPEARANCES:

Michael Levinson, Esq.

Charles Laff, Esq.

THE COURT: The next case is Wilson Sporting Goods versus Hillerich & Bradsby, 05-1103. Whenever you're ready, Mr. Levinson.

MR. LEVINSON: Thank you, your Honor. May it please the Court, Mike Eggiman invented a better softball bat.

THE COURT: Mr. Levinson, was there a summary judgment of noninfringement in this case?

MR. LEVINSON: In effect there was, yes, your Honor.

THE COURT: No, I'm not asking if there was in effect. Was there a summary judgment of noninfringement?

MR. LEVINSON: There was -- I'm not sure if Judge Castillo called it a summary judgment when he entered a final judgment of noninfringement.

THE COURT: How can you have a final judgment if it's not a summary judgment and either of them without a full record of the accused device, which I can't find in the record. What is the accused device?

MR. LEVINSON: The accused device is a softball bat.

THE COURT: Thank you. I figured that much out. I couldn't figure out what the gap was, what the rigidity was, what the claimed features were, if any, in the accused device.

MR. LEVINSON: I think that those items -- what happened in this case --

THE COURT: Was there a summary judgment of noninfringement and where is it in the record? How was it entered? You say, in effect. In effect isn't good enough. I need to know if we've got a final judgment that gives you jurisdiction to do this.

MR. LEVINSON: What we have if you look at in the appendix of page 8 of 16, Judge Castillo entered a final judgment order in which he dismissed our claims for patent infringement with prejudice.

And he doesn't characterize it as a summary judgment, but he entered the final judgment order. And he specifically preserved our ability in entering that final judgment order for us to take the appeal to this court.

THE COURT: How do we know what the accused facts consisted of so we can decide whether, in effect, the summary judgment was

correct?

MR. LEVINSON: We don't have that in the record at this time, but it was a summary judgment or it was a final judgment --

THE COURT: How can you have a final judgment without comparing it to the accused device?

MR. LEVINSON: Well, I think what happened in this case, your Honor, is that the parties understood based on the claims' instruction of the district court that there could not be a judgment of infringement that could be sustained.

THE COURT: If you both understood that, then why are you here on appeal?

MR. LEVINSON: Well, because there is a dispute as to the claim of (inaudible).

THE COURT: Well then why don't we have the facts to fully review them? How can we review something without having the accused device in front of us?

MR. LEVINSON: Well, because what we're asking you to review at this point is not the issue of infringement but the issue of a claim interpretation (inaudible) Judge Castillo

(inaudible).

THE COURT: We don't review those absent a final judgment context. We don't just take up premature determinations of what may be the reading of the term and patent. We've never done that and I'm not sure why we would do it in this case.

MR. LEVINSON: Well, I don't know -- I guess I don't know that the Court needs to have any facts relating to the infringing device to decide the issue of whether the Court's instruction of the claims at issue are appropriate.

THE COURT: Simple technology, I have never spent so much time trying to figure out what this language meant. Believe me, I have 46 different hypotheticals of c-shaped inserts and x-shaped inserts and hexagons and (inaudible) and balloons and deflated balloons and everything else that may have a trampoline effect, but may or may not have a gap. And I don't know which one of them is relevant.

My clerks and I have sat (inaudible) things. We thought maybe we should file some patents because we had four or five fairly

innovative balloon-type inserts that don't seem to be in the priority. How do we know which ones (inaudible)?

MR. LEVINSON: Well, I would suggest that the Court should not be engaging in an analysis of what the claims mean based on what the accused device (inaudible).

THE COURT: No, we do it in the context of a final judgment. And I'm not sure we have anything (inaudible).

MR. LEVINSON: We certainly have what Judge Castillo calls a final judgment order.

THE COURT: Well, you go ahead and tell us what you think that means and we'll go from there.

MR. LEVINSON: Okay. What I want to do to indicate (inaudible) the invention teaches that there is a frame and an insert and upon impact with the ball the frame engages the insert. That's what the invention teaches. And as a result of that operable engagement of the frame and insert, you get a better rebounding action (inaudible).

