**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| MIKEN COMPOSITES, L.L.C., | ) | |
| | ) | **Court File No. 02-CV-769 DSD/SRN** |
| Plaintiff, | ) | |
| | ) | **DEFENDANT WILSON SPORTING** |
| v. | ) | **GOODS CO.'S SUPPLEMENTAL** |
| | ) | **MEMORANDUM IN OPPOSITION** |
| WILSON SPORTING GOODS CO., | ) | **TO PLAINTIFF'S MOTION FOR** |
| | ) | **SUMMARY JUDGMENT** |
| Defendant. | ) | |
| | ) | |

## I. INTRODUCTION

This action focuses upon whether the accused bats of Plaintiff Miken Composites, L.L.C. ("Miken"),[1] infringe claims 1 and 18 of U.S. Patent No. 5,415,398 ("the '398 Patent"), for multi-wall bats with independent movement in the impact section of the bat between the frame and insert members. Miken's non-infringement argument has relied heavily on its argument that the claim 1 element, "gap forming at least part of an annular shape," prohibited contact between the frame and insert. However, the recent Federal Circuit decision regarding construction of the '398 Patent, discussed below, confirms that some contact of the frame and insert is permitted under both claims 1 and 18. Miken has conceded that most of the claim 1 and 18 elements read upon the accused bats. Miken only disputed the "gap" and "deflectable to establish a tight interference fit" limitations,

[1] While Miken's Motion for Summary Judgment was pending, Miken sold substantially all of its assets to K2, Inc., a competitor of Wilson's. As a result of this asset sale, serious issues now exist as to whether the transfer raises state law fraudulent transfer issues as to Wilson's claims. Wilson will require discovery on this issue, and may need to amend its pleadings by adding claims and joining K2, Inc. as a necessary party. In addition, the allegedly "new" Miken has continued to sell new infringing bat models, which raises additional fact issues.

and, as to five of nine accused bats, the "insert" limitation. The evidence establishes that each of the nine previously accused Miken bats are infringing.

Pending before this Court is the Motion for Summary Judgment filed by Miken. Following briefing and oral argument, all further proceedings were stayed by Order dated March 17, 2005, pending the decision of the Federal Circuit in the related case *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322 (Fed. Cir. 2006) (hereafter "Federal Circuit Decision"). The Federal Circuit Decision modifies and supplements this Court's claim construction Order dated July 26, 2004.

The record, considered in light of the claim constructions by this Court and the Federal Circuit, establishes that Miken has failed to carry its burden of proving there are no genuine issues of material fact. Therefore, Miken is not entitled to judgment of non-infringement as a matter of law. To the contrary, the record, considered under the Federal Circuit Decision, establishes that Wilson is now entitled to judgment of infringement against all nine currently accused Miken bats.[2] At a minimum, there are genuine issues of material fact for trial.

## II. ARGUMENT

### A. Claim Construction By Federal Circuit and This Court

This Court's July 26, 2004 claim construction Order addresses 10 claim terms and elements in claims 1 and 18 of the '398 Patent. The Federal Circuit Decision addresses

---

[2] As set forth below, this Court has authority to deny Miken's motion and enter judgment of infringement in favor of Wilson. Based upon the Federal Circuit Decision, Wilson will otherwise file its own motion for summary judgment.

five of those same terms, plus the claim 3 term “rigid” which is not in dispute in this case. The five terms and elements that overlap are as follows:

a. “gap” in claim 1;

b. “annular” in claim 1;

c. “a gap forming at least part of an annular shape” in claim 1;

d. “insert” in claims 1 and 18; and

e. “outer diameter less than the inner diameter of the frame” in claim 18.

**1. <u>Claim 1 “Gap Forming Part of an Annular Shape.”</u>**

The first three of the five terms listed above are interrelated since they are part of a single claim element. As to “gap,” this Court determined that it means “a space or void.” The Federal Circuit Decision modifies this construction to “a separation.” In addition, “[t]he separation may be localized....” 422 F.3d at 1329. As to “annular,” while this Court construed the term to mean “ring-like,” the Federal Circuit Decision modifies the language to “of or relating to an area formed by two concentric circular or curved regions.” The Federal Circuit Decision emphasizes that in the context of claim 1’s complete element, “a gap forming at least part of an annular shape,” the terms “part of” distinguishes claim 1 from claim 15, such that claim 1 does ***not*** require “a single continuous void.” In fact, claim 1 of the ‘398 Patent “[does] not foreclose some contact between insert and frame.” *Id.* This is directly contrary to the main argument Miken has advanced to date in its effort to establish non-infringement.

