# SECOND AMENDED CLAIM CHART
## (Doug Guenther's Report and the Federal Circuit Decision)
## U.S. PATENT NO. 5,415,398 APPLIED TO
## MIKEN COMPOSITES LLC, MODEL HHD




### CLAIM 1 OF THE '398 PATENT

| Claim 1 Elements | MODEL: HHD (Heavy Hitting Design) | Status of the Record |
|---|---|---|
| a. A bat, comprising: | Yes, Model HHD is a bat. | Undisputed |
| b. a hollow tubular bat frame | Yes, Model HHD has a hollow tubular bat frame formed of a composite material. | Undisputed |
| c. having a circular cross-section; and | Yes, the frame of the Model HHD bat has a circular cross-section. | Undisputed |
| d. an insert positioned within the frame, | Yes, a separate tubular structural member is positioned inside of, and coaxially aligned with, the bat frame. | Undisputed |
| e. the insert having a circular cross-section, | Yes, the insert has a circular cross section. | Undisputed |
| f. the insert having first and second ends adjoining the tubular frame, | Yes, the first and second ends of the insert touch the bat frame. | Undisputed |
| g. the insert being separated from the tubular frame by a gap forming at least part of an annular shape along a central portion between said first and second ends, | Yes, a separation exists between the tubular bat frame and the insert. The separation exists at a location along a central portion of the insert between the first and second ends. Because the separation exists between the circular bat frame and the circular insert, the separation forms at least part of an annular or ring-like shape. The separation allows for independent movement between the frame and the insert in response to the application of a load in the nature of a leaf spring. Load deflection testing of the Model HHD bat confirms the existence of a separation between the frame and the insert. Wilson tested an original ten inch long section of the impact portion of the Model HHD bat, and the same section with the insert adhered to the frame, to determine the amount of load required to achieve a fixed amount of deflection ("load deflection rate") for each bat section tested. The Model HHD bat demonstrated a 79.4 percent increase in the load deflection rate from the original bat section to the adhered bat section. Guenther Report, p23. | Cannot genuinely be disputed under the Federal Circuit Decision. Supplemental Memorandum, pgs. 7-10 |
| h. the frame elastically deflectable across the gap to operably engage the insert along a portion of the insert between the insert first and second ends. | Yes, the 79.4 percent increase in load deflection rate (as described immediately above) demonstrates that, upon the application of a load, the frame deflects across the separation to operably engage the frame. The close proximity of the insert to the bat frame, and the thinness of their respective walls, permits the dynamic engagement of, and transfer of load from, the frame to the insert upon an impact (during operation). | Cannot genuinely be disputed under the Federal Circuit Decision. Supplemental Memorandum, pgs. 7-10 |

# SECOND AMENDED CLAIM CHART
## (Doug Guenther's Report and the Federal Circuit Decision)
## U.S. PATENT NO. 5,415,398 APPLIED TO
## MIKEN COMPOSITES LLC, MODEL HHD




### CLAIM 18 OF THE '398 PATENT

| Claim 18 Elements | MODEL: HHD (Heavy Hitting Design) | Status of the Record |
|---|---|---|
| a. A bat, comprising: | Yes, Model HHD is a bat. | Undisputed |
| b. a hollow tubular bat frame having a small-diameter handle portion and a large-diameter impact portion | Yes, Model HHD has a hollow tubular bat frame formed of a composite material. The bat frame includes a small-diameter handle portion and a large-diameter impact portion. | Undisputed |
| c. having a circular cross-section with an inner and outer diameter; | Yes, the impact portion of the frame has a circular cross-section with an inner and outer diameter. | Undisputed |
| d. at least one insert having a substantially circular cross-section | Yes, a separate tubular structural member having a substantially circular cross-section is positioned inside of the bat frame. | Undisputed |
| e. with an outer diameter less than the inner diameter of the frame impact portion, | Yes, the diameter between the outer surfaces of the insert is not as large as the diameter between inner surfaces of the frame. | Undisputed |
| f. the insert being held within the impact portion; and | Yes, the insert is constrained to remain within the impact portion of the frame during use of the bat. | Undisputed |
| g. the impact portion being inwardly elastically deflectable such to establish a tight interference fit between the insert and the impact portion. | Yes, the 79.4 percent increase in the load deflection rate (as discussed above in reference to claim 1) of the Model HHD bat from the original bat section to the adhered bat section confirms the existence of independent movement between the insert and the impact portion in the Model HHD bat. The independent movement between the insert and the impact portion occurs during the inward elastic deflection of the impact portion. This inward elastic deflection establishes a tight interference fit between the insert and the impact portion. | Cannot genuinely be disputed under the Federal Circuit Decision. Supplemental Memorandum, p. 7-10 |

# SECOND AMENDED CLAIM CHART
## (Doug Guenther's Report and the Federal Circuit Decision)
## U.S. PATENT NO. 5,415,398 APPLIED TO
## MIKEN COMPOSITES LLC, MODEL VIPER