THE COURT: Frame insert in the (inaudible)?

MR. LEVINSON: Well, it's the frame engagement of the insert which causes what Mr. Eggiman characterizes as the leaf-spring effect. He does claim the gap in Claim 1. It's a gap that defines or that forms part of an annular shape.

THE COURT: To cut to the chase here, and I read the transcript of the proceedings before the magistrate judge. The debate seems to be that your position (inaudible) argues (inaudible) this particular issue, was that the insert could touch the outer shell all the way around and that still would be a gap as long as the insert could move vis-a-vis the outer shell. Now that is still your position, I take it.

MR. LEVINSON: That is our position. I'd put it a little bit differently, but that is our position. Because what the district court did, the district court essentially held that there can be no contact whatsoever (inaudible).

THE COURT: I understand, but your position was that it would be within the scope of your claim if there was touching all the way around as long as the internal push does not

adhere to either by pressure or by some kind of adhesive device, the out and inside of the outer shell, correct?

MR. LEVINSON: That is correct in concept with (inaudible). The key is operable engagement.

THE COURT: I went through the record and looked at, for example, some statements made in the prosecution history about the term gap. We come across language such as the frame impact portion being elastically deflectable to close a portion of the gap.

If the gap is two things that are together, it doesn't seem to me to make sense to say that it is being closed by pressure. Maybe there is the question of both the outer and the inner shell, but there isn't a closing of the gap.

MR. LEVINSON: And the answer to that is that Mr. Eggiman addressed that point in Claim 15. Fifteen is the one that uses, quote, the gap has the only claim with respect to which (inaudible).

THE COURT: Certainly the term gap means something that there has to be a space

that it is closed. You used this same term in Claim 1.

MR. LEVINSON: Well, no Claim 1 usually doesn't use the term close the gap. The language, I think, is that form.

THE COURT: That's true. The question then is, what does the word gap mean if a gap needs to be closed?

MR. LEVINSON: Well, let me refer you to another portion of the prosecution history which I think illustrates the point that there can be contact between the frame and insert. And this appears on page A 248.

And this is the point in which the inventor was distinguishing the (inaudible) bat. And you may remember the (inaudible) bat is the one that had a six-sided brace that went inside the frame, had actual contact with the frame.

Now, the inventor, Mr. Eggiman, could have said, wait a minute. That bat is different because it contacts the frame. He didn't say that. What he said is, that bat is different because the frame does not operably engage the insert.

Here's what he says, the one-sided insert rigidly contacted the inside of the bat frame at its six corners to form a series of discontinuous, invariably shaped basis between the insert and the triangular bat frame.

There is no indication in Merit that the bat frame is elastically deflectable across any of six gaps the context one of the insert sides.

I think that is extremely significant because he could easily have said, if contact were the enemy, contact between frame and insert were the enemy of this leaf-spring effect that he (inaudible) to bat, he could easily have said Merit is distinguishable. That's different because there's context.

THE COURT: I got something very different from that same quote because when I read that quote it occurred to me that when he said that there were six gaps, he was excluding the points of contact from the term gap (inaudible). That seems to suggest that (inaudible) contact (inaudible) gap.

MR. LEVINSON: Well, what they are also suggesting if you look at Claim 1, Claim 1

doesn't require a gap around the entire portion of the impact (inaudible) bat as the Court found. It requires a part, at least part of an annular gap.

THE COURT: Does that mean Claim 1 does not read, as I described earlier, in which there is contact all the way around between the internal and the outer shell?

MR. LEVINSON: Well, it's hard for me to say. I would suggest that it very well might because there may be portions of annular gap that's in there. I'm not sure what levels (inaudible).

THE COURT: Microscopic?

MR. LEVINSON: I don't know (inaudible).

THE COURT: But if you take the kind of mathematical and pure image of two circles that are in contact throughout, you would not say that that is a gap even if, in theory, the two circles could (inaudible) vis-a-vis one another?