The Federal Circuit Decision goes on to make clear that claim 1 does not require a perfectly annular insert or frame, as Miken has proposed, “nor even ‘roughly’ parallel

sides." *Id.* at 1328. Further, the "separation" is not required by the Federal Circuit Decision to be of any minimum dimension. Wilson maintains that the '398 Patent teaches that the separation simply must be sufficient to permit independent movement of the frame and insert during impact.

**2. "Insert" of Claims 1 and 18.**

The Federal Circuit previously accepted the definition of "insert," as used in the '398 Patent, as "anything put or fit into something else." *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330 (Fed. Cir. 2001). This Court determined that the term "insert" did not require construction. In its second look at the term, the Federal Circuit suggested that "an ordinary and customary meaning in this art field and within the context of this patent is: 'something inserted or intended for insertion'" citing to Webster's dictionary. *Id.* at 1330. The Cambridge Advanced Learner's Dictionary defines "insert" as "something that is made to go inside or into something else."

The Federal Circuit Decision regarding the term "insert" is also contrary to Miken's argument that the insert member cannot be inserted within the frame by fabricating the frame around the insert. Moreover, the record in this case, including the opinion of Miken's own expert, Dr. Dennehy, is in direct contrast to Miken's argument.

**3. "Outer Diameter Less Than the Inner Diameter of the Frame" of Claim 18.**

The Federal Circuit Decision supplements this Court's claim construction regarding claim 18. The Federal Circuit Decision expands this Court's construction of the element "outer diameter less than the inner diameter of the frame" in claim 18. This

Court construed the language to mean "the diameter between outer surfaces of the insert is not as large as the diameter between the inner surfaces of the frame." Indeed, this is the plain meaning of this phrase. The Federal Circuit went on to look at a subsequent element in claim 18: "the impact portion being inwardly elastically deflectable to establish a tight interference fit," and concluded "the claim requires only space between the frame and the insert to allow for contact when the impact portion is elastically deflected." *Id.* at 1329. The Federal Circuit Decision is clear, however, that claim 18, like claim 1, "[does] not foreclose some contact between the insert and frame." *Id.* The court noted a distinction of the inserts under the separate inventions of claims 1 an 18 is that claim 18's insert has "a substantially circular cross-section" which varies from claim 1's insert which has "a circular cross-section." *Id.* The Federal Circuit Decision specifically states that "claim 18 does not foreclose the possibility of contact between the frame and insert" in the impact portion of the bat. *Id.*

The Federal Circuit Decision does not impact any of this Court's other *Markman* construction findings. Based upon these claim constructions, the record establishes that Miken has failed to meet its burden of proving non-infringement and, in fact, Wilson is entitled to summary judgment of infringement against Miken.

**B. <u>Legal Standard Entitling Wilson to Judgment of Infringment</u>**

Miken is not entitled to judgment unless the record, when viewed most favorably for Wilson, establishes that there is no genuine issue of material fact. *Bell Atl. Network Servs., Inc. v. Covad Comm. Group, Inc.*, 262 F.3d 1258, 1266-67 (Fed. Cir. 2001). Miken "bears the burden of demonstrating the absence of genuine issues of material

fact." *Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1575 (Fed. Cir. 1994). Wilson, in turn, as "the party opposing the motion for summary judgment bears the burden of responding ***only after*** the moving party has met its burden of coming forward with proof of the absence of any genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 321 (1986) (quoting *Catrett v. Johns-Mansville Sales Corporation,* 756 F.2d 181, 184 (D.C. Cir. 1985)) (emphasis in original). As detailed below, Miken has failed to meet its burden of establishing no genuine issue of material fact in its favor regarding its assertion of non-infringement.