## CLAIM 1 OF THE '398 PATENT

| Claim 1 Elements | MODEL: VIPER | Status of the Record |
|---|---|---|
| a. A bat, comprising: | Yes, Model VIPER is a bat. | Undisputed |
| b. a hollow tubular bat frame | Yes, Model VIPER has a hollow tubular bat frame formed of a composite material. | Undisputed |
| c. having a circular cross-section; and | Yes, the frame of the Model VIPER bat has a circular cross-section. | Undisputed |
| d. an insert positioned within the frame, | Yes, a separate tubular structural member is positioned inside of, and coaxially aligned with, the bat frame. | Undisputed |
| e. the insert having a circular cross-section, | Yes, the insert has a circular cross section. | Undisputed |
| f. the insert having first and second ends adjoining the tubular frame, | Yes, the first and second ends of the insert touch the bat frame. | Undisputed |
| g. the insert being separated from the tubular frame by a gap forming at least part of an annular shape along a central portion between said first and second ends, | Yes, a separation exists between the tubular bat frame and the insert. The separation exists at a location along a central portion of the insert between the first and second ends. Because the separation exists between the circular bat frame and the circular insert, the separation forms at least part of an annular or ring-like shape. The separation allows for independent movement between the frame and the insert in response to the application of a load in the nature of a leaf spring. Load deflection testing of the Model VIPER bat confirms the existence of a separation between the frame and the insert. Wilson tested an original ten inch long section of the impact portion of the Model VIPER bat, and the same section with the insert adhered to the frame, to determine the amount of load required to achieve a fixed amount of deflection ("load deflection rate") for each bat section tested. The Model VIPER bat demonstrated an 80.2 percent increase in the load deflection rate from the original bat section to the adhered bat section. Guenther Report, p23. | Cannot genuinely be disputed under the Federal Circuit Decision. Supplemental Memorandum, pgs. 7-10 |
| h. the frame elastically deflectable across the gap to operably engage the insert along a portion of the insert between the insert first and second ends. | Yes, the 80.2 percent increase in load deflection rate (as described immediately above) demonstrates that, upon the application of a load, the frame deflects across the separation to operably engage the frame. The close proximity of the insert to the bat frame, and the thinness of their respective walls, permits the dynamic engagement of, and transfer of load from, the frame to the insert upon an impact (during operation). | Cannot genuinely be disputed under the Federal Circuit Decision. Supplemental Memorandum, pgs. 7-10 |

# SECOND AMENDED CLAIM CHART
## (Doug Guenther's Report and the Federal Circuit Decision)
## U.S. PATENT NO. 5,415,398 APPLIED TO
## MIKEN COMPOSITES LLC, MODEL VIPER




**CLAIM 18 OF THE '398 PATENT**

| Claim 18 Elements | MODEL: VIPER | Status of the Record |
|---|---|---|
| a. A bat, comprising: | Yes, Model VIPER is a bat. | Undisputed |
| b. a hollow tubular bat frame having a small-diameter handle portion and a large-diameter impact portion | Yes, Model VIPER has a hollow tubular bat frame formed of a composite material. The bat frame includes a small-diameter handle portion and a large-diameter impact portion. | Undisputed |
| c. having a circular cross-section with an inner and outer diameter; | Yes, the impact portion of the frame has a circular cross-section with an inner and outer diameter. | Undisputed |
| d. at least one insert having a substantially circular cross-section | Yes, a separate tubular structural member having a substantially circular cross-section is positioned inside of the bat frame. | Undisputed |
| e. with an outer diameter less than the inner diameter of the frame impact portion, | Yes, the diameter between the outer surfaces of the insert is not as large as the diameter between inner surfaces of the frame. | Undisputed |
| f. the insert being held within the impact portion; and | Yes, the insert is constrained to remain within the impact portion of the frame during use of the bat. | Undisputed |
| g. the impact portion being inwardly elastically deflectable such to establish a tight interference fit between the insert and the impact portion. | Yes, the 80.2 percent increase in the load deflection rate (as discussed above in reference to claim 1) of the Model VIPER bat from the original bat section to the adhered bat section confirms the existence of independent movement between the insert and the impact portion in the Model VIPER bat. The independent movement between the insert and the impact portion occurs during the inward elastic deflection of the impact portion. This inward elastic deflection establishes a tight interference fit between the insert and the impact portion. | Cannot genuinely be disputed under the Federal Circuit Decision. Supplemental Memorandum, pgs. 7-10 |

**SECOND AMENDED CLAIM CHART**
**(Doug Guenther's Report and the Federal Circuit Decision)**
**U.S. PATENT NO. 5,415,398 APPLIED TO**
**MIKEN COMPOSITES LLC, MODEL INTENSITE**



**CLAIM 1 OF THE '398 PATENT**

| Claim 1 Elements | MODEL: INTENSITE | Status of the Record |
|---|---|---|
| a. A bat, comprising: | Yes, Model INTENSITE is a bat. | Undisputed |
| b. a hollow tubular bat frame | Yes, Model INTENSITE has a hollow tubular bat frame formed of a composite material. | Undisputed |
| c. having a circular cross-section; and | Yes, the frame of the Model INTENSITE bat has a circular cross-section. | Undisputed |
| d. an insert positioned within the frame, | Yes, a separate tubular structural member is positioned inside of, and coaxially aligned with, the bat frame. | Undisputed |
| e. the insert having a circular cross-section, | Yes, the insert has a circular cross section. | Undisputed |
| f. the insert having first and second ends adjoining the tubular frame, | Yes, the first and second ends of the insert touch the bat frame. | Undisputed |
| g. the insert being separated from the tubular frame by a gap forming at least part of an annular shape along a central portion between said first and second ends, | Yes, a separation exists between the tubular bat frame and the insert. The separation exists at a location along a central portion of the insert between the first and second ends. Because the separation exists between the circular bat frame and the circular insert, the separation forms at least part of an annular or ring-like shape. The separation allows for independent movement between the frame and the insert in response to the application of a load in the nature of a leaf spring. Load deflection testing of the Model INTENSITE bat confirms the existence of a separation between the frame and the insert. Wilson tested an original ten inch long section of the impact portion of the Model INTENSITE bat, and the same section with the insert adhered to the frame, to determine the amount of load required to achieve a fixed amount of deflection ("load deflection rate") for each bat section tested. The Model INTENSITE bat demonstrated a 100.3 percent increase in the load deflection rate from the original bat section to the adhered bat section. Guenther Report, p23. | Cannot genuinely be disputed under the Federal Circuit Decision. Supplemental Memorandum, pgs. 7-10 |
| h. the frame elastically deflectable across the gap to operably engage the insert along a portion of the insert between the insert first and second ends. | Yes, the 100.3 percent increase in load deflection rate (as described immediately above) demonstrates that, upon the application of a load, the frame deflects across the separation to operably engage the frame. The close proximity of the insert to the bat frame, and the thinness of their respective walls, permits the dynamic engagement of, and transfer of load from, the frame to the insert upon an impact (during operation). | Cannot genuinely be disputed under the Federal Circuit Decision. Supplemental Memorandum, pgs. 7-10 |