MR. LEVINSON: I would say that what my (inaudible) thought was that you'd have a gap so long with a separation between frame and

insert such that the frame and insert are capable of independent movement.

THE COURT: So the answer to my question would be that --

MR. LEVINSON: Claim 1 would read on what you've indicated. I will, at this point, since I'm out of time, reserve the rest of my time for rebuttal.

THE COURT: Mr. Leff.

MR. LEFF: Your Honors, may it please the Court, on (inaudible) page 16 is the final judgment entered by Judge Castillo.

THE COURT: (Inaudible).

MR. LEFF: Well, the accused devices were all the models known at the time to (inaudible).

THE COURT: Can you tell what it is?

MR. LEFF: Yes. There was a couple of them, several of them. One was with an insert which was in engagement, a metal insert, a tubular insert, in engagement with the frame.

THE COURT: All the way around?

MR. LEFF: All the way around.

THE COURT: (Inaudible) infringes under Claim 18, right?

MR. LEFF: No, it does not.

THE COURT: Well, there is no gap in Claim 18. There is no annular limits to Claim 18. As a matter of fact, you only have to have a substantially circular cross-section in Claim 18.

MR. LEFF: Yes, your Honor. We believe there is a gap that you must (inaudible) a gap in Claim 18.

THE COURT: You don't put limits into claims unless they are there. Why would I find a gap in claim -- where is the language in Claim 18 that gives me the right to read a gap limitation into that?

MR. LEFF: The first language I will direct your attention to is with respect to the language that the insert has outer diameter (inaudible), inner diameter (inaudible) impact portion. Obviously, every insert is going to be like that. If you go to the patent, column 2, line 62 --

THE COURT: That doesn't say that there is a gap. If they are in contact all the way around, they are still going to have a lesser diameter, aren't they?

MR. LEFF: I agree with that. That's true of any insert. All the inserts you'll find in (inaudible) are going to be exactly that way. The point of Claim 18, I believe, is obviously to try to distinguish (inaudible) to prove to you where there was an insert very much like our insert in contact with the (inaudible).

I want to point to the language because this is how the patentee describes that language, outer diameter (inaudible) and (inaudible) impact portion.

THE COURT: Where are you reading from?

MR. LEFF: It's column 2, line 62. I'm going to paraphrase a little bit because of time. Because the outer diameter of the insert is slightly less than the inner diameter of the frame, the suspended insert contacts the frame only at the interference fit between the insert in. A narrow uniform gap exists between insert and the inner wall of the impact portion.

THE COURT: Of course, that's all part of the (inaudible) description of, quote, (inaudible) embodiment of the (inaudible).

MR. LEFF: That's true.

THE COURT: That doesn't purport to be an expression of all of the various embodiments, including the embodiment that may be picked up by (inaudible).

It says, because the outer diameter of the insert 18 of Claim 18 (inaudible) the invention of Claim 18 would be on (inaudible).

MR. LEFF: That's correct, if it had said that precisely, but it didn't say that precisely. But if you go through this entire (inaudible) what you find over and over again is (inaudible) again that the whole concept was a suspension of this insert which would be attached only as (inaudible).

THE COURT: I wonder though because if you look at the language that we focused on, we know, the magistrate, the language, at least part of an annular shape. Now, I understand the magistrate said (inaudible) relates to the longitudinal portion of the insert (inaudible).

The most natural reading of that is that you don't have to have a complete annular in the circular cross-section of the combination going through the middle of the hitting area.

That's the most natural reading of

that it seems to me.

MR. LEFF: I don't think so, your Honor. I would disagree.

THE COURT: (Inaudible) you have to disagree.

MR. LEFF: Yes, right, but if you look at the abstract, for example, there is a reference to gap, which says, a gap (inaudible) length (inaudible) suspended insert separating the insert from the interior of the impact portion.

The whole concept throughout this patent has to do with suspending that insert, having it connected only (inaudible). Every time you read about the insert you talk about interference (inaudible) fits at the insert end. There is no disclosure whatsoever throughout this specification of any (inaudible).