Moreover, the record in this case establishes that Miken's bats do infringe claims 1 and 18 of the '398 Patent. Accordingly, this Court may, and ***should,*** enter judgment of infringement against Miken, and in favor of Wilson, even though Wilson had not moved for such judgment prior to the Federal Circuit Decision. *Abrams v. Occidental Petroleum Corp.*, 450 F.2d 157, 165 (2d Cir. 1971), (*citing First National Bank v. Maryland Casualty Co.*, 290 F.2d 246, 251 (2d Cir.)), *cert. denied*, 368 U.S. (1961); *Local 33, Int'l Hod Carriers v. Mason Tenders,* 291 F.2d 496, 505 (2d Cir. 1961); *Stein v. Oshinsky,* 348 F.2d 999, 1002 (2d Cir.), *cert. denied,* 382 U.S. 957 (1965). At a minimum, Miken has failed to demonstrate the absence of genuine issues of material fact and has therefore failed to carry its burden of proof. *Conroy,* 14 F.3d at 1575.

## C. Miken's Bats infringe Claim 1 of the '398 Patent

### 1. The "Gap" Limitation

In the Report by Wilson's expert, Doug Guenther,[3] Claim 1 of the '398 Patent has been divided in his Claim Chart into its eight separate elements. Mr. Guenther's Claim Chart was updated in light of the Federal Circuit Decision. *See* Second Amended Claim Chart, Declaration of Jeffer Ali, Exhibit A. Miken has not, and cannot, dispute that each of its nine accused models meet claim 1 elements "a" – "c," "e" and "f." In addition, Miken has not disputed that the accused bats demonstrate the "elastic deflection" of claim 1, element "h," arguing only that the deflection is not across a "gap." As to claim 1 element "g" regarding "the insert being separated from the tubular frame by a gap forming part of an annular shape along a central portion between said first and second ends," each of Miken's nine accused bat models meet this element. As construed by the Federal Circuit and this Court, Wilson need only show that each of the accused bat models have a "separation" of indefinite size, between the frame and insert in the impact portion of the bat, provided the separation permits the independent movement taught by the '398 Patent. Some contact between the frame and insert does ***not*** render the bats non-infringing, as clearly stated by the Federal Circuit Decision. Miken's non-infringement

---

[3] This Memorandum uses the following naming convention for expert reports previously filed in this case:
"1st Guenther Rpt.": Report of Douglas G. Guenther, October 24, 2003, attached as Ex. D to the Declaration of Matthew A. Doscotch (Dkt. No. 56.).
"2d Guenther Rpt.": Report of Douglas G. Guenther, December 1, 2004, attached as Ex. F to the Declaration of Matthew A. Doscotch (Dkt. No. 56.).
"1st Dennehy Rpt.": Report of Dr. Keith T. Dennehy, October 15, 2003, attached as Ex. 4 to the Decl. of Michael H. Streater (Dkt. 49).

argument relied upon a construction of this claim element as requiring a continuous void between the frame and insert. Miken's position is inconsistent with the Federal Circuit's claim construction.

As set forth in Wilson's original Memorandum in Opposition, Miken's own expert admits to a separation between the frame and insert. Miken's expert conceded that Miken's HHD bat model has a "void" of 0.013" between the frame and insert in its impact portion. (2d Dennehy Rpt. at 6.)[4]

Dr. Dennehy has similarly disclosed a void or separation of 0.009" between the frame and insert in the impact portion in Miken's Viper model bat. *Id.*

In connection with the M-Pulse, Velocit-E II and Edge bats, which Miken has asserted in its Motion for Summary Judgment are all made in substantially the same manner, Dr. Dennehy has conceded that the Edge bat has a separation between the frame and insert, in the impact portion of the bat, measuring 0.011." (*Id.* at 7.)[5] Accordingly, since these bats are manufactured in the same manner, based upon Miken's assertions, the record establishes that the Velocit-E II and M-Pulse bats also are made with a separation between the frame and insert.

Wilson's evidence confirms the same finding of a separation between the frame and insert. In its Memorandum in Opposition, Wilson showed a separation forming at

---

"2d Dennehy Rpt.": Report of Dr. Keith T. Dennehy, December 1, 2004, attached as Ex. 5 to the Decl. of Michael H. Streater (Dkt. 49).