# SECOND AMENDED CLAIM CHART
# (Doug Guenther's Report and the Federal Circuit Decision)
# U.S. PATENT NO. 5,415,398 APPLIED TO
# MIKEN COMPOSITES LLC, MODEL INTENSITE




## CLAIM 18 OF THE '398 PATENT

| Claim 18 Elements | MODEL: INTENSITE | Status of the Record |
|---|---|---|
| a. A bat, comprising: | Yes, Model INTENSITE is a bat. | Undisputed |
| b. a hollow tubular bat frame having a small-diameter handle portion and a large-diameter impact portion | Yes, Model INTENSITE has a hollow tubular bat frame formed of a composite material. The bat frame includes a small-diameter handle portion and a large-diameter impact portion. | Undisputed |
| c. having a circular cross-section with an inner and outer diameter; | Yes, the impact portion of the frame has a circular cross-section with an inner and outer diameter. | Undisputed |
| d. at least one insert having a substantially circular cross-section | Yes, a separate tubular structural member having a substantially circular cross-section is positioned inside of the bat frame. | Undisputed |
| e. with an outer diameter less than the inner diameter of the frame impact portion, | Yes, the diameter between the outer surfaces of the insert is not as large as the diameter between inner surfaces of the frame. | Undisputed |
| f. the insert being held within the impact portion; and | Yes, the insert is constrained to remain within the impact portion of the frame during use of the bat. | Undisputed |
| g. the impact portion being inwardly elastically deflectable such to establish a tight interference fit between the insert and the impact portion. | Yes, the 100.3 percent increase in the load deflection rate (as discussed above in reference to claim 1) of the Model INTENSITE bat from the original bat section to the adhered bat section confirms the existence of independent movement between the insert and the impact portion in the Model INTENSITE bat. The independent movement between the insert and the impact portion occurs during the inward elastic deflection of the impact portion. This inward elastic deflection establishes a tight interference fit between the insert and the impact portion. | Cannot genuinely be disputed under the Federal Circuit Decision. Supplemental Memorandum, pgs. 7-10 |

**SECOND AMENDED CLAIM CHART**
**(Doug Guenther's Report and the Federal Circuit Decision)**
**U.S. PATENT NO. 5,415,398 APPLIED TO**
**MIKEN COMPOSITES LLC, MODEL VELOCITE**




## CLAIM 1 OF THE '398 PATENT

| Claim 1 Elements | MODEL: VELOCITE | Status of the Record |
|---|---|---|
| a. A bat, comprising: | Yes, Model VELOCITE is a bat. | Undisputed |
| b. a hollow tubular bat frame | Yes, Model VELOCITE has a hollow tubular bat frame formed of a composite material. | Undisputed |
| c. having a circular cross-section; and | Yes, the frame of the Model VELOCITE bat has a circular cross-section. | Undisputed |
| d. an insert positioned within the frame, | Yes, a separate tubular structural member is positioned inside of, and coaxially aligned with, the bat frame. | Undisputed |
| e. the insert having a circular cross-section, | Yes, the insert has a circular cross section. | Undisputed |
| f. the insert having first and second ends adjoining the tubular frame, | Yes, the first and second ends of the insert touch the bat frame. | Undisputed |
| g. the insert being separated from the tubular frame by a gap forming at least part of an annular shape along a central portion between said first and second ends, | Yes, a separation exists between the tubular bat frame and the insert. The separation exists at a location along a central portion of the insert between the first and second ends. Because the separation exists between the circular bat frame and the circular insert, the separation forms at least part of an annular or ring-like shape. The separation allows for independent movement between the frame and the insert in response to the application of a load in the nature of a leaf spring. Load deflection testing of the Model VELOCITE bat confirms the existence of a separation between the frame and the insert. Wilson tested an original ten inch long section of the impact portion of the Model VELOCITE bat, and the same section with the insert adhered to the frame, to determine the amount of load required to achieve a fixed amount of deflection ("load deflection rate") for each bat section tested. The Model VELOCITE bat demonstrated an 83.1 percent increase in the load deflection rate from the original bat section to the adhered bat section. Guenther Report, p23. | Cannot genuinely be disputed under the Federal Circuit Decision. Supplemental Memorandum, pgs. 7-10 |
| h. the frame elastically deflectable across the gap to operably engage the insert along a portion of the insert between the insert first and second ends. | Yes, the 83.1 percent increase in load deflection rate (as described immediately above) demonstrates that, upon the application of a load, the frame deflects across the separation to operably engage the frame. The close proximity of the insert to the bat frame, and the thinness of their respective walls, permits the dynamic engagement of, and transfer of load from, the frame to the insert upon an impact (during operation). | Cannot genuinely be disputed under the Federal Circuit Decision. Supplemental Memorandum, pgs. 7-10 |