THE COURT: If that's so, then what is the next (inaudible) in your view? What is exactly is the structure that you've described as evidencing part of an annular shape?

MR. LEFF: The structure I would describe is precisely what you see in the

drawings, for example, figures 1 to 3. If you look at figure 2, you have the annular shape, which at the very end of the insert you see the contact, the frame. In the hitting zone, it does not.

THE COURT: So what you're saying is in the language that's used in that frame (inaudible) the language describes a part or at least part of an annular shape, but (inaudible) something that is annular only for a given distance. It doesn't go on infinitely.

MR. LEFF: Exactly.

THE COURT: Since there is no such thing (inaudible) of infinite length, there would be no such thing as the way you're expressing that as a truly annular shape, right?

MR. LEFF: No.

THE COURT: Tell me, in light of your description of what is a part of an annular shape, (inaudible) embodiment that has an actual annular shape but isn't a part of an annular shape. Are you with me?

MR. LEFF: Well, I think I did and I think this is where we may be having a problem.

Part of the annular shape is talking about this longitudinal shape, which is annular along the longitudinal axis between the insert and the frame until you get to the end. At that point your annular shape ends because you don't have a gap any longer.

THE COURT: And you say that's part of an annular shape because it's totally annular. That is to say there is a gap all the way around, all the way from end one to end two of the insert.

MR. LEFF: Exactly.

THE COURT: I'm with you. Now, my question to you is, now describe a gap which doesn't have a part of an annular shape. That is to say it doesn't (inaudible) there, but it has an annular shape.

And then you use language like at least in part annular shape. That suggests that you could have an embodiment that has a truly annular shape. What would that look like?

MR. LEFF: We are speaking of an annular gap now.

THE COURT: I understand.

MR. LEFF: One that had an annular

shape and no part of an annular shape.

MR. LEFF: That would be the part presupposed contact.

MR. LEFF: Yes, it does at the end.

THE COURT: (Inaudible) saying is a truly annular shape as opposed to a part of an annular shape. Do you see where I'm going with this?

MR. LEFF: I think we do. And, perhaps, I understand your position here. It is a semantics problem, but I think in the context of this patent, what they were trying to describe there with the suspended insert, that is what they were trying to describe and that's how they tried to differentiate. That's why I think, perhaps, we don't have Claim 15 in here, although, I'm not sure.

THE COURT: (Inaudible) that language at least in part (inaudible) prosecution (inaudible) focus on that and adding something to what was there before.

MR. LEFF: Yes. But, again, in our view and I think the prosecution history bears this out and particularly if you look at this in light of the prior (inaudible), they were trying

to distinguish what they had (inaudible) and that was the distinguishing characteristic.

The fact that this insert was suspended within this (inaudible), within this frame of the bat, that is what they distinguished. The prior (inaudible) is replete with double wall bats, replete with inserts that are in contact with the outer wall.

The Merit patent that was pointed out, there was a perfect example of how they were trying to distinguish their invention because there you did have gaps. You had six gaps and six contacts.

They said, there is a discontinuance gap. (Inaudible) have a continuous gap. That was the language that we referred to earlier on page 248.

THE COURT: Why does Claims 1 and 18 include the limitation (inaudible). It appears nowhere in the (inaudible). It does appear in 23, nowhere in the specs. How does it get into 1 and 18?

MR. LEFF: It gets in there again when you look at the entire (inaudible).

THE COURT: Where is it in the

specs?

MR. LEFF: The word rigid?

THE COURT: Yes. Find me the word rigid in the specs other than in Claim 3.

MR. LEFF: I believe there's reference to the use of certain types of materials.

THE COURT: Yes, like (inaudible), aluminum, (inaudible) composites.

MR. LEFF: Yes, which in themselves are rigid materials and which are essential for this particular invention. You could hardly have something that was not rigid and function as a baseball bat. You could not have the whole idea of (inaudible).

THE COURT: (Inaudible) pressurized insert.

MR. LEFF: Well, a pressurized insert if it were blown up so that the rubber material was rigid, then possibly one could argue that that's rigid, but you certainly couldn't have a (inaudible).