[4] Wilson has introduced evidence that Dr. Dennehy's methodology ***understates*** the size of the separation since, *inter alia*, lengthwise bat cuts (versus ring cuts) release the circular bat members' "hoop stresses" which otherwise maintain the separation between the frame and insert, permitting the structures to collapse onto each other. (*See* 2d Guenther Rpt. at 4-10.)

least part of an annular or circular, ring like shape in a ¼" ring cut, or cross section, taken from a Miken Velocit-E II bat. (*See* Ali Decl., Ex. B, Fig. 10). This is confirmed by Wilson's findings. (*See* Ali Decl., Exs. A, B; 1st Guenther Rpt.)

Miken's expert also concedes a separation between the frame and insert of the Miken Ultra II bat. Miken contends the Ultra II is built in a manner like the Miken Ultra bat. Dennehy 1st Rpt., p. 8. In his original report, Dr. Dennehy discloses a separation between the structural members measuring 0.0009." (1st Dennehy Rpt. at 8.) There is no limitation in claim 1 as to the size of the "gap" other than it must form part of an annular shape and permit independent movement of the frame and insert under load. This is confirmed by Wilson's findings. (*See* Ali Decl. Ex. A, Ex. B Chart A; 1st Guenther Rpt.)

Indeed, Appendix A, Figures 11 and 12 clearly demonstrate the separation forming at least part of a circular shape in a ¼" ring cut taken from a Miken Ultra bat. The gauge was inserted without use of lubrication or modification of the ring cut's structure. (2d Guenther Rpt. at 5-7.)

Further, the spatial separation of the frames and inserts of the Miken bats is not limited to a single spot on the barrel of the bats. The ring cuts for Figures 10 and 11 were taken randomly from the impact portion of the barrel of the sample bats. Figure 12, below, shows the same 0.001" separation in all five adjoining ring cuts. (2d Guenther Rpt. at 7-8; Ali Decl., Ex. B, Fig. 12.)

A simple examination of a Miken Ultra bat on a light table, without magnification or extrapolation from enlarged microscopic images, reveals a clear separation between

the Ultra's frame and insert. Figure 3, from Guenther 1st Rpt., shows the easily visible separation between the frame and insert. (*See* Ali Decl., Ex. B, Fig. 3.)

Finally, the Miken Intensit-E and Velocit-E bats were also shown by Mr. Guenther to meet the elements of claim 1 of the '398 Patent. (1st Guenther Rpt. at 15-17, 21-24.) Both the Intensit-E and Velocit-E model bats performed the same as all of the other Miken accused bats in the load deflection test (*see* Ali Decl. Ex B, Chart A), and could not do so if the frames and inserts were so tightly engaged that the two walls acted as one. Only in the presence of a separation between the structural members, as shown in the attached illustrations, will the bats respond in a manner as shown in Chart A. (*Id.*)

**2. <u>Miken's Bats Have "Inserts"</u>**

In connection with the Second Amended Claim Chart, element "d" of both claims 1 and 18 include an "insert" within the frame of the bat. Miken argues a novel construction of "insert" for the purpose of establishing that its Ultra, Ultra II, M-Pulse, Velocit-E II and Edge (the so-called "new bats"), do not meet the "insert" limitation of the asserted claims. Miken argues that its so-called "new bats" are formed by a ***process*** of successive layering of one structural member over another, and that since the frame is built over the insert, the insert does not meet the claim language because it was not pushed into a pre-existing frame. The record reveals that Miken's argument has been directly contradicted by its own expert, Dr. Dennehy.

In addition, the law does not support Miken's argument. Miken is arguing that its ***process*** for manufacturing the "new bats" prevents them from infringing the '398 Patent. However, claims 1 and 18 of the '398 Patent are ***product claims*** – the process used to

achieve the product is not relevant. The Federal Circuit has consistently rejected the type of argument asserted by Miken. In *U.S. v. Studiengesellschaft Kohle, m.b.H.*, 670 F.2d 1122 (D.C. Cir. 1981), the court outlined the clear distinction between the two types of patents: "[a] product patent [having product claims] gives the patentee the right to *restrict the use and sale of the product regardless of how and by whom it was manufactured*. A process patentee's power extends only to those products made by the patented process." *Id.* at 1127 (citations omitted, emphasis added).