# SECOND AMENDED CLAIM CHART
# (Doug Guenther's Report and the Federal Circuit Decision)
# U.S. PATENT NO. 5,415,398 APPLIED TO
# MIKEN COMPOSITES LLC, MODEL VELOCITE



## CLAIM 18 OF THE '398 PATENT

| Claim 18 Elements | MODEL: VELOCITE | Status of the Record |
|---|---|---|
| a. A bat, comprising: | Yes, Model VELOCITE is a bat. | Undisputed |
| b. a hollow tubular bat frame having a small-diameter handle portion and a large-diameter impact portion | Yes, Model VELOCITE has a hollow tubular bat frame formed of a composite material. The bat frame includes a small-diameter handle portion and a large-diameter impact portion. | Undisputed |
| c. having a circular cross-section with an inner and outer diameter; | Yes, the impact portion of the frame has a circular cross-section with an inner and outer diameter. | Undisputed |
| d. at least one insert having a substantially circular cross-section | Yes, a separate tubular structural member having a substantially circular cross-section is positioned inside of the bat frame. | Undisputed |
| e. with an outer diameter less than the inner diameter of the frame impact portion, | Yes, the diameter between the outer surfaces of the insert is not as large as the diameter between inner surfaces of the frame. | Undisputed |
| f. the insert being held within the impact portion; and | Yes, the insert is constrained to remain within the impact portion of the frame during use of the bat. | Undisputed |
| g. the impact portion being inwardly elastically deflectable such to establish a tight interference fit between the insert and the impact portion. | Yes, the 83.1 percent increase in the load deflection rate (as discussed above in reference to claim 1) of the Model VELOCITE bat from the original bat section to the adhered bat section confirms the existence of independent movement between the insert and the impact portion in the Model VELOCITE bat. The independent movement between the insert and the impact portion occurs during the inward elastic deflection of the impact portion. This inward elastic deflection establishes a tight interference fit between the insert and the impact portion. | Cannot genuinely be disputed under the Federal Circuit Decision. Supplemental Memorandum, pgs. 7-10 |

# SECOND AMENDED CLAIM CHART
## (Doug Guenther's Report and the Federal Circuit Decision)
## U.S. PATENT NO. 5,415,398 APPLIED TO
## MIKEN COMPOSITES LLC, MODEL VELOCITE 2




### CLAIM 1 OF THE '398 PATENT

| Claim 1 Elements | MODEL: VELOCITE 2 | Status of the Record |
|---|---|---|
| a. A bat, comprising: | Yes, Model VELOCITE 2 is a bat. | Undisputed |
| b. a hollow tubular bat frame | Yes, Model VELOCITE 2 has a hollow tubular bat frame formed of a composite material. | Undisputed |
| c. having a circular cross-section; and | Yes, the frame of the Model VELOCITE 2bat has a circular cross-section. | Undisputed |
| d. an insert positioned within the frame, | Yes, a separate tubular structural member is positioned inside of, and coaxially aligned with, the bat frame. | Cannot genuinely be disputed under Fed. Cir. Decision. Suppl. Mem., pgs. 10-12 |
| e. the insert having a circular cross-section, | Yes, the insert has a circular cross section. | Undisputed |
| f. the insert having first and second ends adjoining the tubular frame, | Yes, the first and second ends of the insert touch the bat frame. | Undisputed |
| g. the insert being separated from the tubular frame by a gap forming at least part of an annular shape along a central portion between said first and second ends, | Yes, a separation exists between the tubular bat frame and the insert. The separation exists at a location along a central portion of the insert between the first and second ends. Because the separation exists between the circular bat frame and the circular insert, the separation forms at least part of an annular or ring-like shape. The separation allows for independent movement between the frame and the insert in response to the application of a load in the nature of a leaf spring. Load deflection testing of the Model VELOCITE 2 bat confirms the existence of a separation between the frame and the insert. Wilson tested an original ten inch long section of the impact portion of the Model VELOCITE 2 bat, and the same section with the insert adhered to the frame, to determine the amount of load required to achieve a fixed amount of deflection ("load deflection rate") for each bat section tested. The Model VELOCITE 2 bat demonstrated a 66.3 percent increase in the load deflection rate from the original bat section to the adhered bat section. Guenther Report, p23. | Cannot genuinely be disputed under the Federal Circuit Decision. Supplemental Memorandum, pgs. 7-10 |
| h. the frame elastically deflectable across the gap to operably engage the insert along a portion of the insert between the insert first and second ends. | Yes, the 66.3 percent increase in load deflection rate (as described immediately above) demonstrates that, upon the application of a load, the frame deflects across the separation to operably engage the frame. The close proximity of the insert to the bat frame, and the thinness of their respective walls, permits the dynamic engagement of, and transfer of load from, the frame to the insert upon an impact (during operation). | Cannot genuinely be disputed under the Federal Circuit Decision. Supplemental Memorandum, pgs. 7-10 |

# SECOND AMENDED CLAIM CHART
## (Doug Guenther's Report and the Federal Circuit Decision)
## U.S. PATENT NO. 5,415,398 APPLIED TO
## MIKEN COMPOSITES LLC, MODEL VELOCITE 2