THE COURT: What if it's not always rigid? What if I deflate it sometimes and then inflate it just before I go to the plate?

MR. LEFF: Well, the inflated ones would not work. You wouldn't get the elastically (inaudible).

THE COURT: So it infringes only at certain points. It doesn't infringe (inaudible) in place.

MR. LEFF: I'm not necessarily suggesting it infringes, but you asked (inaudible).

THE COURT: If I only inflate it a little bit so that it's not really rigid, it infringes or not?

MR. LEFF: No, the key is whether or not you can get the elastic deflection across the gap or through the through the gap. That's the key to this invention.

THE COURT: That isn't what it says. You put rigid in the claim.

MR. LEFF: Well, the claim does talk about having elastically deflectable across the gap to operably engage the insert. That would be Claim 1 and that's an important feature of this invention. We need to get that spring effect.

THE COURT: Have any of your

(inaudible) bats have a nonrigid insert? And the reason I ask obviously is, if the answer to that is no, then we're debating an issue that isn't pertinent to the determination of this case, which takes us back to the whole problem with trying to decide a case when we don't have any idea what the accused device is.

MR. LEFF: Yes, I understand. I do not believe so.

THE COURT: So the whole question of rigid is really quite academic.

THE COURT: What are your inserts made out of?

MR. LEFF: They are steel. There is one, however, I believe that is some sort of a membrane, a flexible membrane.

THE COURT: We do have a question of rigidity, don't we? I think you just (inaudible).

THE COURT: You said that you couldn't really have a bat that worked that didn't have a rigid insert.

MR. LEFF: I didn't say that. I said you could get elastic -- unless you can get it elastically deflectable across the gap, you need

to have that. You need to have that action that they call for (inaudible). That's critical.

THE COURT: But that doesn't (inaudible).

MR. LEFF: I think it does.

THE COURT: But you have a bat that --

MR. LEFF: Some level of rigidity. Otherwise it won't have any (inaudible).

THE COURT: (Inaudible) inflates?

MR. LEFF: Yes.

THE COURT: And deflates? If it inflates, it deflates. At this point inflated or deflated, it's rigid. At what point of inflation is it rigid? How many pounds does it take to make rigid?

MR. LEFF: I'm afraid I'm not really prepared to answer those questions.

THE COURT: There's a lot of facts there, aren't there, and none of them appear to be found by the Court and none of them appear to be before us to review.

MR. LEFF: Well, the defendant agreed to the entry of a finding of noninfringement. The defendants did that with full awareness of

the products involved.

THE COURT: (Inaudible).

MR. LEFF: I'm sorry.

THE COURT: (Inaudible).

MR. LEFF: Excuse me, the plaintiff did. And the plaintiff agreed to that and they did that because they believed that if the claim construction that you have before you is upheld, there would be infringement to any of H & B's products.

That was the reason for the agreement. That's why a final order was presented by the Court based on that agreement of the plaintiffs.

So I think your Honors have addressed the important questions. We believe the central issue is whether or not there's a gap and what the gap means. We believe it requires what the Court (inaudible) said it requires.

That is (inaudible) for this invention that the (inaudible) starting with the (inaudible) and others (inaudible) that any engagement of the insert (inaudible) tubular frame fall directly (inaudible). (Inaudible).

THE COURT: Thank you, Mr. Leff.

Mr. Levinson has two minutes.

MR. LEVINSON: I'd like to start with the Claim 1 language part of an annular gap and note that Hillerich & Bradsby's argument about the gap referring to the area longitudinally is absolutely disproved by the prosecution history and I understand the notion that even they are right about that, how do you ever have an infinite annular gap?

But I don't think you even need to get that far because, again, when you look at page A 248 of the prosecution history that is the portion where Mr. Eggiman added the language to Claim 1, part of an annular gap and it was to distinguish, as I mentioned earlier, the Merit test.

And he makes it abundantly clear that what he's talking about there is the cross-section, I think as you were indicating Judge (inaudible), not the bat longitudinally.