As to the evidence regarding Miken's inserts, Wilson has cut samples of *each* of the accused bats, including the "new bats," and discovered separate, tubular, internal structural members inside the frames. (*See* 1st Guenther Rpt. at 4, 5, 15-18.)

The Edge bat, which Miken admits is manufactured just as the other so-called "new bats" are made, clearly has a separate insert within the frame as illustrated in Figure 1 of Guenther's 1st Report, reproduced in the Appendix. Figure 1 in the Appendix clearly shows that Miken's representation of its bats as "akin to a plaster cast" without separate members is misleading and false. (Pl.'s Mem. in Supp. of Mot. for Summ. J. at 26 (Dkt. 48).) In Figures 1A and 1B (*see* Ali Decl. Ex. B), it is proved that the Ultra and Ultra II bats have separate, removable inserts which can be slid out from its frames. Whether the frames of these bats exist before the insert is positioned within it, or after, is a distinction without a legal distinction. The insert members are inserted within the frame when the frame is fabricated around the insert. Moreover, claims 1 and 18 of the '398 Patent are not "process" or "method" patent claims, and accordingly the timing of existence of the parts is immaterial.

Miken's own expert, Dr. Dennehy, ***repeatedly*** refers to the "inserts" of each of these "new bat" models. In his first report, he states that "I quantified the interface between the **insert** and the frame layers seen in the wall cross section" of the Ultra and Ultra II bats (1st Dennehy Rpt. at 6 (emphasis added).) In his second report, Dr. Dennehy explains that for the M-Pulse, Velocit-E II and Edge bats, "[t]he **insert** is cured at elevated temperature in an oven" and while still warm these inserts are then "dipped in a release agent" before the frame is molded on top of them. (2d Dennehy Rpt. at 3.)

Accordingly, based upon the findings and report of Wilson's infringement expert, Mr. Guenther, as well as those of Miken's expert, Dr. Dennehy, the Miken bats all have an "insert" as required in claims 1 and 18. The process by which Miken achieves these products is legally irrelevant, rendering Miken's argument factually and legally unsupportable.

**D. <u>Miken's Bats Infringe Claim 18 Of The '398 Patent</u>**

Miken has argued that all of its bats are built so that the frame and insert are in "tight abutment," with an "interference fit" (as in the Fujii prior art reference), and that they cannot infringe claim 18 since one of the elements of claim 18 requires that the frame's "impact portion being inwardly elastically deflectable such to establish a tight interference fit between the insert and impact portion." Miken's argument is that if its bats have an interference fit prior to impact, then such a fit is not created upon impact. Miken's argument must fail, however, in light of the record evidence and the claim construction of this Court and the Federal Circuit.

With respect to claim 18, the Federal Circuit Decision determined that the term "interference fit" simply meant that prior to impact a separation exists between the frame and insert at some point in the impact portion. Moreover, this element was explained by the inventor to be a transient interference fit, as set forth provided in the following section of the specification:

> In yet another embodiment of the invention, ... [a]n impact with a ball will cause the frame to deflect, thereby creating interference attachments for the insert **18** during impact. The swing of the bat during impact may tend to lodge the insert **18** in the end of the frame, contributing to an attachment.

('398 Patent, col. 5, lns. 33-45.)[6]

In this regard, the '398 Patent's elastic impact response is expressly distinguished from the Miken's alternative prior art reference, U.S. Patent 3,963,239 ("Fujii II '239"). In Fujii II, '239, a reference also cited and distinguished by the Patent Office in the prosecution of the '398 Patent, an insert is bonded to the frame with adhesives, or in "tight abutment" with the frame, to provide additional "repelling action," which is the opposite of an elastically deflectable, leaf spring-like impact portion. ('398 Patent, col. 1, lns. 59-64.) In fact, Fujii '239 teaches that the insert must be in "tight abutment," secured with "a suitable adhesive applied to the outer surface of said reinforcing member [insert], *the engaging relationship of said reinforcing member with the inner periphery of the body 11 is firmly established and cannot be loosened by the repeated contact of a pitched*

[6] Attached as Ex. 1 to the Decl. of Michael H. Streater (Streater Decl.") (Dkt. 49).