## CLAIM 18 OF THE '398 PATENT

| Claim 18 Elements | MODEL: VELOCITE 2 | Status of the Record |
|---|---|---|
| a. A bat, comprising: | Yes, Model VELOCITE 2 is a bat. | Undisputed |
| b. a hollow tubular bat frame having a small-diameter handle portion and a large-diameter impact portion | Yes, Model VELOCITE 2 has a hollow tubular bat frame formed of a composite material. The bat frame includes a small-diameter handle portion and a large-diameter impact portion. | Undisputed |
| c. having a circular cross-section with an inner and outer diameter; | Yes, the impact portion of the frame has a circular cross-section with an inner and outer diameter. | Undisputed |
| d. at least one insert having a substantially circular cross-section | Yes, a separate tubular structural member having a substantially circular cross-section is positioned inside of the bat frame. | Cannot genuinely be disputed under the Fed. Cir. Decision. Suppl. Mem., pgs. 10-12 |
| e. with an outer diameter less than the inner diameter of the frame impact portion, | Yes, the diameter between the outer surfaces of the insert is not as large as the diameter between inner surfaces of the frame. | Undisputed |
| f. the insert being held within the impact portion; and | Yes, the insert is constrained to remain within the impact portion of the frame during use of the bat. | Undisputed |
| g. the impact portion being inwardly elastically deflectable such to establish a tight interference fit between the insert and the impact portion. | Yes, the 66.3 percent increase in the load deflection rate (as discussed above in reference to claim 1) of the Model VELOCITE 2 bat from the original bat section to the adhered bat section confirms the existence of independent movement between the insert and the impact portion in the Model VELOCITE 2 bat. The independent movement between the insert and the impact portion occurs during the inward elastic deflection of the impact portion. This inward elastic deflection establishes a tight interference fit between the insert and the impact portion. | Cannot genuinely be disputed under the Federal Circuit Decision. Supplemental Memorandum, pgs. 7-10 |

# SECOND AMENDED CLAIM CHART
## (Doug Guenther's Report and the Federal Circuit Decision)
## U.S. PATENT NO. 5,415,398 APPLIED TO
## MIKEN COMPOSITES LLC, MODEL ULTRA




### CLAIM 1 OF THE '398 PATENT

| Claim 1 Elements | MODEL: ULTRA | Status of the Record |
|---|---|---|
| a. A bat, comprising: | Yes, Model ULTRA is a bat. | Undisputed |
| b. a hollow tubular bat frame | Yes, Model ULTRA has a hollow tubular bat frame formed of a composite material. | Undisputed |
| c. having a circular cross-section; and | Yes, the frame of the Model ULTRA bat has a circular cross-section. | Undisputed |
| d. an insert positioned within the frame, | Yes, a separate tubular structural member is positioned inside of, and coaxially aligned with, the bat frame. | Cannot genuinely be disputed under Fed. Cir. Decision. Suppl. Mem., pgs. 10-12 |
| e. the insert having a circular cross-section, | Yes, the insert has a circular cross section. | Undisputed |
| f. the insert having first and second ends adjoining the tubular frame, | Yes, the first and second ends of the insert touch the bat frame. | Undisputed |
| g. the insert being separated from the tubular frame by a gap forming at least part of an annular shape along a central portion between said first and second ends, | Yes, a separation exists between the tubular bat frame and the insert. The separation exists at a location along a central portion of the insert between the first and second ends. Because the separation exists between the circular bat frame and the circular insert, the separation forms at least part of an annular or ring-like shape. The separation allows for independent movement between the frame and the insert in response to the application of a load in the nature of a leaf spring. Load deflection testing of the Model ULTRA bat confirms the existence of a separation between the frame and the insert. Wilson tested an original ten inch long section of the impact portion of the Model ULTRA bat, and the same section with the insert adhered to the frame, to determine the amount of load required to achieve a fixed amount of deflection ("load deflection rate") for each bat section tested. The Model ULTRA bat demonstrated a 148.2 percent increase in the load deflection rate from the original bat section to the adhered bat section. Guenther Report, p23. | Cannot genuinely be disputed under the Federal Circuit Decision. Supplemental Memorandum, pgs. 7-10 |
| h. the frame elastically deflectable across the gap to operably engage the insert along a portion of the insert between the insert first and second ends. | Yes, the 148.2 percent increase in load deflection rate (as described immediately above) demonstrates that, upon the application of a load, the frame deflects across the separation to operably engage the frame. The close proximity of the insert to the bat frame, and the thinness of their respective walls, permits the dynamic engagement of, and transfer of load from, the frame to the insert upon an impact (during operation). | Cannot genuinely be disputed under the Federal Circuit Decision. Supplemental Memorandum, pgs. 7-10 |

**SECOND AMENDED CLAIM CHART**
**(Doug Guenther's Report and the Federal Circuit Decision)**
**U.S. PATENT NO. 5,415,398 APPLIED TO**
**MIKEN COMPOSITES LLC, MODEL ULTRA**