In the middle of that page he says, applicant's amended Claim 1 distinguishes over the Merit bat. Applicants claim bat has a frame with a circular cross-section.

The insert, likewise, has a circular

cross-section to establish the gap between the insert and bat frame that forms at least part of the annular shape.

It could not be more clear that what he was talking about there was a gap between frame and insert on a cross-sectional basis and his language, part of an annular shape is very (inaudible). It doesn't say an annular gap. It doesn't say defining an annular shape (inaudible).

It says part of an annular shape and that's in complete distinction to the Merit bat.

THE COURT: Again, speaking purely mathematical terms here as the model of two circular and they are described as circular, not substantially circular just in Claim 1.

If you have two circles, one of which is within the other, there are only three things that can happen, I take it. One is that they either don't touch or, two, that they touch on all points. The third is they touch on only one point.

So you couldn't have two circles that touch on more than one point unless they touch on all points, correct?

MR. LEVINSON: I think theoretically that is correct, but the nature of manufacturing (inaudible).

THE COURT: Yeah, but you've described here (inaudible) substantially, but you've described -- when you say at least part of an annular shape, why should we then interpret that to mean something other than at most something that is annular except for one point of contact given that you've used the term circular to describe these two structures?

MR. LEVINSON: Well, I think the answer to that goes to the issue of the manufacturing policies that I just mentioned. And I don't know that I would want to emphasize that term too much, but the fact of the matter is that in one of the (inaudible) volumes, Mr. Eggiman talked about the gap being -- having a dimension of 7/1000ths of an inch.

THE COURT: Right.

MR. LEVINSON: And I think people ordinarily skilled in the art of time, at least the only evidence in this record is that people ordinarily skilled in the art of time would understand the tolerances for manufacturing a

(inaudible) aluminum tubing from which at least that embodiment to the bat is made would require that there be contacts at more than one point.

It would be circular within the range of what was capable of being manufactured at that time, but the tolerance might be such that there would be more than one contact point.

I think that's what the evidence shows and that is undisputed in the record.

Now I know that there was some suggestion in the briefs that what we are trying to do is simply having manufacturing tolerance substitute for claim interpretation, but we are absolutely not.

We are focusing purely on what people ordinary skilled (inaudible) time, that the only reason that we used (inaudible) the evidence of tolerance (inaudible) was the basis on which it was accepted and it is on rebuttal.

Mr. Leff made the argument that what this patent teaches repeatedly and repeatedly is the existence of the uniform gap. And I think the problem we have with that is the problem that existed in the Phillips case is that Mr. Leff is focusing on all of the embodiments that

appeared in the past.

And what is clear is that Mr. Eggiman on a number of occasions said that he is claiming more than the specific embodiment that he set forth. That's number one.

Number two, with respect to the abstract in particular, I don't think we can conclude that the abstract, as it's written here, defines the invention or sets forth the scope of the claim.

But more particularly the abstract is simply a verbatim statement of one of embodiment. It is the embodiment that appears at column two. I think it begins on roughly lines 9 to 23. The extract is not a generalized statement of what the (inaudible) is providing.

Thank you very much, your Honors.

THE COURT: Thank you, Mr. Levinson. I think we've batted around all the issues and we will take the case under advisement.

MR. LEVINSON: Thank you.

(Tape 1, Side A is concluded.)

# REPORTER'S CERTIFICATE

STATE OF COLORADO )
) ss.
COUNTY OF ADAMS )

I, Geneva T. Hansen, do hereby certify that I am a Professional Shorthand Reporter and Notary Public within the State of Colorado.

I further certify that the foregoing transcript constitutes a true and correct transcript to the best of my ability to hear and understand the tape recording.

I further certify that I am not related to, employed by, nor of counsel for any of the parties or attorneys herein, nor otherwise interested in the result of the within action.

IN WITNESS WHEREOF, I have affixed my signature and seal this 8th day of May, 2006.

My commission expires 11-18-07

______________________________
Geneva T. Hansen