*ball*" against the frame. (Fujii II '239, col. 3, lns. 24-29 and 45-50.)[7] (emphasis added).) Fujii II '239 teaches a two wall system that operates like a single thickened wall, as expressly distinguished by the '398 Patent. ('398 Patent, col. 1, ln. 68, Exhibit 1.)

Miken's bats do not, however, demonstrate a multi-wall system that operate like a single thickened wall. As shown in Chart A, and in Guenther's first report, the Miken bats all demonstrate that the frames and inserts move independently, as shown by their lower deflection rates in comparison to the same models when the inserts are rigidly fixed to the frames through adhesives. (Ali Decl. Ex. B; 1st Guenther Rpt. at 10-14, 21-24.) Mr. Guenther was able to conclude that each of the Miken bat frames are elastically deflectble, meaning that they deflect upon impact, transfer load to the inserts and then rebound after removal of the load. Moreover, Wilson has established each of the bats have a separattion between the frame and insert.

Miken cannot escape infringement by simply asserting that it takes a large amount of pressure to push a Miken insert into its frame. The close tolerances between the frames and inserts of the Miken and Wilson bats, measuring in the thousandths of an inch to form the separation, are taught to Miken by the '398 Patent. (Aff. of Douglas G. Guenther, ¶ 5 (Dkt. 55).) With structural members measuring approximately 10" – 12" in length, this necessarily means that a great deal of pressure is required to overcome friction to introduce the insert to the frame. (*Id.*, ¶¶ 5, 6.) The bats made in accordance

[7] Steater Decl., Ex. 2.

with the ‘398 Patent also require force to introduce the insert into the frame, despite the use of a lubricant. (*Id.*, ¶ 6.)

The transient interference fit of claim 18 is established at a localized area significantly smaller than a 10” – 12” insert, and is more appropriately represented by the ¼” ring cuts used in Mr. Guenther’s tests and Reports. (*Id.*, ¶ 7.) Accordingly, the Miken bats meet the claim limitations of claim 18 (and claim 1), as demonstrated above.

**E. <u>Infringement Under The Doctrine Of Equivalents</u>**

Not only do Miken’s bats literally read on the limitations of claims 1 and 18, but they infringe under the doctrine of equivalents. Under *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 70 S. Ct. 854 (1950), “a patentee may invoke this doctrine to proceed against the producer of a device if it performs substantially the same function in substantially the same way to obtain the same result.” *Graver Tank, supra,* 339 U.S. at 608 (citations omitted). The court determined that “[a]n important factor is whether persons reasonably skilled in the art would have known of the interchangeability of an ingredient not contained in the patent with one that was.” *Id.*, at 609, accord, *Johnson & Johnson Assoc., Inc. v. R.E. Service Co., Inc.*, 285 F.3d 1046, 1053 (Fed. Cir. 2002). The record in this case shows that, in addition to literal infringement, the Miken bats meet the limitations of claims 1 and 18 under the doctrine of equivalents. Accordingly, judgment should be awarded to Wilson. At a minimum, genuine issues of material fact exist for trial.

## III. CONCLUSION

For the foregoing reasons, Miken has failed to sustain its burden of proving non-infringement and Wilson respectfully requests that Miken's motion for summary judgment of non-infringement of claims 1 and 18 of the '398 Patent be denied, and that this Court enter judgment of infringement against Miken and in favor of Wilson.

Respectfully submitted,

*s/Douglas J. Williams*
Douglas J. Williams (#11735)
Jeffer Ali (# 247,947)
Merchant & Gould
3200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402-2215
Telephone: (612) 332-5300
Facsimile: (612) 332-9081

Jeffery A. Key (pro hac vice)
Key & Associates
150 N. Michigan Ave., Suite 2700
Chicago, Illinois 60601
Telephone: (312) 560-2148
Facsimile: (312) 553-1232

*Attorneys for Defendant-Counterclaimant Wilson Sporting Goods Co.*