## CLAIM 18 OF THE '398 PATENT

| Claim 18 Elements | MODEL: ULTRA | Status of the Record |
|---|---|---|
| a. A bat, comprising: | Yes, Model ULTRA is a bat. | Undisputed |
| b. a hollow tubular bat frame having a small-diameter handle portion and a large-diameter impact portion | Yes, Model ULTRA has a hollow tubular bat frame formed of a composite material. The bat frame includes a small-diameter handle portion and a large-diameter impact portion. | Undisputed |
| c. having a circular cross-section with an inner and outer diameter; | Yes, the impact portion of the frame has a circular cross-section with an inner and outer diameter. | Undisputed |
| d. at least one insert having a substantially circular cross-section | Yes, a separate tubular structural member having a substantially circular cross-section is positioned inside of the bat frame. | Cannot genuinely be disputed under the Fed. Cir. Decision. Suppl. Mem., pgs. 10-12 |
| e. with an outer diameter less than the inner diameter of the frame impact portion, | Yes, the diameter between the outer surfaces of the insert is not as large as the diameter between inner surfaces of the frame. | Undisputed |
| f. the insert being held within the impact portion; and | Yes, the insert is constrained to remain within the impact portion of the frame during use of the bat. | Undisputed |
| g. the impact portion being inwardly elastically deflectable such to establish a tight interference fit between the insert and the impact portion. | Yes, the 148.2 percent increase in the load deflection rate (as discussed above in reference to claim 1) of the Model ULTRA bat from the original bat section to the adhered bat section confirms the existence of independent movement between the insert and the impact portion in the Model ULTRA bat. The independent movement between the insert and the impact portion occurs during the inward elastic deflection of the impact portion. This inward elastic deflection establishes a tight interference fit between the insert and the impact portion. | Cannot genuinely be disputed under the Federal Circuit Decision. Supplemental Memorandum, pgs. 7-10 |

# SECOND AMENDED CLAIM CHART
## (Doug Guenther's Report and the Federal Circuit Decision)
## U.S. PATENT NO. 5,415,398 APPLIED TO
## MIKEN COMPOSITES LLC, MODEL ULTRA II




**CLAIM 1 OF THE '398 PATENT**

| Claim 1 Elements | MODEL: ULTRA II | Status of the Record |
|---|---|---|
| a. A bat, comprising: | Yes, Model ULTRA II is a bat. | Undisputed |
| b. a hollow tubular bat frame | Yes, Model ULTRA II has a hollow tubular bat frame formed of a composite material. | Undisputed |
| c. having a circular cross-section; and | Yes, the frame of the Model ULTRA II bat has a circular cross-section. | Undisputed |
| d. an insert positioned within the frame, | Yes, a separate tubular structural member is positioned inside of, and coaxially aligned with, the bat frame. | Cannot genuinely be disputed under Fed. Cir. Decision. Suppl. Mem., pgs. 10-12 |
| e. the insert having a circular cross-section, | Yes, the insert has a circular cross section. | Undisputed |
| f. the insert having first and second ends adjoining the tubular frame, | Yes, the first and second ends of the insert touch the bat frame. | Undisputed |
| g. the insert being separated from the tubular frame by a gap forming at least part of an annular shape along a central portion between said first and second ends, | Yes, a separation exists between the tubular bat frame and the insert. The separation exists at a location along a central portion of the insert between the first and second ends. Because the separation exists between the circular bat frame and the circular insert, the separation forms at least part of an annular or ring-like shape. The separation allows for independent movement between the frame and the insert in response to the application of a load in the nature of a leaf spring. Load deflection testing of the Model ULTRA II bat confirms the existence of a separation between the frame and the insert. Wilson tested an original ten inch long section of the impact portion of the Model ULTRA II bat, and the same section with the insert adhered to the frame, to determine the amount of load required to achieve a fixed amount of deflection ("load deflection rate") for each bat section tested. The Model ULTRA II bat demonstrated a 166.4 percent increase in the load deflection rate from the original bat section to the adhered bat section. Guenther Report, p23. | Cannot genuinely be disputed under the Federal Circuit Decision. Supplemental Memorandum, pgs. 7-10 |
| h. the frame elastically deflectable across the gap to operably engage the insert along a portion of the insert between the insert first and second ends. | Yes, the 166.4 percent increase in load deflection rate (as described immediately above) demonstrates that, upon the application of a load, the frame deflects across the separation to operably engage the frame. The close proximity of the insert to the bat frame, and the thinness of their respective walls, permits the dynamic engagement of, and transfer of load from, the frame to the insert upon an impact (during operation). | Cannot genuinely be disputed under the Federal Circuit Decision. Supplemental Memorandum, pgs. 7-10 |

SECOND AMENDED CLAIM CHART
(Doug Guenther's Report and the Federal Circuit Decision)
U.S. PATENT NO. 5,415,398 APPLIED TO
MIKEN COMPOSITES LLC, MODEL ULTRA II




## CLAIM 18 OF THE '398 PATENT

| Claim 18 Elements | MODEL: ULTRA II | Status of the Record |
|---|---|---|
| a. A bat, comprising: | Yes, Model ULTRA II is a bat. | Undisputed |
| b. a hollow tubular bat frame having a small-diameter handle portion and a large-diameter impact portion | Yes, Model ULTRA II has a hollow tubular bat frame formed of a composite material. The bat frame includes a small-diameter handle portion and a large-diameter impact portion. | Undisputed |
| c. having a circular cross-section with an inner and outer diameter; | Yes, the impact portion of the frame has a circular cross-section with an inner and outer diameter. | Undisputed |
| d. at least one insert having a substantially circular cross-section | Yes, a separate tubular structural member having a substantially circular cross-section is positioned inside of the bat frame. | Cannot genuinely be disputed under the Fed. Cir. Decision. Suppl. Mem., pgs. 10-12 |
| e. with an outer diameter less than the inner diameter of the frame impact portion, | Yes, the diameter between the outer surfaces of the insert is not as large as the diameter between inner surfaces of the frame. | Undisputed |
| f. the insert being held within the impact portion; and | Yes, the insert is constrained to remain within the impact portion of the frame during use of the bat. | Undisputed |
| g. the impact portion being inwardly elastically deflectable such to establish a tight interference fit between the insert and the impact portion. | Yes, the 166.4 percent increase in the load deflection rate (as discussed above in reference to claim 1) of the Model ULTRA II bat from the original bat section to the adhered bat section confirms the existence of independent movement between the insert and the impact portion in the Model ULTRA II bat. The independent movement between the insert and the impact portion occurs during the inward elastic deflection of the impact portion. This inward elastic deflection establishes a tight interference fit between the insert and the impact portion. | Cannot genuinely be disputed under the Federal Circuit Decision. Supplemental Memorandum, pgs. 7-10 |

# SECOND AMENDED CLAIM CHART
## (Doug Guenther's Report and the Federal Circuit Decision)
## U.S. PATENT NO. 5,415,398 APPLIED TO
## MIKEN COMPOSITES LLC, MODEL EDGE




## CLAIM 1 OF THE '398 PATENT

| Claim 1 Elements | MODEL: EDGE | Status of the Record |
|---|---|---|
| a. A bat, comprising: | Yes, Model EDGE is a bat. | Undisputed |
| b. a hollow tubular bat frame | Yes, Model EDGE has a hollow tubular bat frame formed of a composite material. | Undisputed |
| c. having a circular cross-section; and | Yes, the frame of the Model EDGE bat has a circular cross-section. | Undisputed |
| d. an insert positioned within the frame, | Yes, a separate tubular structural member is positioned inside of, and coaxially aligned with, the bat frame. | Cannot genuinely be disputed under Fed. Cir. Decision. Suppl. Mem., pgs. 10-12 |
| e. the insert having a circular cross-section, | Yes, the insert has a circular cross section. | Undisputed |
| f. the insert having first and second ends adjoining the tubular frame, | Yes, the first and second ends of the insert touch the bat frame. | Undisputed |
| g. the insert being separated from the tubular frame by a gap forming at least part of an annular shape along a central portion between said first and second ends, | Yes, a separation exists between the tubular bat frame and the insert. The separation exists at a location along a central portion of the insert between the first and second ends. Because the separation exists between the circular bat frame and the circular insert, the separation forms at least part of an annular or ring-like shape. The separation allows for independent movement between the frame and the insert in response to the application of a load in the nature of a leaf spring. Load deflection testing of the Model EDGE bat confirms the existence of a separation between the frame and the insert. Wilson tested an original ten inch long section of the impact portion of the Model EDGE bat, and the same section with the insert adhered to the frame, to determine the amount of load required to achieve a fixed amount of deflection ("load deflection rate") for each bat section tested. The Model EDGE bat demonstrated a 63 percent increase in the load deflection rate from the original bat section to the adhered bat section. Guenther Report, p23. | Cannot genuinely be disputed under the Federal Circuit Decision. Supplemental Memorandum, pgs. 7-10 |
| h. the frame elastically deflectable across the gap to operably engage the insert along a portion of the insert between the insert first and second ends. | Yes, the 63 percent increase in load deflection rate (as described immediately above) demonstrates that, upon the application of a load, the frame deflects across the separation to operably engage the frame. The close proximity of the insert to the bat frame, and the thinness of their respective walls, permits the dynamic engagement of, and transfer of load from, the frame to the insert upon an impact (during operation). | Cannot genuinely be disputed under the Federal Circuit Decision. Supplemental Memorandum, pgs. 7-10 |

**SECOND AMENDED CLAIM CHART**
**(Doug Guenther's Report and the Federal Circuit Decision)**
**U.S. PATENT NO. 5,415,398 APPLIED TO**
**MIKEN COMPOSITES LLC, MODEL EDGE**




## CLAIM 18 OF THE '398 PATENT

| Claim 18 Elements | MODEL: EDGE | Status of the Record |
|---|---|---|
| a. A bat, comprising: | Yes, Model EDGE is a bat. | Undisputed |
| b. a hollow tubular bat frame having a small-diameter handle portion and a large-diameter impact portion | Yes, Model EDGE has a hollow tubular bat frame formed of a composite material. The bat frame includes a small-diameter handle portion and a large-diameter impact portion. | Undisputed |
| c. having a circular cross-section with an inner and outer diameter; | Yes, the impact portion of the frame has a circular cross-section with an inner and outer diameter. | Undisputed |
| d. at least one insert having a substantially circular cross-section | Yes, a separate tubular structural member having a substantially circular cross-section is positioned inside of the bat frame. | Cannot genuinely be disputed under the Fed. Cir. Decision. Suppl. Mem., pgs. 10-12 |
| e. with an outer diameter less than the inner diameter of the frame impact portion, | Yes, the diameter between the outer surfaces of the insert is not as large as the diameter between inner surfaces of the frame. | Undisputed |
| f. the insert being held within the impact portion; and | Yes, the insert is constrained to remain within the impact portion of the frame during use of the bat. | Undisputed |
| g. the impact portion being inwardly elastically deflectable such to establish a tight interference fit between the insert and the impact portion. | Yes, the 63 percent increase in the load deflection rate (as discussed above in reference to claim 1) of the Model EDGE bat from the original bat section to the adhered bat section confirms the existence of independent movement between the insert and the impact portion in the Model EDGE bat. The independent movement between the insert and the impact portion occurs during the inward elastic deflection of the impact portion. This inward elastic deflection establishes a tight interference fit between the insert and the impact portion. | Cannot genuinely be disputed under the Federal Circuit Decision. Supplemental Memorandum, pgs. 7-10 |

# SECOND AMENDED CLAIM CHART
## (Doug Guenther's Report and the Federal Circuit Decision)
## U.S. PATENT NO. 5,415,398 APPLIED TO MIKEN COMPOSITES LLC, MODEL M-PULSE



### CLAIM 1 OF THE '398 PATENT

| Claim 1 Elements | MODEL: M-PULSE | Status of the Record |
|---|---|---|
| a. A bat, comprising: | Yes, Model M-PULSE is a bat. | Undisputed |
| b. a hollow tubular bat frame | Yes, Model M-PULSE has a hollow tubular bat frame formed of a composite material. | Undisputed |
| c. having a circular cross-section; and | Yes, the frame of the Model M-PULSE bat has a circular cross-section. | Undisputed |
| d. an insert positioned within the frame, | Yes, a separate tubular structural member is positioned inside of, and coaxially aligned with, the bat frame. | Cannot genuinely be disputed under Fed. Cir. Decision. Suppl. Mem., pgs. 10-12 |
| e. the insert having a circular cross-section, | Yes, the insert has a circular cross section. | Undisputed |
| f. the insert having first and second ends adjoining the tubular frame, | Yes, the first and second ends of the insert touch the bat frame. | Undisputed |
| g. the insert being separated from the tubular frame by a gap forming at least part of an annular shape along a central portion between said first and second ends, | Yes, a separation exists between the tubular bat frame and the insert. The separation exists at a location along a central portion of the insert between the first and second ends. Because the separation exists between the circular bat frame and the circular insert, the separation forms at least part of an annular or ring-like shape. The separation allows for independent movement between the frame and the insert in response to the application of a load in the nature of a leaf spring. Load deflection testing of the Model M-PULSE bat confirms the existence of a separation between the frame and the insert. Wilson tested an original ten inch long section of the impact portion of the Model M-PULSE bat, and the same section with the insert adhered to the frame, to determine the amount of load required to achieve a fixed amount of deflection ("load deflection rate") for each bat section tested. The Model M-PULSE bat demonstrated a 43.1 percent increase in the load deflection rate from the original bat section to the adhered bat section. Guenther Report, p23. | Cannot genuinely be disputed under the Federal Circuit Decision. Supplemental Memorandum, pgs. 7-10 |
| h. the frame elastically deflectable across the gap to operably engage the insert along a portion of the insert between the insert first and second ends. | Yes, the 43.1 percent increase in load deflection rate (as described immediately above) demonstrates that, upon the application of a load, the frame deflects across the separation to operably engage the frame. The close proximity of the insert to the bat frame, and the thinness of their respective walls, permits the dynamic engagement of, and transfer of load from, the frame to the insert upon an impact (during operation). | Cannot genuinely be disputed under the Federal Circuit Decision. Supplemental Memorandum, pgs. 7-10 |

**SECOND AMENDED CLAIM CHART**
**(Doug Guenther's Report and the Federal Circuit Decision)**
**U.S. PATENT NO. 5,415,398 APPLIED TO**
**MIKEN COMPOSITES LLC, MODEL M-PULSE**



## CLAIM 18 OF THE '398 PATENT

| Claim 18 Elements | MODEL: M-PULSE | Status of the Record |
|---|---|---|
| a. A bat, comprising: | Yes, Model M-PULSE is a bat. | Undisputed |
| b. a hollow tubular bat frame having a small-diameter handle portion and a large-diameter impact portion | Yes, Model M-PULSE has a hollow tubular bat frame formed of a composite material. The bat frame includes a small-diameter handle portion and a large-diameter impact portion. | Undisputed |
| c. having a circular cross-section with an inner and outer diameter; | Yes, the impact portion of the frame has a circular cross-section with an inner and outer diameter. | Undisputed |
| d. at least one insert having a substantially circular cross-section | Yes, a separate tubular structural member having a substantially circular cross-section is positioned inside of the bat frame. | Cannot genuinely be disputed under the Fed. Cir. Decision. Suppl. Mem., pgs. 10-12 |
| e. with an outer diameter less than the inner diameter of the frame impact portion, | Yes, the diameter between the outer surfaces of the insert is not as large as the diameter between inner surfaces of the frame. | Undisputed |
| f. the insert being held within the impact portion; and | Yes, the insert is constrained to remain within the impact portion of the frame during use of the bat. | Undisputed |
| g. the impact portion being inwardly elastically deflectable such to establish a tight interference fit between the insert and the impact portion. | Yes, the 43.1 percent increase in the load deflection rate (as discussed above in reference to claim 1) of the Model M-PULSE bat from the original bat section to the adhered bat section confirms the existence of independent movement between the insert and the impact portion in the Model M-PULSE bat. The independent movement between the insert and the impact portion occurs during the inward elastic deflection of the impact portion. This inward elastic deflection establishes a tight interference fit between the insert and the impact portion. | Cannot genuinely be disputed under the Federal Circuit Decision. Supplemental Memorandum, pgs. 7-10 |

**SECOND AMENDED CLAIM CHART**
**(Doug Guenther's Report and the Federal Circuit Decision)**
**U.S. PATENT NO. 5,415,398 APPLIED TO**
**MIKEN COMPOSITES LLC, MODEL M-PULSE**